UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ZACHARY JORDAN ALAM,**<br><br>Defendant. | **Case No. 1:21-cr-00190(DLF)** |

### GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

Pursuant to the Court's order issued on June 28, 2024, and as extended by further order on July 5, 2024, the government hereby files its supplemental sentencing memorandum addressing the U.S. Supreme Court's decision in *Fischer v. United States*, 144 S. Ct. 2176, 2181 (2024). The government is separately addressing the Court's order to show cause in a concurrently filed pleading.

The defendant was tried by jury in September of 2023 and was found guilty at trial of 10 criminal offenses for his criminal conduct on January 6, 2021. Among those charges was obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count 5). ECF No. 110. On June 28, 2024, the Supreme Court issued an opinion in *Fischer v. United States*, 144 S. Ct. 2176, 2181 (2024). *Fischer* held that Section 1512(c) does not cover "*all* means of obstructing, influencing, or impeding any official proceeding." *Id*. at 2185. The Court held that, to prove a violation of Section 1512(c)(2), the government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or other things used in the proceeding – such as witness testimony or intangible information – or

1

attempted to do so. *Id*. at 2186, 2190. The Supreme Court remanded the case to the D.C. Circuit for further proceedings and to assess the sufficiency of the indictment on that count. *Id*. at 2190.

In its Order of June 28, 2023, the Court ordered the government to show cause why Count Five of the Second Superseding Indictment should not be dismissed in light of *Fischer*, and further that the parties submit supplemental sentencing memoranda discussing the impact of *Fischer* on the defendant's Guidelines range and appropriate sentence under 18 U.S.C. 3553(a).

As detailed below, a conviction on Count Five does not impact in any way the sentencing guideline calculations or the government's sentencing recommendation in this case as to the nine other counts of conviction. In light of this and in the interest of proceeding efficiently towards sentencing on the defendant's other counts of conviction, the government is moving to dismiss Count Five in its contemporaneously filed motion.

## I.    INTRODUCTION

As detailed in the government's previous sentencing memorandum, ECF 123, the defendant participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses. And he did not just participate. The defendant was one of the most violent and aggressive members of the mob in some of the most sensitive areas of the Capitol building. He spent the day antagonizing officers and inciting other rioters, culminating in his repeated violent and forceful attempts to reach congressional members and staffers as they frantically evacuated the House floor. That Count Five

will no longer be before the Court has no bearing on the sentence the government argues the defendant should receive, not only because it does not affect the guideline calculations and recommended upward departures, but also because it in no way alters the nature and extent of the defendant's violent and incendiary acts on that day.

## II.   THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

The guideline calculation provided by the government in its initial sentencing memorandum included a calculation for Count Five. However, grouping of counts under the Sentencing Guidelines resulted in Count Five having no impact on the total offense level after application of U.S.S.G. § 3D1.2. ECF 123 at 27-28. For the purposes of clarity, the government presents its guideline analysis below, with Count Five not included in its calculation.

**Count One: 18 U.S.C. § 111(a)(1)—Assaulting, Resisting, or Impeding Certain Officers (Alam's throwing himself against officers as he smashed the windows behind them with his fists)**

The Statutory Index references two guidelines for 18 U.S.C. §111, U.S.S.G. §§ 2A2.2 (Aggravated Assault) and 2A2.4 (Obstructing or Impeding Officers). The guidelines direct that, if Appendix A lists more than one guideline, use the "most appropriate" guideline for the offense conduct charged in the count of conviction. *See* § 1B1.2 N.1. Here, the most applicable guideline is U.S.S.G. 2A2.4 (Obstructing or Impeding Officers).

| Base Offense Level | 10 | U.S.S.G. § 2A2.4 |
|---|---|---|
| Specific Offense Characteristic | +3 | U.S.S.G. § 2A2.4(b)(1): "If (A) the offense involved physical contact … increase by 3 levels." <br><br> Alam made physical contact with three officers. Alam pushed against the officers with his body as he punched out the glass windows of the doors immediately behind the officers' heads. |

3

| Cross Reference | See below | U.S.S.G. §2A2.4(c) directs that the cross-reference in §2A2.2 applies "if the conduct constituted aggravated assault."<br><br>"Aggravated assault," under comment 1 to §2A2.2 "means a felonious assault that involved . . . (D) an intent to commit another felony."<br><br>Alam's assault constituted a felonious assault because it involved the intent to commit another felony. Alam's assault on law enforcement was directly related to his participation in and support of the civil disorder. Because the felonious assault was committed with the intent to commit another felony, i.e., to obstruct officers during the civil disorder (in violation of 18 U.S.C. § 231(a)(3)), the assault also constituted an aggravated assault pursuant to U.S.S.G. § 2A2.2 cmt. n.1(D). |
| --- | --- | --- |
| Base Offense Level | 14 | U.S.S.G. § 2A2.2 |
| Official Victim | +6 | U.S.S.G. § 3A1.2(a), (b): If the victim was a government officer or employee, the offense of conviction was motivated by such status, and the applicable guideline is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels.<br><br>The officers Alam assaulted were from the USCP. They wore clearly marked uniforms and gave orders for rioters to stop. Alam actions made it clear he was willing to go through officers to access the House, thus he was motivated by their status as police officers. |
| Total | 20 | |

**Count Three: 18 U.S.C. § 231(a)(3) --Obstructing Officers During a Civil Disorder and Aiding and Abetting**

Since there is no applicable Chapter Two Guideline for this offense in the Statutory Appendix, use "the most analogous guideline." U.S.S.G. § 2X5.1. Here, that is U.S.S.G. § 2A2.4, "Obstructing or Impeding Officers."

4

| Base Offense Level | 10 | U.S.S.G. § 2A2.4(a) |
|---|---|---|
| Specific Offense Characteristic | +3 | U.S.S.G. § 2A2.4(b)(1): "If (A) the offense involved physical contact … increase by 3 levels." <br><br> See analysis in Count 1. |
| Cross reference | See below. | U.S.S.G. § 2A2.4(c)(1): "If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)." <br><br> The Application Notes to Section 2A2.2 define "aggravated assault" as a "a felonious assault that involved . . . (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; . . . or (D) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1. <br><br> *See analysis in Count 1.* |
| Base Offense Level | 14 | U.S.S.G. §2A2.2(a) (Aggravated Assault) |
| Special Offense Characteristic: Dangerous Weapon | +4 | U.S.S.G. § 2A2.2(b)(2) <br> Alam used a helmet to bash the windows out of the Speaker Lobby Door. This was one of the most fraught and dangerous moments in the January 6 attack on the Capitol. While Alam was striking the glass, members of Congress had not fully evacuated the House Chambers, and some members of Congress were just yards away from Alam and the other rioters. Other House members in the Upper House Chamber had not yet been able to evacuate and had sheltered in-place. Alam's actions in breaking the glass with his fists and then the helmet further incited the mob and had he and other rioters broken through the door, would have placed members of Congress in even more serious risk of injury. |
| Chapter Three Adjustment | +6 | U.S.S.G. § 3A1.2(a), (b): If the victim was a government officer or employee, the offense of conviction was motivated by such status, and the applicable guideline is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels. <br><br> *See analysis in Count 1.* |
| Total | 24 | |

**Count Four: 18 U.S.C. § 1361-Destruction of Property**

| Base offense level | 6 | U.S.S.G. §2B1.1(a)(2) |
|---|---|---|
| Special Offense Characteristic: possession of a dangerous weapon | 14 | U.S.S.G. §2B1.1(b)(16)(A) & (B): "If the offense involved (A) the conscious or reckless risk of death or serious bodily injury or (B) possession of a dangerous weapon (including a firearm) in connection with the offense, increase by 2 levels. If the resulting offense level is less than level 14, increase to level 14."<br><br>Alam used a helmet to bash the windows out of the Speaker Lobby Door. The moment when Alam began to bash the glass window of the Speaker Lobby Door was one of the most fraught and dangerous moments in the January 6 attack on the Capitol. While Alam was striking the glass, members of Congress had not fully evacuated the House Chambers, and some members of Congress were just yards away from Alam and the other rioters. Other House members in the Upper House Chamber had not yet been able to evacuate and had sheltered in-place. Alam's actions in breaking the glass with the helmet and with his fists incited the mob and had he and other rioters broken through the door, would have placed members of Congress in even more serious risk of injury. |
| Total offense level | 14 | |

**Count Six: 18 U.S.C. § 1752(a)(1), (b)(1)(A)—Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon**

The Statutory Appendix lists two guidelines for a Section 1752 offense, U.S.S.G. §2A2.4 (Obstructing or Impeding Officers) and §2B2.3 (Trespass). The Guidelines direct that, if Appendix A specifies more than one guideline, use the "most appropriate" guideline for the offense conduct charged in the count of conviction. *See* §1B1.2 n.1. Here, the most applicable guideline is § 2B2.3.

| Base Offense Level: | 4 | U.S.S.G. § 2B2.3(a) |
|---|---|---|
| Specific Offense characteristic | +2 | U.S.S.G. § 2B2.3(b)(1)(A)(vii): the trespass occurred "at any restricted building or grounds." On January 6, 2021, the U.S. Capitol was restricted because protectees of the United States Secret Service were visiting. *See* 18 U.S.C. § 1752(c)(1)(B). |
| Specific Offense characteristic | +2 | U.S.S.G. § 2B2.3(b)(2): a dangerous weapon was possessed.<br><br>The jury's conviction necessarily means Alam possessed a dangerous weapon in the restricted area of the Capitol complex on January 6, 2021. Alam possessed and used a helmet in a dangerous and deadly manner to smash through the windows of the Speaker's Lobby doors. |
| Cross Reference | See below. | U.S.S.G. § 2B2.3(c)(1): "If the offense was committed with the intent to commit a felony offense, apply § 2X1.1 in respect to that felony offense, if the resulting offense level is greater than that determined above." |
| Base Offense Level (adjusted) | 14 (from Count Three) | U.S.S.G. § 2X1.1(a): "The base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."<br><br>Alam entered and remained in the restricted area of the Capitol building for the purpose of obstructing officers during a civil disorder. The substantive offense is thus Count Three. Accordingly, the guideline for Count Three (U.S.S.G. § 2A2.2) applies here.<br><br>*See* Count Three above for detailed explanations of the applicability of the specific offense characteristics in U.S.S.G. § 2A2.2. |
| Special Offense Characteristic: Dangerous Weapon | +4 | U.S.S.G. § 2A2.2(b)(2)(B): "a dangerous weapon (including a firearm) was otherwise used." |

7

|  |  | *See also the analysis in Count 3.* |
|---|---|---|
| Total | 18 |  |

**Count Seven: 18 U.S.C. § 1752(a)(2), (b)(1)(A)—Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon**

The Statutory Appendix lists two guidelines for a Section 1752 offense, U.S.S.G. §2A2.4 (Obstructing or Impeding Officers) and §2B2.3 (Trespass). The Guidelines direct that, if Appendix A specifies more than one guideline, use the "most appropriate" guideline for the offense conduct charged in the count of conviction. *See* §1B1.2 n.1. Here, the most applicable guideline is § 2A2.4.

| Base/Total Offense Level: | 10 | U.S.S.G. § 2A2.4(a) |
|---|---|---|
| Specific Offense Characteristic | +3 | U.S.S.G. § 2A2.4(b)(1)(A): "If (A) the offense involved physical contact … increase by 3 levels."<br><br>Alam committed an assault while engaging in disorderly and disruptive conduct on restricted Capitol grounds which involved physical contact when he pushed against officers guarding the Speaker's Lobby and punched around their heads and faces. |
| Cross Reference | See below | U.S.S.G. §2A2.4(c) directs that the cross-reference in §2A2.2 applies "if the conduct constituted aggravated assault."<br>"Aggravated assault," under comment 1 to §2A2.2 "means a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury with that weapon; (B) serious bodily injury; . . . or (D) an intent to commit another felony."<br><br>*See analysis in Count 1.* |
| Base Offense Level | 14 | U.S.S.G. § 2A2.2 |
| Special Offense Characteristic: Dangerous Weapon | +4 | U.S.S.G. § 2A2.2(b)(2)(B): "a dangerous weapon (including a firearm) was otherwise used."<br><br>The Jury's guilty verdict on Count Six established that Alam used or carried a dangerous weapon. *See* 18 U.S.C. § 1752(b)(1)(A) (punishing the defendant for "during and in relation to the offense, us[ing] or carri[ng] a deadly or |

8

| | | dangerous weapon or firearm"). In this case, Alam used the helmet to smash the windows. *See* U.S.S.G. § 1B1.1 cmt. n.1(E).<br><br>*See also the analysis in Count 3.* |
|---|---|---|
| Total | 18 | |

**Count Eight: 18 U.S.C. § 1752(a)(4), (b)(1)(A)— Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon**

The Statutory Appendix lists two guidelines for a Section 1752 offense, U.S.S.G. §2A2.4 (Obstructing or Impeding Officers) and §2B2.3 (Trespass). The Guidelines direct that, if Appendix A specifies more than one guideline, use the "most appropriate" guideline for the offense conduct charged in the count of conviction. *See* §1B1.2 n.1. Here, the most applicable guideline is § 2A2.4.

| Base/Total Offense Level: | 10 | U.S.S.G. § 2A2.4(a) |
|---|---|---|
| Specific Offense Characteristic | +3 | U.S.S.G. § 2A2.4(b)(1)(A): "If (A) the offense involved physical contact … increase by 3 levels."<br><br>See analysis above. |
| Specific Offense Characteristic | +3 | U.S.S.G. § 2A2.4(b)(1)(B): If "(B) a dangerous weapon (including a firearm) was possessed and its use was threatened, increase by 3 levels."<br><br>See analysis above. |
| Cross Reference | See below | U.S.S.G. §2A2.4(c) directs that the cross-reference in §2A2.2 applies "if the conduct constituted aggravated assault."<br><br>"Aggravated assault," under comment 1 to §2A2.2 "means a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury with that weapon; (B) serious bodily injury; . . . or (D) an intent to commit another felony."<br><br>*See analysis in Count 1.* |
| Base Offense Level | 14 | U.S.S.G. § 2A2.2 |

9

| Specific Offense Characteristic | +4 | U.S.S.G. § 2A2.2(b)(2)(B): "a dangerous weapon (including a firearm) was otherwise used." *See analysis above for Count 3.* |
|---|---|---|
| Chapter Three Adjustment | +6 | U.S.S.G. § 3A1.2(a), (b) The victims of Alam's physical violence include MPD Officers Yetter, Lively, and Lanciano, who are government officers. Alam's conduct was motivated by their status as police officers who were doing their job, attempting to clear the rioters from the Capitol building and grounds. *See the U.S.S.G. § 3A1.2(c)(1) analysis in Count 1.* |
| Total | 24 | |

**Counts Nine, Ten and Eleven: 40 U.S.C. § 5104(e)(2)(D), (F), and (G)—Disorderly Conduct, Physical Violence and Parading, Demonstrating, or Picketing in a Capitol Building or Grounds**.

Counts Nine, Ten, and Eleven are Class B misdemeanors to which the Sentencing Guidelines do not apply. *See* USSG §§ 1B1.2(a), 1B1.9; 18 U.S.C. § 3559(a)(7); 40 U.S.C. § 5109(b).

**Grouping Analysis**

Under U.S.S.G. § 3D1.2, "closely related counts" group.

Group 1

Counts One, Three, and Eight group under U.S.S.G. §3D1.2(b) because they involve the same victim—USCP officers at the Speaker's Lobby door—and similar acts "connected by a common criminal objective"—assaulting and obstructing officers trying to protect the House floor. Counts Three and Eight have the highest offense level for the group (24), and accordingly, the offense level for Group 1 is 24.

10

Group 2

Counts Six and Seven group under U.S.S.G. §3D1.2(b) because they involve the same victim—Congress—and similar acts "connected by a common criminal objective" – obstruction through trespass and disruptive conduct. Counts Six and Seven share the highest offense level for the group (18), and accordingly, the offense level for Group 2 is 18

Group 3

"Group 3" consists of Count Four and involves the Capitol Architect as a victim.

**Combined Offense Level**

Groups One, Two, and Three will all group under U.S.S.G. § 3D1.2(c) because Count Four embodies conduct (the use of the helmet to bash the windows out of the Speaker Lobby Door) that serves as a specific offense characteristic (use of a dangerous weapon, pursuant to U.S.S.G. § 2A2.2(b)(2)(B)) to counts in Group 1 (Counts Three and Eight) and Group 2 (Counts Six and Seven). Therefore, the combined offense level is 26.

**Request for a Six Level Departure Remains Warranted**

After determining the defendant's Guidelines range, a court then considers any departures or variances. *See* U.S.S.G. § 1B1.1(a)-(c) and § 1B1.1, cmt. (background). The departures recommended by the government in its initial sentencing memorandum apply with equal weight as before. Because the defendant's Guidelines range does not capture the unprecedented and uniquely harmful nature of his crimes, which struck at the heart of our democracy and the rule of law, the government respectfully requests that the Court depart or vary upwards from the top of the Guidelines range.

Alam was an avid and willing participant in an unprecedented crime. He was consistently at the forefront of a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. He targeted the peaceful transfer of power, an essential government function, and one of the fundamental and foundational principles of our democracy. Like every member of the mob, Alam "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87. Alam's actions transcend those of the hundreds of rioters surrounding him. He is one of a very small number of defendants who incited others, assaulted officers, destroyed property, and unlawfully entered the building. Alam was consistently at the head of the fray, escalated several encounters with police, and smashed the final barricade in the Speaker's Lobby that stood between the angry mob and their quarry.

But nothing in this defendant's Guidelines calculation reflects these facts. Defendant would face the same offense level if his crimes had not endangered the democratic process or interfered with the peaceful transfer of power.[1] There is no specific offense characteristic in the Guidelines

---

[1] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot

for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116-DLF, Sent. Tr. at 85. So a sentence within the defendant's Guidelines range here would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

*Upward Departure Pursuant to U.S.S.G. § 5K2.7*

The Guidelines expressly state that a departure is warranted when an offense results in "a significant disruption of a governmental function" and the Guidelines do not reflect the appropriate punishment for the offense. U.S.S.G. § 5K2.7.[2] In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected." As discussed in the government's sentencing memorandum, Alam's conduct on January 6, 2021, warrants a four-level upward departure under U.S.S.G. § 5K2.7 for disruption of government function. This is even more true now post-*Fischer*, as the defendant will otherwise not be held fully accountable for his plan to obstruct the congressional certification of the presidential election. Notwithstanding that the *Fischer* case results in no conviction under Count Five for the defendant, the jury still found,

---

when drafting the Guidelines. And the Supreme Court's recent decision in *Fischer* demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, slip op. at 29 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

[2] This guideline does not require the government to establish a direct link between the defendant's misconduct and the alleged disruption, nor does it "require that the disruption be of any particular type or consequence." *See United States v. Saani*, 650 F.3d 761, 765–66, 771 (D.C. Cir. 2011).

beyond a reasonable doubt, that he specifically intended to obstruct the congressional certification. For those intentional and egregious actions to have no impact on his sentence in this case would not hold him fully accountable for the full measure of his conduct.

Chapter 5, Part K of the Guidelines "identifies some of the circumstances that the Commission may have not adequately taken into consideration in determining the applicable guideline range," which may warrant a departure. U.S.S.G. § 5K2.0(a)(2)(A). One such circumstance is when an offense results in "a significant disruption of a governmental function." U.S.S.G. § 5K2.7. A departure under this guideline is warranted in "unusual" circumstances where the Guidelines do not reflect the appropriate punishment for the offense. *Id*. In such circumstances, "the court may increase the sentence above the authorized guideline range to [1] reflect the nature and extent of the disruption and [2] the importance of the governmental function affected." *Id*. Indeed, judges of this Court have already applied § 5K2.7 in January 6 cases. *See United States v. Eicher*, 22-cr-38 (BAH), Sent. Tr. 9/15/23 at 50 (applying § 5K2.7 because the defendant "join[ed] a mob, in the center of the melee, and through the sheer numbers and aggressive conduct towards police, breached the Capitol resulting in stopping the legitimate business of Congress for hours"); *United States v. Black*, 21-CR127-ABJ, Sent. Tr. 5/16/23 at 27 (applying an upward departure pursuant to § 5K2.7 for a January 6 rioter). Because the seriousness of defendant's crimes is not adequately captured by the applicable Guidelines, an upward departure under § 5K2.7 is appropriate.

*Upward Departure under U.S.S.G. § 3A1.4, Note 4*

The government's sentencing memorandum also requested a departure under Section 3A1.4, Note 4, of the Guidelines and sought an additional two-level departure to account for his threatening, violent, and horrific conduct intended to coerce government. The government's request for this departure is unaffected by the dismissal of Count Five and continues to be fully warranted for all of the reasons previously stated in the government's sentencing memorandum. ECF 123, at 33-38.

*Fischer* has no bearing on the fact that, while a misdemeanor conviction of §1361 does not expressly qualify for an adjustment under Section 3A1.4, it does warrant an upward departure under §3A1.4 cmt. n.4(A) ("Note 4") under these aggravating circumstances. ECF 123, at 33-34.

Further, the *Fischer* case does not change the fact that the defendant's words and actions were "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," as Note 4 specifically states warrants an upward departure. *Id.*, cmt. n.4(A). The defendant's felony offenses of Assaulting, Resisting or Impeding Certain Officers (Count One) and Interference with Officers During a Civil Disorder are not enumerated under 18 U.S.C. § 2332b(g)(5), but these offenses were clearly "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." *Id.* Further, Alam was also found guilty of three additional offenses which involved physical violence and/or a dangerous weapon. As the underlying evidence reflects, the defendant attempted to, and temporarily did, prevent Congress from certifying the 2020 Electoral College vote and did physically prevent Members of Congress from performing their constitutional duties

15

inside the Capitol building, all through the threatened and actual use of force, directed at police and legislators alike.

**Variance from the Guidelines**

If the Court declines to depart, an upward variance is warranted. An upward variance is appropriate when "the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range." *United States v. Murray*, 897 F.3d 298, 308–09 (D.C. Cir. 2018) (cleaned up). While the Supreme Court's decision in *Fischer* has changed defendants' advisory Guideline range in some cases, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021 in its entirety. To reduce [defendant's] sentence . . . would require this Court to take a drastically different view of [defendant's] conduct." *United States v. Hostetter*, 21-CR-392-RCL, ECF 507, at 4-5 (cleaned up). *See also*, *United States v. Kelly*, 21-CR-708-RCL, ECF 151, at 5 ("Nothing about *Fischer* or any hypothetical outcome of [defendant's] appeal bears directly on the severity of his conduct on January 6th . . . . Likewise, the outcome in *Fischer* would not dictate the Court's application of the sentencing factors prescribed in 18 U.S.C. § 3553(a)")

Also unprecedented is the need for January 6 sentences to promote respect for the law and deter future crime. *See* 18 U.S.C. § 3553(a)(2)(A), (B). The January 6 rioters went far beyond merely breaking the law. "There is a difference between breaking the law and rejecting the rule of law." *See* Opening Remarks, January 6 Select Committee (Rep. Kinzinger).

And the risk of another attack on the Capitol remains. "The heated and inflammatory rhetoric that brought the defendant to the District has not subsided. The lie that the election was stolen and illegitimate is still being perpetrated.." *United States v. Cleveland*, 21-CR-159-ABJ, Sent. Tr. at 94-95. Powerful voices continue to minimize the crimes that occurred on that day. If we are to prevent another January 6 and restore respect for the rule of law, sentences in these cases must send a message, and that message will not be conveyed by treating the January 6 riot as a run-of-the-mill offense.

### Resulting Offense Level

Although Count Five is no longer before the Court, the guidelines have not changed and the egregiousness of Alam's conduct on that day has not changed. A 4-level upward departure under § 5K2.7 and a 2-level upward departure under § 3A1.4 cmt. n.4(A) is therefore warranted and the total offense level would be 30.

### Criminal History Category and Resulting Guideline Range

The U.S. Probation Office calculated the defendant's criminal history as category III. PSR ¶ 78. Accordingly, based on the government's calculation of the defendant's total adjusted offense level of 30 (reflecting a six-level upward departure), Alam's Guidelines imprisonment range is 121 to 151 months' imprisonment. The government's recommendation of 136 months' incarceration falls in the middle of that range.

As discussed below, even if the Court disagrees with the application of these specific departures, the government nevertheless believes a 136-month sentence is necessary and just under §3553(a). Thus, whether characterized internally as a departure or externally as a variance, the

government's recommendation is fair, accounts for Alam's egregious conduct, poor criminal history and characteristics, and provides adequate deterrence.

## VIII. CONCLUSION

For the reasons set forth above, the government stands on its recommendation that the Court impose a sentence of 136 months' incarceration, three years of supervised release, $4,484 in restitution, and a mandatory assessment of $655.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY: /s/ Joseph S. Smith, Jr.
JOSEPH S. SMITH. JR.
CA Bar No. 200108
Assistant U.S. Attorney
601 D Street, N.W.
Washington, D.C. 20530
(619) 546-8299
joseph.s.smith@usdoj.gov

/s/ Rebekah Lederer
REBEKAH LEDERER
Pennsylvania Bar No. 320922
Assistant U.S. Attorney
601 D Street. N.W
Washington, DC 20530
(202) 252-7012
rebekah.lederer@usdoj.gov