BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,          .
                                   .   Case Number 21-cr-190
          Plaintiff,               .
                                   .
     vs.                           .
                                   .   Washington, D.C.
ZACHARY JORDAN ALAM,               .   September 11, 2023
                                   .   9:48 a.m.
          Defendant.               .
- - - - - - - - - - - - - - - - -


TRANSCRIPT OF JURY TRIAL, DAY 5
(MORNING SESSION)
BEFORE THE HONORABLE DABNEY L. FRIEDRICH
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the United States:      REBEKAH LEDERER, AUSA
                            United States Attorney's Office
                            601 D Street Northwest
                            Washington, D.C. 20579

                            JOSEPH SMITH, AUSA
                            United States Attorney's Office
                            880 Front Street
                            San Diego, California 92101

For the Defendant:          STEVEN METCALF II, ESQ.
                            Metcalf & Metcalf, P.C.
                            99 Park Avenue
                            Sixth Floor
                            New York, New York 10016

Official Court Reporter:    SARA A. WICK, RPR, CRR
                            333 Constitution Avenue Northwest
                            Room 4704-B
                            Washington, D.C. 20001
                            202-354-3284


Proceedings recorded by stenotype shorthand.
Transcript produced by computer-aided transcription.

P R O C E E D I N G S

(Call to order of the court.)

(Jury not present.)

COURTROOM DEPUTY:  Your Honor, we are in Criminal Action 21-190, United States of America versus Zachary Alam.

If I can have counsel please approach the podium and state your names for the record, starting with the United States.

MR. SMITH:  Good morning, Your Honor.  Joseph Smith and Rebekah Lederer for the United States.  We are joined at counsel table by Melissa Macechko, our paralegal, and by Rosemaria Marketos, the special agent for the FBI, who is our case agent.

THE COURT:  Good morning.

MR. METCALF:  On behalf of Mr. Alam, Steven Metcalf.

Good morning, everyone from the government's side, and good morning, Your Honor.

THE COURT:  Good morning.  Good morning, Mr. Alam.

All right.  So I want to bring in the jury as soon as possible.  We have -- I want to tell you all, I have a few proposed changes to the jury instructions that we will discuss in the charging conference.  The changes are just to conform the language to the evidence that's come in at trial.  Small tweaks.

But did you all take a look at the jury instructions?  If not, you need to do that on our next break.  All right?  I want to be ready to go.

The Court has two motions before it.  One is Mr. Alam's motion to call Officers McKenna, Tyson, and Byrd; and two, the government's motion to reopen its case to hear testimony from the Architect of the Capitol.  Let's start with the government's motion first.

Mr. Smith, it would have been really helpful to know the reason why the Capitol witness wasn't available last week.  Why did I just hear it for the first time last night?

MR. SMITH:  Your Honor, the details of it, the witness -- in my conversations with him over with the weekend, when I asked for the particulars, he was somewhat reticent to give the details, given the private nature of it.  I had the fact that he was absolutely unavailable on Thursday and Friday unexpectedly, and that's what I had at the time.  We didn't anticipate, and I didn't go into more detail because I did not anticipate and I should have, and that's on me, that we would be completed with the presentation of evidence by the end of the day Friday.

THE COURT:  All right.  You know, I might have been inclined to grant the government's motion to delay trial until this morning so that the government could call its witness, but this is information the government should have known much earlier.

Mr. Metcalf had to give his opening at a time that I'm sure he would have preferred to have waited until today.  I would

have perhaps delayed the trial for the witness to testify today. I do think it would be prejudicial to the defense to reopen the case to allow you to call this witness when you could have known this information before.

I also think the jury selection took too long.  You could have called him on Wednesday.  You could have found out -- it just struck me as highly unusual for the government to say our witness is available on Wednesday and then not until Monday in trial without some explanation.

And we now have a potential COVID problem.  A court security officer tested positive for COVID over the weekend.

So the Court's interest is, you know, trying this case efficiently.  You've got three other felonies charged, five misdemeanors in addition.  I don't think this makes any difference in terms of the government's ultimate result here.

And so I am -- I do think I have the discretion under *Morgan* to deny the motion, and because the government should have and could have brought this information to me earlier, I will deny the motion.  And that's 294 F.2d 911 at 913.

In light of that, am I correct that the government wants to move to dismiss Count 4 before it goes to the jury?  This would be -- if not, I'm going to grant the Rule 29.

MR. SMITH:  Your Honor, Count 4 itself --

THE COURT:  I'm sorry.  The portion -- the over $1,000 portion.

MR. SMITH:  Your Honor, our position is that, given the fact that there were four windows broken out of an historic building that need to be replaced, I think the evidence clearly show that those need to be replaced.  We believe that a reasonable jury could come to the finding that the value of that -- those four windows exceeded $1,000.

So we would ask that the jury be instructed as a lesser included, but at this point, we're not in a position to move to dismiss based upon --

THE COURT:  Even though there's no evidence whatsoever as to the value of the replacement costs, the value of the windows' replacement cost?

MR. SMITH:  There isn't a dollar figure assessed to it, but the jury just needs to find that it exceeded $1,000.  We believe that given the value of the dollar these days and the jurors' common sense and experience, that they could reasonably come to the conclusion that to replace -- both parts and labor to replace four windows that were shattered would exceed $1,000.

THE COURT:  All right.  I tend to disagree.

Mr. Metcalf, let's get the defense's position on that.

MR. METCALF:  As a matter of law, Your Honor, the government has failed to prove its case with regards to Count 4. So we would ask for our Rule 29 motion to be granted with regards to that one count.

And that's our position, Your Honor.

THE COURT:  All right.  Well, I'm going to take a look at the count.  I'm inclined to agree on the government proving over $1,000.

I guess the question is, can the count -- can any portion of the count survive, or does the whole count go?

Anyway, let's table that for now.  We don't have to decide it now.

Moving on to the defendant's motion, Mr. Alam seeks to call three additional police officers as witnesses:  Officers McKenna, Tyson, and Byrd.  Each was behind the Speaker's Lobby door when Mr. Alam struck it and confronted Officers Lively and Yetter.  The Court is going to exclude this testimony, as it would be irrelevant under Rule 401.  It would be confusing, cumulative, and unduly prejudicial under Rule 403.

Mr. Alam certainly has a right to present a defense and call witnesses on his behalf, but the Court has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence.  *U.S. v. Whitmore*, 359 F.3d 609 at 616.

Mr. Alam made a submission to the courtroom deputy this Saturday, and he also made several prior submissions to this Court providing different reasons for calling these officers. The Court is not persuaded by any of Mr. Alam's submissions.

On Saturday, at approximately 4:00 p.m., Mr. Alam e-mailed a second proffer to the courtroom deputy.  According to the

proffer, Mr. Alam will elicit testimony from the officers, one, that there was a shooting called in on the radio at the time he was in the Speaker's Lobby and, two, that it was this radio discussion of a shooting rather than his conduct that obstructed an official proceeding within the meaning of Title 18 United States Code Section 1512.

The Court will deny the motion first because the proffer is untimely.  The Court instructed Mr. Metcalf to submit his proffer to the Court by 3:00 p.m. on Saturday.  Instead, Mr. Metcalf sent an e-mail to the courtroom deputy at 4:00 p.m. That e-mail was untimely on its own terms.  In addition, the practice in this district and in every district the Court's aware of is that when the Court says file something, a Court means file on the docket, don't e-mail them to the courtroom deputy to an e-mail that isn't monitored on the weekend.

As a consequence of your actions, Mr. Metcalf, the Court did not get the proffer until about 9:30 or 10:00 p.m. last night.

But more importantly than that, the proffer falls on the merits.  The thrust of Mr. Alam's submission is that the officers will testify that the radio discussion of shots fired in the Capitol building, not Mr. Alam's own conduct, delayed Congress's electoral count proceedings after Mr. Alam arrived in the Speaker's Lobby.

But the officers lack personal knowledge of what would or

wouldn't delay Congress's certification process.  That's a question for Congress's security staff and the vice president's security detail, say Agent Hawa, not the individual officers guarding the Speaker's Lobby.

Unless Mr. Metcalf indicates that he's going to call a witness with personal knowledge of Congress's security decisions on January 6, someone who can testify that the radio discussion of a shooting did in fact cause delays in delaying Congress to reconvene, the testimony of individual officers as to the shooting is irrelevant and will likely confuse the jury.

In addition, the bulk of the acts of obstruction with which Mr. Alam is charged occurred before the radio discussion of any shooting.  Among other things, Mr. Alam helped rioters enter the Capitol grounds at around 2:00 p.m.  He's alleged to have entered the Capitol at 2:17 p.m.  Focusing on activities in the Capitol that happened after that period of time would likely confuse and distract the jury.

Against all of this, the Court must balance the risk of prejudice and confusion associated with these officers' testimony.  As the Court has noted many times before trial and during this trial, the Court is concerned that this risk is substantial.  The officers behind the Speaker's Lobby door were all involved to some degree in the shooting of Ms. Babbitt.  The Court's gravely concerned that undue discussion of Ms. Babbitt's shooting will confuse and prejudice the jury.

On this note, the Court's tried hard to keep out similarly prejudicial evidence, the fact that a protestor was shot in the face by police officers, but Mr. Metcalf's examination of Mr. Loyd brought this evidence back in.  The Court does not want to see history repeat itself with more officers from behind the Speaker's door.

Mr. Alam's other reasons for calling the officers to testify also lack merit.  First, he says that the officers would testify that he was near Ashli Babbitt when she was shot, providing an exculpatory reason why he exclaimed "we need guns" when he left the Capitol.

But Inspector Loyd and Sergeant Lively have already testified that Mr. Alam was near Ms. Babbitt at the time of the shooting.  Loyd said on cross Mr. Alam said "we need guns" "after a woman was standing right in front of him and got shot to death; is that correct?"  Loyd says, "Correct."  Lively direct showing Mr. Alam on the stairwell after Babbitt was shot. Exhibits 408.1 and 410.1, which the jury has seen, offer video evidence of the same thing.

Additional testimony that Mr. Alam was near Ms. Babbitt at the time of her shooting would be cumulative and a waste of the jury's time.

Second, Mr. Alam says the officer's testimony will establish his whereabouts in the immediate aftermath of Ms. Babbitt's shooting, but Mr. Alam has not explained why his

precise location after the shooting is of consequence in this action.  He has already stipulated that he remained in the Capitol for a period of time after the shooting, and the government's case does not turn on Mr. Alam's conduct after the shooting in some other way.

The Court recognizes that Mr. Alam's statements after leaving the Capitol bear on his state of mind, for example, whether he intended to obstruct the Electoral College certification while inside the Capitol and, thus, his guilt or innocence as to certain charges, but it has no reason to think Mr. Alam's exact location after Ms. Babbitt's shooting will help illuminate his state of mind in any way.

Third, Mr. Alam says he will ask the officers whether they ordered him to disperse, but that testimony is marginally relevant, given all the other evidence adduced at trial as to whether Mr. Alam was ever directed to disperse or leave the Capitol.  It's also cumulative, as Mr. Alam has already cross-examined Officers Yetter and Lively about whether he was directed to leave the Speaker's Lobby.

And it carries a risk of confusing the jury since a continued focus on dispersal orders may lead the jury to think, for example, that a dispersal order is a necessary element of one of the crimes with which Mr. Alam is charged.

Fourth, Mr. Alam suggested in his September 1 proffer that the officers will help establish that he lacked a safe way to

leave the Speaker's Lobby before Ms. Babbitt's shooting, but that's only minimally relevant. For one thing, the jury has heard a great deal about the modes of egress from the Speaker's Lobby. It has seen the CERT team ascending the stairs and has heard that Officers Yetter and Lively retreated onto those stairs.

It's also not clear why Mr. Alam's opportunity to exit bears on his guilt or innocence of the crimes charged in the indictment.

Finally, Mr. Alam observes that some of the counts in the indictment, for example the 1512 count, allege continuing offenses. But he's not explained why this fact makes the testimony of these officers relevant, and the Court cannot see a reason either.

Again, against all this, the Court must balance the risk of prejudice and confusion associated with the officers' testimony. This risk again is substantial. Again, there's a significant risk that a discussion of Ms. Babbitt's shooting will confuse and prejudice the jury. So the Court will exclude that evidence.

All right. That leaves us with you, Mr. Metcalf. Is Mr. Alam going to testify?

MR. METCALF: No, Your Honor.

THE COURT: He's not? All right.

MR. METCALF: No.

THE COURT:  Then I do want to have a colloquy with him on the record about that.

Anything else we need to do procedurally?

Actually, I'm inclined right now to tell the jury, if the defense isn't presenting any case at all -- is that what I'm hearing?

MR. METCALF:  Based on Your Honor's rulings this morning, yes, we have no witnesses.

THE COURT:  All right.  So in light of that, I think we need to advise the jury, maybe I'll bring them in and explain -- well, I don't want to do that before I have a colloquy with Mr. Alam, but I would be inclined to bring them in and tell them that we are going to discuss some legal issues, and then we'll come back.  I will instruct them and hear closing arguments.

So I don't think we need a lot of time to discuss instructions, but that depends on you all.  Have you all done your homework?

MR. METCALF:  I don't think that we need a lot of time either.

THE COURT:  Okay.

MR. METCALF:  I would just ask for -- prior to openings maybe --

THE COURT:  You mean closings?

MR. METCALF:  Closings, maybe about a 10- to 15-minute

1034

break so I can just make a couple changes based on Your Honor's ruling this morning.

THE COURT:  Let's just give them time -- maybe it would be nice for them to have a break instead of going from the instructions straight into closings.  I was going to suggest, Mr. Metcalf, you do that in this break, but I think they likely will want a break as well.

All right, then.  I'll speak briefly to Mr. Alam now, and then we'll bring them in and tell them to come back at -- I need to get time -- I need time to print out the instructions once revised.

So have them back in the room around 10:45?  Does that make sense to you all?  And I'll instruct them, and then we'll do closings all before lunch.  Does that work?

MR. METCALF:  Sounds good, yeah.

MS. LEDERER:  Yes, Your Honor.

THE COURT:  All right.  So Mr. Alam, if I can have you come up to the podium.

Mr. Alam, I just want to make sure that you understand that you have an unconditional right to testify at trial if you choose to do so.

Do you understand that, sir?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that you alone control the decision whether or not to testify?

THE DEFENDANT:  Yes.

THE COURT:  Have you had enough time to talk to Mr. Metcalf about this decision not to testify?

THE DEFENDANT:  Yes.

THE COURT:  And have you voluntarily decided not to testify at your trial?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  All right.  Either side want anything more put on the record at this point?

MR. METCALF:  Nothing further, Your Honor.

MS. LEDERER:  No, Your Honor.

THE COURT:  Okay.  Very well, then.  So we'll bring in the jury, and we'll tell them that -- you may have a seat.  I'll tell them that we have to discuss some legal issues, that the defense is not presenting a case, and the evidence portion of the trial is over, and the next step will be the instructions, followed by the closing arguments of counsel.

All right?  Okay.  They'll come back at 10:45.

(Pause.)

THE COURT:  Counsel, I understand there was a snafu about the jury instructions.  We will give you adequate time, but is there any reason why we shouldn't go ahead and bring the jury in and excuse them, and I will have them come back at, what do you think, 11:00?  11:15?  How much time do you need?

MR. METCALF:  I think 11:15 makes the most sense.

THE COURT:  All right.  I don't want anyone to feel rushed.

MR. SMITH:  11:15 is fine with the government, Your Honor.

THE COURT:  There's some question, then, whether we will do the closings, complete them before lunch.  We will have to see.  All right?  So we might think about if we come back at 11:15, it might make sense for me to instruct the jurors, then hear the government's closing, then give them a lunch, and then that gives Mr. Metcalf time to make the changes you need for closing, and then after lunch do Mr. Metcalf's closing and the rebuttal.

Do you agree?

Let's just see how it goes, but we will bring them back in an hour to make sure we have adequate time to deal with the instructions.

MR. METCALF:  That works.

THE COURT:  Just note to self, It would have -- I know this is on us, but it would have been helpful to hear that you all actually didn't know what I was talking about when I was asking you to review the updated jury instructions.

So my apologies for it not going out, but we had no idea you didn't have them.

Okay.  Go ahead and get the jury.

(Jury entered courtroom.)

THE COURT: All right, ladies and gentlemen. Welcome back. I hope you had a restful weekend.

I brought you back into the courtroom to let you know there will be no further evidence produced in this case. As I told you during jury selection at the outset of trial, it is entirely the government's burden to prove the charges against Mr. Alam beyond a reasonable doubt. Mr. Alam has no obligation to present any evidence at all, and he has chosen not to do so.

So we will come back at 11:15 for me to instruct you, to give you some initial instructions on the law, and then we will hear closing arguments from counsel for both sides. I'm not quite sure when we will break for lunch, but in all likelihood, we will break for lunch in the middle of the arguments. And then we will come back and hear the remainder, and then I will give you some final instructions, and then you will be -- the case will be in your hands.

I just didn't want you sitting back there wondering what's going on. We have some legal issues to discuss. So I want to give you all a break. It will be a long day after this for you, but go ahead, relax, walk around. Don't get too far away. But do what you need to do and come back at, let's say, 11:10 so that you're ready to go at 11:15.

All right? Thank you, ladies and gentlemen.

(Jury exited courtroom.)

THE COURT: All right. Let me see if I can pull up

the instructions.  I didn't bring the latest version out here, but to let you all know what additional revisions I'm considering and would like your feedback on when I come back.

Okay.  The first count, this would be on the elements of the charged offenses.  This is beginning at page 21 -- sorry, 31.  It's instruction 23, entering or remaining in a restricted area or grounds with a deadly or dangerous weapon.

The indictment does not charge serious bodily injury with respect to this count; right?  So I would be inclined to strike that.

Instruction 19 also revised to bring in conformity with the elements of the crime as charged in the indictment.  So I would propose that the first paragraph read, "Count 1 of the indictment charges the defendant with forcibly assaulting, resisting, imposing, impeding, intimidating, or interfering with officers or employees of the United States who are engaged in the performance of their official duties while making physical contact with the person or acting with the intent to commit another felony, which is a violation of federal law."

And I can -- we'll bring these out with a red line so you all can see with your own eyes what I mean exactly.

Any objection to that in theory?  I know you need to see it.

MR. SMITH:  No, Your Honor.  And we're just addressing the first part, because I think in the first element there's

also probably some adjustments that need to be made.

THE COURT: Okay. I'm also inclined to strike -- although I will hear your positions on this, I don't think that the government asked for this sentence. There is a sentence in the proposed instructions that were on page 27 that states at the top, line 2, "the Electoral College certification is an official proceeding"; I would be inclined to strike that.

Any objection from either side?

MR. SMITH: I think you said page 27. I don't think it's 27, but --

THE COURT: Sorry. Now I'm looking at the red line version. So I'm off. Sorry.

MR. SMITH: We believe that that is a correct statement of law, and we would ask that it be -- that the jury be instructed. That would be our position.

THE COURT: Okay. Well, you didn't request it.

Mr. Metcalf?

MR. METCALF: I have no objection to removing that language.

THE COURT: All right. The Court will remove it.

MR. SMITH: Your Honor, I know we were talking about instruction 19 before, and in the first element of instruction 19, I'm not sure if the Court was going to get back to that. You were talking about 1512, so I thought maybe you were finished --

THE COURT: Go ahead.

MR. SMITH: Where it says the defendant assaulted, resisted -- or the elements of the offense, first, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with one or more officers from the United States Capitol Police positioned on either side of the Speaker's Lobby door. That's what it says in --

THE COURT: Right. And that needs to be changed --

(Simultaneous speaking.)

MR. SMITH: -- to in the vicinity of the officers --

THE COURT: Well, can we just put the officers' names?

MR. SMITH: Yes, Your Honor. We have --

THE COURT: Is there any reason why we can't just do that?

MR. SMITH: No, Your Honor. We certainly can.

THE COURT: Okay. Mr. Metcalf, you're okay with that?

MR. METCALF: I am.

THE COURT: Okay. When we get to instruction 27, this is Count 10, is there -- there's no reason to include "or grounds," is there, because all of the allegations of physical violence occurred in the building; right?

MS. LEDERER: Your Honor, I just apologize. My computer isn't working here. I --

THE COURT: This is for Section 5104(e)(2)(F).

MS. LEDERER: Which is the violence one?

THE COURT:  The violence.  Didn't all the proven acts of violence occur inside the building, not on the grounds?

MR. SMITH:  Your Honor, there is video or testimony of it regarding him using a flag pole, metal stand and hitting it against the steps itself outside on the grounds.  So there's at least some evidence of that.

THE COURT:  In that same instruction, is there any reason -- I don't see why we would include this paragraph in the definition section, saying the term "U.S. Capitol grounds."  I think it's fine to say it includes "the U.S. Capitol located at First Street Southeast in Washington, D.C., and its grounds, which includes squares, reservations, streets, roadways, and walks and other areas."

But you don't have, do you, the map that I think has been introduced in other cases approved by the Architect and recorded by the Office of the Surveyor of the District?  Did you introduce that?

MS. LEDERER:  That should be Exhibit 102, which was the restricted perimeter map.

THE COURT:  And that is the map showing areas comprising the United States Capitol grounds dated June 25th, 1946, approved by the Architect of the Capitol and recorded in the Office of Surveyor of the District of Columbia in Book 127, page 8?  I don't think that's that.

MS. LEDERER:  No, that wouldn't be that, then.

THE COURT:  So that language needs to be stricken; right?

MS. LEDERER:  Yes, Your Honor.

THE COURT:  That's going to confuse the jury.

MR. METCALF:  Your Honor, which sentence was that again?  I'm sorry.  I was re-reading that definition as you were going through it.

THE COURT:  This is the sentence referring to a map, and this is again instruction -- are you on the instruction, Mr. Metcalf, or do you need --

MR. METCALF:  Instruction 10; right?  We're still on 10.

THE COURT:  Instruction 27 for Count 1.  We get to the paragraph about the United States Capitol grounds in the definition section.

MR. METCALF:  Okay, the map showing areas, okay.

THE COURT:  That portion.  I think otherwise, the language is okay if we stop it at "walks."  We stop the sentence to say "the grounds, which includes all squares" -- I don't know what reservations are -- "streets, roadways, and walks," period.

MR. METCALF:  I'm in agreement with that, because the rest of the sentence doesn't seem necessary at all.

MS. LEDERER:  The government is in agreement, Your Honor.

THE COURT:  The concern is how much we allow the jury

to speculate on what is included in this definition without tying it to something.  I think there's plenty of testimony making clear that he was on Capitol grounds and in the Capitol. I don't think that this is a -- will be an issue of confusion.

I'm just wondering whether we should even define "grounds" without it being tied to something else, like a piece of evidence.

MS. LEDERER:  I don't believe so, and I think that this would become more of an issue if it was a case that involved just someone on the outside.

THE COURT:  Right.  So should we just strike the whole paragraph, "the United States Capitol grounds," given that we don't have any specific evidence like the map tethering the jury to something other than these words that don't explain much?

MS. LEDERER:  The government is comfortable with that.

The other suggestion would be to say "as defined by testimony of the witnesses," but I know that you're also going to give an instruction that they have to weigh the credibility of the witnesses.

THE COURT:  I'm inclined to just strike the whole paragraph.

Any objection, Mr. Metcalf?

MR. METCALF:  No, Your Honor.

MR. SMITH:  And Your Honor, when we're on the instruction for Count 10, I believe on the top of the next page,

before we get to instruction 28, it says "the term Capitol buildings" -- oh, it's buildings. I'm sorry. It refers back to Count 9. I apologize. I thought it said "buildings and grounds."

THE COURT: Instruction number 35 refers to transcripts of video and audio recordings. That should be stricken; right? We don't have any transcripts.

MS. LEDERER: No, Your Honor, but there was, I believe, audio recordings that was run over Exhibit 101, which is the montage video.

THE COURT: This says "instructions related to transcripts of video and audio recordings."

MS. LEDERER: Then we're okay.

THE COURT: So strike that.

Instruction 47, this is excusing the alternates. So that's for the end. I'll do that, changing it, of course, to two and the numbers that we selected at the beginning.

Are there -- to the extent you all have other suggestions now or later, I can come back -- ideally, we would finalize this now and I go back and start getting these printed so that we are ready to go, but I want to make sure you have enough time.

So should we come back at 11:00 to get all of your potential changes, or are you ready, Mr. Metcalf? You need time to look at this, don't you?

MR. METCALF: I would like to just give it one more

read, but I think -- I don't have -- all the changes that we've gone through so far seem to be encompassed herein. I just want to give it one more read.

THE COURT: That's fine. We will hold off on making copies.

I want to make sure that we're clear on the one suggestion that Mr. Smith made. Again, that is relating to which number?

MR. SMITH: It's to Count 5, element 1, which is instruction number 22. I'm sorry. It would be --

THE COURT: Yeah, that's right. Is it that count?

MR. SMITH: Your Honor, it was instruction 19. I'm sorry. The 111 count, the first element being "interfered with one or more officers."

THE COURT: Okay. Instruction 19, where are you?

MR. SMITH: On the first element, when it mentions the individuals that --

THE COURT: Oh, right. I would propose saying "first, the defendant assaulted, resisted, imposed, impeded, intimidated, or interfered with one or more officers for the United States Capitol Police, Timothy Lively, Kyle Yetter, or Christopher Lanciano, located in proximity to the Speaker's Lobby."

MR. SMITH: That's fine with the government, Your Honor.

THE COURT: Is that fine with you, Mr. Metcalf?

MR. METCALF:  That's fine, Your Honor.

THE COURT:  So that's the only proposed change for the government?

MR. SMITH:  Yes, Your Honor, as to that particular instruction.

As to the instruction regarding destruction of property, I know Your Honor said you were going to reserve on that.  We believe that the lesser included offense of the misdemeanor assault is warranted in this case, given the evidence presented at trial at the very least.

Certainly, we've lost in the battle of having them instructed on the element.  The elements between the felony offense and the misdemeanor offense just differ by the fourth element, which is the value is in excess of 1,000.

So we would strike that fourth element, and it would just by definition be the misdemeanors destruction.

THE COURT:  All right.  Mr. Metcalf, do you agree with that proposed change?

MR. METCALF:  I'm a little hesitant, but I think it's appropriate, because Your Honor was going to make a ruling as to whether or not the whole count stood or --

THE COURT:  That's what I'm asking.  What's your position on that?

MR. METCALF:  My position is as a matter of law, they have not been able to meet this charge, and the charge should be

dismissed as a matter of law.

If Your Honor --

THE COURT:  But, I mean, why haven't they met a portion of the element --

MR. METCALF:  They have met a portion.

THE COURT:  -- of the charge?

MR. METCALF:  They've met a portion, but that's not how the statute reads.  And when there's value, value has to be proven or shown.  And here, they didn't show any -- there's not a scintilla of any evidence or proof regarding value. Therefore, the whole count should get knocked out.

THE COURT:  What does the statute -- how does it read?

MR. SMITH:  Your Honor, 1361, in the second paragraph is where it delineates the two different offenses and the maximum penalty.  It says, "If the damage or attempted damage to such property exceeds the sum of $1,000, by a fine under this title or imprisonment for not more than ten years or both.  If the damage or attempted damage to such property does not exceed the sum of $1,000, by a fine under this title or by imprisonment for not more than one year or both."

So it specifically delineates the maximum penalties as to the two separate offenses, which is the misdemeanor, which is less than 1,000, and the felony, which is greater than 1,000.

THE COURT:  Mr. Metcalf, I want to make sure I understand your position.  Clearly, there's sufficient evidence

in the record for a reasonable juror to find that he committed property damage.  There's plenty of that.  You're not arguing that.

You're just saying on a Rule 29 motion, the Court has to grant your motion in full, even with respect to the lesser included offense?

In other words, the Court can't grant the government's motion to -- as I understand it, the government's motion is to strike the -- from the indictment the -- and I don't have it in front of me, but the language that relates to $1,000.

And is that right?  I don't want to put words in your mouth, but is that what --

MR. SMITH:  Your Honor, I guess we're not necessarily moving to strike it.  We believe that, given the statute itself, that even though the government alleged greater than 1,000 --

THE COURT:  All right.  I'm disagreeing with you on that, with no evidence whatsoever of value.  So that's where we are.

What is the government -- in light of the Court's -- I guess, then, can the Court grant a Rule 29 on a portion of a count?

MR. SMITH:  Yes, Your Honor.

THE COURT:  Just like the government could have moved to strike a portion of the count?

This is the issue we dealt with pretrial, Mr. Metcalf,

where the government decided not to proceed with respect to the deadly weapon or --

MR. METCALF:  Dangerous or deadly in Count 2.

THE COURT:  Right.  And you had no objection to that motion, because the government cannot broaden the indictment but can take away from the charges pretrial.

But you don't think the Court, on a Rule 29, can do effectively the same where the government has met -- clearly met all the other elements?

There's overwhelming evidence.  And the Court's issue is solely with respect to the value of the property.

You think the Court does not have the authority to do that?

MR. METCALF:  I think the Court does have the authority to do it, but I'm requesting that on the Rule 29 that it be dismissed.  And if --

THE COURT:  But I want to make sure I'm understanding your reasoning.  It's because you don't think there's evidence in the record to meet the other elements?

MR. METCALF:  No, I do think there is evidence in the record to meet the other elements.  This all comes down to value.  I'm not disputing -- I didn't actually dispute that he hit the window.  In fact, my arguments were he hit the window and did not assault officers as a result of it.

So it purely comes down to money.

If Your Honor's not inclined to dismiss the whole count for

failure to meet one of the necessary elements, then yes, the lesser included is the more appropriate way to proceed with regards to the jury instructions.

THE COURT:  All right.  If the defense has any authority that shows that I've got to strike the count in full -- I think there's again overwhelming evidence of the other elements.  The defendant conceded as much.

I'm going to do some research to determine whether there are any limitations on the Court's ability to grant a Rule 29 motion.  But my inclination would be to grant it in part and not in full.  And if I have authority to do that, I will do so.

I certainly think, had the government instead taken this issue away from the Court and moved to strike, I think it had the authority to do that.  So I don't see why the Court can't do the same on a Rule 29.

MR. METCALF:  Your Honor, I have a case, here *U.S. v. Seeman*, 18 F.3d 649 at 651.  This is out of the Ninth Circuit. It says, "The government must present evidence establishing value damage" -- that's under 1361 -- "regardless if for the felony or for the misdemeanor."

And my position is they did not present any evidence regarding value.  Therefore, the whole count falls --

THE COURT:  Oh, I see.  That's your argument.  It has to have value.

MR. METCALF:  They have to present evidence showing

value, and they haven't.

THE COURT:  What was the nature of the property damage in that case?

MR. METCALF:  I don't know.

THE COURT:  We'll take a look at that case.

Did you get the cite?

Can you give us the cite, please.

MR. METCALF:  18 F.3d 649 at 651, and it's out of the Ninth Circuit.

THE COURT:  All right.  We'll take a look at that and any other authority either side wants to provide.  I think we're going to prepare the instructions both ways, which is difficult, though, because the page numbering.  So it would be helpful.

The other reason why it would be helpful to keep this in is because, Mr. Metcalf, in your closing, you've certainly focused on how stupid or whatever you said about the charge was, it's -- for it to just go away when it's clearly a legitimate charge.

And I want to talk to you before your closing about proper and improper arguments in light of what's come in.  You've certainly said a lot in your opening that you haven't proven up, but I think the instructions will cover that in that they say statements of counsel are not evidence.

But comments about inappropriate charging, loading the indictment up with, you know, 10 counts, I may agree with you, but that's not proper argument or certainly not opening

statement, and you know that.

MS. LEDERER:  Your Honor, in addition to that, the government would just ask that Mr. Metcalf doesn't repeat some claims that he also made in opening argument in regards to the defendant's personal life and what brought him there that day --

THE COURT:  Right.

MS. LEDERER:  -- because there's been --

THE COURT:  There's been no evidence.

MS. LEDERER:  Obviously, that instruction will be out there.  We're just asking that there's no repeating of that --

THE COURT:  Repetition on him being homeless, and I can't remember what the other factual points were he made.

MS. LEDERER:  He can obviously focus on the evidence. I believe he cross-examined our case agent about was she able to tie him to a certain address.  So certain common sense, logical conclusion arguments can be made, but straight up saying he was living in his car, he was homeless, that has not come out at all, or that someone brought him there to that rally and filled his head with something.

THE COURT:  That person, all of that.  Is there any evidence in the government's case referring to this individual?

MS. LEDERER:  No, Your Honor.

THE COURT:  All right.

MR. METCALF:  I questioned about that individual.

THE COURT:  But what did that person -- that agent

say?

MR. METCALF:  That she was aware, it was a part of the investigation, and that was it.

THE COURT:  So you can say you heard Mr. So and So was a part of the investigation.  That's it.

What does that mean?

MS. LEDERER:  Then after that, there can't be -- he can't then say Mr. Alam clearly went there because of this person.  No, because there's no logical conclusion.  We'll object in the middle of his closing.

THE COURT:  Yes.  And I will sustain that, Mr. Metcalf.

MR. METCALF:  Understood.

THE COURT:  All right.  So what would be really helpful is, if you all come up with some case that you want the Court to consider for purposes of this decision, that you provide it to Mr. Hopkins, and Mr. Hopkins, you call back to chambers.

I'm going to go back to chambers, and we're going to finalize the jury instructions.  But this would be helpful to see any authority that you are able to discover.  We'll do our own research.

MS. LEDERER:  Yes, Your Honor.  And before we actually point to authority, I would just direct your attention that it's similar to some of the lesser includeds that we have.

We already have the ability to build into the jury instructions lesser included.  I would argue that that gives you the ability to still do that with 1361.

THE COURT:  But he raises a different wrinkle about you have to have some -- something about damage, which I don't think anyone provided.

MS. LEDERER:  We'll look into that.  It's not within the statute itself, so that would be our position right now.

But we will look into that case and see if we find anything else.

THE COURT:  I think to prove property damage you have to show damage, but isn't the damage the broken glass?  Does it have to have a certain numeric value, and is it not like common sense that broken glass everywhere costs something?

MS. LEDERER:  Something, yes.  That's the government's position right now, but we will look into it.  Just looking at the black-and-white letter of the law, it just says until you move on to the actual penalty phase, the actual elements itself of the crime does not discuss any monetary value must be established.  It just says that damage must be established.  And then it moves on just to the penalty phasing.

But we will look into it.

THE COURT:  All right.  So I will come back at 11:10 to discuss these issues.

(Recess taken from 10:49 a.m. to 11:31 a.m.)

(Jury not present.)

THE COURT:  All right, Counsel.  A couple of things.

First of all, were there any additional issues you want to bring up, new issues?

MR. SMITH:  With the instructions, no, Your Honor, not for the government.

THE COURT:  Anything more with the instructions, Mr. Metcalf?

MR. METCALF:  Not that I want to bring up, but I am speaking with Zach about the assault.  Just out of curiosity, where in the Red Book is the reference to any other felony?

THE COURT:  I don't have that out here on the bench, Mr. Metcalf.

Doesn't this come from the statute?

MR. METCALF:  From 111(a)(1)?  I don't think so.  I could be wrong.

THE COURT:  Mr. Smith or Ms. Lederer?

MR. SMITH:  Yes, Your Honor.  It's within the statute. I'm trying to find exactly where it is.

THE COURT:  Yeah, I think it's specific language in the statute.  The aggravated assault can be proven in multiple ways.

MR. SMITH:  Yes, Your Honor.  Specifically in 111(a), it says -- it talks about simple assault and also talks about -- says, "And where such acts involve physical contact with a

victim of that assault or the intent to commit another felony defined under this title or imprisonment not more than eight years or both."

THE COURT:  So I think that's where it comes from, the statute.

Anything else, Mr. Metcalf?

MR. METCALF:  No, nothing else.

THE COURT:  All right.  Let's take the instructions first.

Mr. Metcalf, I don't see evidence of self-defense.  So I took that out.

MR. METCALF:  Yes.

THE COURT:  Do you agree?

MR. METCALF:  I do agree.

THE COURT:  Okay.  You have not requested, but if you would like, I would be inclined to give the instruction, the standard instruction, that "every defendant in a criminal case has an absolute right not to testify.  The defendant has chosen to exercise his right in this case.  You must not hold this decision against him, and it would be improper for you to speculate as to the reason or reasons for his decision.  You must not assume a defendant is guilty because he chose not to testify."

MR. METCALF:  In light of today's decision, yes, I would ask that that be included, Your Honor.  Thank you.

THE COURT: Finally, I think in the instructions you all proposed, there was an instruction about consistent and inconsistent statements, and it came in from your proposed instructions for some reason in the closing instructions.

I don't know that the evaluation of a prior inconsistent statement of a witness or consistent statement of a witness -- these are instructions 30 -- number 33 and 34. I don't know that -- do we have that here?

I don't recall -- I recall Mr. Metcalf questioning an officer about what he didn't say in his report, but I don't recall impeachment or rehabilitation based on inconsistent and consistent statements.

And I'm wondering whether the parties think that instruction should be provided at all. And if so, I would want to put it in the instructions I give now, not the closing instructions.

MR. METCALF: Your Honor, I don't see the need for it. I think it's more confusing than beneficial at this point.

THE COURT: All right.

MR. SMITH: Yes, your Honor. I think those were defense-proposed instructions. We didn't offer them, and we don't think they're necessary.

THE COURT: All right. Very well. I will not give that.

And then -- let's see. Mr. Smith, I'm agonizing over this

instruction number 26 with respect to Count 9.  I don't feel comfortable instructing the jury on grounds without giving them a definition of "grounds," and I don't think you need it.  The disorderly and disruptive conduct in the Capitol building seems well-established.

MR. SMITH:  Your Honor, we've consulted, and we're comfortable with going forward with the building.  We believe that --

THE COURT:  I appreciate that.  I think that's a wise decision to not do that, press for that.  I'm not sure I'd give it anyway.

All right.  So does that resolve everything with the instructions?

MR. SMITH:  Your Honor, with the exception of the destruction of government property, which I believe --

THE COURT:  Right.  I'm going to get there.

Mr. Metcalf, any more case law you want to bring to my attention?

MR. METCALF:  That's the only case I have, Your Honor.

THE COURT:  Okay.  Just in thinking about this more, I'm not sure this is a Rule 29 issue.  The defense has clearly been on notice, the way in which this was charged, that the government could prove a violation of the statute by -- could prove a felony by proving over $1,000 in damage or could prove a misdemeanor without proving any monetary value.

The statute talks about damage.  The only monetary value element, I think, applies to the felony.

So the Ninth Circuit case I don't think applies here, because there it seems that the government didn't charge the lesser included offense.  And here, I think the government did by referencing the statute as a whole.

So I think if the government wants to request -- it didn't initially, but if it wants to request now that the Court instruct on the lesser included offense, and that just means removing element 4 that talks about the property damage being over $1,000, I would be inclined to give it.

So I do think viewing the evidence in the light most favorable to the government, as the Court must in considering Rule 29, I think that they've clearly met the elements of the statute, at least the misdemeanor.

So to the extent this is a Rule 29 issue, I would deny it but grant the request to instruct on the lesser included.

Anything more you want to say for the record, Mr. Metcalf?

MR. METCALF:  Your Honor, just in reading this case, *U.S. v. Seeman*, it does somewhat indicate that even with the lesser included -- in this case, that's the reference to over or in excess of $100 -- the case was reversed and ultimately vacated based on the government not providing any proof.

The last paragraph says there was no evidence as to the actual value.  Regardless if it's in excess of $1 or in excess

of $1,000, there still has to be some sort of proof put forward with regards to that because, as indicated in *U.S. v. Seeman*, it says that it's an actual element of the crime.

Let me just find that one part. One second, Your Honor.

Because value in excess of $100 was an element of the offense charged and because it's the government's burden to prove all elements of the crime charged, the case was -- the failure of proof requires reversal and vacating that conviction.

So essentially, even --

THE COURT: But that's the felony.

MR. METCALF: But even the misdemeanor has some value, and there's no proof of value.

THE COURT: All right. I don't read the case that way.

Is there any case the government would like to draw the Court's attention to?

MR. SMITH: Your Honor, regarding the -- there is one case which addresses at least in part the issue of value, if I can have one moment, Your Honor.

The issue on *Seeman* is certainly when you read *Seeman*, *Seeman*, the entire opinion is based upon the charge of -- two charges, the destruction of government property but also the 641 theft offense, and being charged at a value of $100 or more. There's no discussion anywhere through the opinion that there is an initial element of value.

When it comes to 641, it specifically mentions value in that it says "whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another with or without authority, sells, purveys, or destroys any record, voucher, money, or thing of value of the United States."

So the discussion in *Seeman*, to the extent it addresses value and proof of value, it's focused on 641.

The destruction of government property criminal offense does not mention value at any point.  It says "property of the United States," and that's where the focus is, and that's why there's three elements.  The fourth element is just the sentencing enhancement to make it a felony.

So we believe that instructing on the three elements satisfies the statute and is appropriate in this case.

THE COURT:  All right.  Anything else, Mr. Metcalf?

MR. METCALF:  Nothing further, Your Honor.  We respect the Court's decision on this issue.

THE COURT:  Okay.  Well, I will add *Allison v. United States*, 409 F.2d 45, a D.C. Circuit case.  In that case, an appellate court modified a criminal judgment to grant acquittal on the primary charge but remanded with instructions to enter a guilty verdict on the lesser included charge.

Further support, although not right on point.

Okay.  I'm inclined to bring the jury in, start the instructions.  I will bring you all up afterwards before the

closings just to make sure you didn't have any issues with the instructions I gave.

MR. METCALF:  And then just so I know exactly how we're going to do this, the government is going to give their closing, and then we're going to break for lunch?

THE COURT:  I think so.  Let me get a sense.  I don't know how long these instructions will take to read, but does the government know roughly how long its closing argument is going to be?  What total amount of time are you requesting for both?

MS. LEDERER:  For both?  I apologize.  We haven't discussed that.

THE COURT:  Well --

MS. LEDERER:  I'd say 50 minutes for both.

THE COURT:  5-0?

MS. LEDERER:  Yes, to be conservative.

THE COURT:  You mean to make sure that you don't go over?  All right.  I'm hoping that it's shorter than that.

But I'm inclined to proceed with the government's closing statement, take a break for lunch, come back, do the defense closing, followed by a rebuttal.

We'll see.  I mean, if these instructions take me an hour to read -- I just can't remember how long they take -- and people's stomachs are growling, we might break earlier.

MR. METCALF:  That's fine.  I just wanted to make sure that I --

THE COURT:  You won't go before lunch.  The question is whether the government will go.

MR. METCALF:  That's all I care about.  Thank you.

MR. SMITH:  And, Your Honor, would the Court want a sidebar at the conclusion of instructing just so we can discuss this?

THE COURT:  Yes, but I also want you to note any errors I might have made reading the instructions, and we'll also talk about this at that point, the timing.  All right?

So let's go ahead and bring in the jurors.

(Jury entered courtroom.)

THE COURT:  All right, ladies and gentlemen.  As I said before, first I'm going to instruct you, and depending how long this takes, we may hear argument, initial argument from the government and go to lunch, or we may go to lunch right away.  We're going to address that after we see how long this takes.

You've now heard all of the evidence in the case.  Before you begin your deliberations, I'm going to instruct you on the law.  I will start with some general rules of law and then talk about specific charges alleged here and some of the specific issues in this case.  Some of these rules will repeat what I told you in my preliminary instructions.

I will provide you with a copy of my instructions.  During your deliberations, you may, if you want, refer to those instructions.  While you may refer to any particular portion of

the instructions, you are to consider the instructions as a whole, and you may not follow some and ignore others.

If you have any questions about the instructions, you should feel free to send me a note.

Please return your instructions to me when your verdict is rendered.

As I explained at the beginning of the trial, my function is to conduct this trial in an orderly, fair, and efficient manner, to rule on questions of law, and to instruct you on the law that applies in this case.

It is your duty to accept the law as I instruct you. Again, you should consider all of the instructions as a whole. You may not ignore or refuse to follow any of them.

Your function as a jury is to determine what the facts are in this case. You are the sole judges of the facts. While it was my responsibility to decide what was admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence. You alone decide the credibility or believability of the witnesses.

You should determine the facts without prejudice, fear, sympathy, or favoritism. You should not be improperly influenced by anyone's race, ethnic origin, or gender. Decide the case solely based on a fair consideration of the evidence.

You may not take anything I may have said or done as indicating how I think you should decide this case. If you

believe that I have expressed or indicated any such opinion, you should ignore it.  The verdict in this case is your sole and exclusive responsibility.

If any reference by me or the attorneys to the evidence is different from your own memory of the evidence, it is your memory that should control during deliberations.

During the trial, I have permitted those jurors who wanted to do so to take notes.  You may take your notebooks with you into the jury room and use them during your deliberations if you wish.  As I told you at the beginning of the trial, your notes are only to be an aid to your memory.  They are not evidence in the case, and they should not replace your own memory of the evidence.

Those jurors who have not taken notes should rely on their own memory of the evidence.  The notes are intended to be for the notetaker's own personal use.

During your deliberations, you may consider only the evidence properly admitted in this trial.  The evidence in this case consists of the sworn testimony of the witnesses, the exhibits that were admitted into evidence, and the facts stipulated to by the parties.

During the trial, you were told that the parties had stipulated, that is, agreed to certain facts.  You should consider any stipulation of fact to be undisputed evidence.

When you consider the evidence, you are permitted to draw

from the facts that you find have been proven such reasonable inferences as you feel are justified in the light of your experience.  You should give any evidence such weight as in your judgment it is fairly entitled to receive.

The statements and arguments of the lawyers are not evidence.  They are only intended to assist you in understanding the evidence.  Similarly, the questions of the lawyers are not evidence.

The indictment is merely the formal way of accusing a person of a crime.  You must not consider the indictment as evidence of any kind.  You may not consider it as evidence of the defendant's guilt or draw any inference of guilt from it.

Every defendant in a criminal case is presumed to be innocent.  This presumption of innocence remains with the defendant throughout the trial unless and until the government has proven he is guilty beyond a reasonable doubt.  This burden never shifts throughout the trial.  The law does not require the defendant to prove his innocence or to produce any evidence at all.

If you find that the government has proven beyond a reasonable doubt every element of the offenses with which the defendant is charged, it is your duty to find him guilty of those offenses.

On the other hand, if you find that the government has failed to prove any element of a particular offense beyond a

reasonable doubt, it is your duty to find the defendant not guilty of that offense.

As I've explained, the government has the burden of proving the defendant guilty beyond a reasonable doubt.  In civil cases, it is only necessary to prove that a fact is more likely true than not or, in some cases, that its truth is highly probable.  But in criminal cases such as this one, the government's proof must be more powerful than that.  It must be beyond a reasonable doubt.

Reasonable doubt, as the name implies, is a doubt based on reason, a doubt for which you have a reason based upon the evidence or lack of evidence in the case.  If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters of life.  However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork.  It is a doubt based on reason.

The government is not required to prove guilt beyond all doubt or to a mathematical or scientific certainty.  It's burden is to prove guilt beyond a reasonable doubt.

There are two types of evidence from which you may determine what the facts are in this case:  Direct evidence and

circumstantial evidence.  When a witness such as an eyewitness asserts actual knowledge of a fact, that witness's testimony is direct evidence.  On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is circumstantial evidence.

Let me give you an example.  Assume a person looked out a window and saw that snow was falling.  If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen.

Assume, however, that he looked out a window and saw no snow on the ground and then went to sleep and saw snow on the ground after he woke up.  His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact.  The law does not favor one form of evidence over another.  It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial.  You are permitted to give equal weight to both circumstantial -- equal weight to both.  Circumstantial evidence does not require a greater degree of certainty than direct evidence.  In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

You must not allow the nature of a charge to affect your

verdict. You must consider only the evidence that has been presented in this case in reaching a fair and impartial verdict.

The weight of evidence is not necessarily determined by the number of witnesses testifying for each side. Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe. You might find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side or no evidence on the other side, or you could find the opposite.

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper. You must not hold such objections against a lawyer who made them or the party he or she represents. It is a lawyer's responsibility to object to evidence that he or she believes is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should ignore the question, and you must not speculate as to what the answer would have been.

In determining whether the government has proved the charges against the defendant beyond a reasonable doubt, you must consider the testimony of all the witnesses who have testified. As I've said already, you are the sole judges of the credibility of the witnesses. You alone determine whether to

believe any witness and the extent to which a witness should be believed.

Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You may consider anything that in your judgment affects the credibility of any witness.  For example, you may consider the demeanor and the behavior of the witness on the witness stand, the witness's manner of testifying, whether the witness impresses you as a truthful person, whether the witness impresses you as having an accurate memory and recollection, whether the witness has any motive for not telling the truth, whether the witness had a full opportunity to observe the matters about which he or she has testified, whether the witness has any interest in the outcome of this case or friendship or hostility toward other people concerned with the case.

In evaluating the accuracy of a witness's memory, you may consider the circumstances surrounding the event, including any circumstances that would impair or improve the witness's ability to remember the event, the time that lapsed between the event and any later recollections of the event, and the circumstances under which the witness was asked to recall details of the event.

You may consider whether there are any inconsistencies or

discrepancies between what the witness says now and what the witness may have previously said.  You may also consider any inconsistencies between the witness's testimony and any other evidence that you credit, such as the testimony of another witness.

You should consider whether any inconsistencies are the result of individuals seeing, hearing, or recollecting things differently, are the result of actual forgetfulness, are the result of innocent mistakes, or are the result of intentional falsehood.

You may consider the reasonableness or unreasonableness, the probability or improbability of the testimony of a witness in determining whether to accept it as true and accurate.  You may consider whether the witness has been contradicted or supported by other evidence that you credit.

If you believe that any witness has shown him or herself to be biased or prejudiced for or against either side in this trial, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

In this case, you have heard testimony from a number of law enforcement officers.  A police officer's testimony should be

evaluated by you just as any other evidence in the case. In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because he or she is a police officer.

Every defendant in a criminal case has an absolute right not to testify. The defendant has chosen to exercise this right in this case. You must not hold this decision against him, and it would be improper for you to speculate as to the reason or reasons for his decision. You must not assume the defendant is guilty because he chose not to testify.

Someone's intent or knowledge ordinarily cannot be proved directly, because there is no way of knowing what a person is actually thinking, but you may infer someone's intent or knowledge from the surrounding circumstances. You may consider any statement made or acts done or admitted by the defendant and all other facts and circumstances received in evidence which indicate his intent or knowledge.

You may infer but are not required to infer that a person intends the natural and probable consequences of acts he intentionally did or intentionally did not do. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all of the circumstances and evidence that you think are relevant in

determining whether the government has proven beyond a reasonable doubt that the defendant acted with the necessary state of mind.

Each count of the indictment charges a separate offense. You should consider each offense and the evidence which applies to it separately, and you should return a separate verdict as to each count unless I instruct you to do otherwise.  The fact that you may find the defendant guilty or not guilty on one count of the indictment should not influence your verdict with respect to any other count of the indictment.

At any time during your deliberations, you may return your verdict of guilty or not guilty with respect to any count.

Count 1 of the indictment charges the defendant with forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with officers or employees of the United States who were engaged in the performance of their official duties while making physical contact with the person or acting with the intent to commit another felony, which is a violation of federal law.

To find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:  First, the defendant assaulted, resisted, imposed, impeded, intimidated, or interfered with one or more officers from the United States Capitol Police, Timothy Lively, Kyle Yetter, or Christopher Lanciano, who were located in

proximity to the Speaker's Lobby; second, the defendant did such acts forcibly; third, the defendant did such acts voluntarily and intentionally; fourth, the officer or officers the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or employee of the United States who was then engaged in the performance of his official duties; fifth, the defendant made physical contact with the officers or acted with the intent to commit another felony.

For purposes of this element, "another felony" refers to the offenses charged in Counts 3 and 5.

A person acts forcibly if he used force, attempted to use force, or threatened to use force against an officer.  Physical force or contact is sufficient, but actual physical contact is not required.

You may also find that a person who has the present ability to inflict bodily harm upon another and who threatens or attempts to inflict bodily harm upon that person acts forcibly. In such case, the threat must be a present one.

The term "assault" means any intentional attempt or threat to inflict injury upon someone else when coupled with an apparent present ability to do so.

To find that the defendant committed an assault, you must find beyond a reasonable doubt that the defendant intended to inflict or threaten injury.  Injury means any physical injury, however small, including a touching offense to a person of

reasonable sensibility.

The terms "resist, oppose, impede, intimidate, and interfere with" carry their everyday, ordinary meanings.

The term "intentionally" means that the defendant knowingly, consciously, and voluntarily committed an act which the law makes a crime.  This general intent may be inferred from the doing of the act.

A person acts knowingly if he realizes what he is doing and is aware of the nature of his conduct and does not act through ignorance, mistake, or accident.

In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did, said, or perceived.

The government does not have to prove that the defendant knew that the person being forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with was at the time carrying out an official duty.  It need only prove that the officer was in fact carrying out an official duty and that the defendant intentionally forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with that officer.

Count 3, obstructing officers during a civil disorder. Count 3 charges the defendant with obstructing law enforcement officers during a civil order, which is a violation of federal law.

In order to find the defendant guilty of this offense, you

must find that the government proved each of the following elements beyond a reasonable doubt:  First, the defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers; second, at the time of the defendant's act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

The term "civil disorder" means any public disturbance involving the acts -- involving acts of violence by groups of three or more persons which, A, causes an immediate danger of injury to another individual; B, causes an immediate danger of damage to another individual's property; C, results in injury to another individual; or D, results in damage to another individual's property.

The term "commerce" means commerce or travel between one state, including the District of Columbia, and any other state, including the District of Columbia.  It also means commerce wholly within the District of Columbia.

The term "federally protected function" means any function, operation, or action carried out under the laws of the United States by any department, agency, or instrumentality of the

1077

United States or by an officer or employee thereof.

The term "department" includes one of the departments of the Executive Branch, such as the Department of Homeland Security, which includes the United States Secret Service, or the Legislative Branch.

The term "agency," which includes any department, independent establishment, commission, administration, authority, board, or bureau of the United States.

The term "instrumentality" includes any other formal entity through which the government operates, such as Congress or the United States Capitol Police.

For the U.S. Capitol Police on January 6, 2021, the term "official duties" means policing the U.S. Capitol building and grounds and enforcing federal law and D.C. law in those areas.

The term "knowingly" has the same meaning described in the instructions for Count 1.

Count 4 of the indictment charges the defendant with destruction of government property, which is a violation of federal law.

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:  First, the defendant injured, damaged, or destroyed property; second, the defendant did so willfully; third, the property involved was property of

the United States or of any department or agency thereof or any property which has been or was being manufactured or constructed for the United States or any department or agency thereof.

However, the government does not need to prove the defendant knew that the property belonged to the United States.

The terms "department" and "agency" have the same meaning described in the instructions for Count 3.

A person acts willfully if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law.  While the government must show that a defendant knew that the contact was unlawful -- that the conduct was unlawful, the government does not need to prove that the defendant was aware of the specific law that his conduct violated.

Count 5 of the indictment of the indictment charges the defendant with corruptly obstructing an official proceeding, which is a violation of federal law.

Count 5 also charges the defendant with intent to obstruct or impede an official proceeding and aiding and abetting others to commit that offense.

First, I will explain the elements of the substantive offense, along with its associated definitions.  Then I will explain how to determine whether the defendant attempted the offense and whether the defendant aided and abetted the offense.

In order to find the defendant guilty of this offense, you must find that the government proved each of the following

elements beyond a reasonable doubt:  First, the defendant attempted to or did obstruct or impede an official proceeding; second, the defendant intended to obstruct or impede the official proceeding; third, the defendant acted knowingly with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; fourth, the defendant acted corruptly.

"To obstruct or impede" means to block, interfere with, or slow the progress of an official proceeding.

The term "official proceeding" includes a proceeding before Congress.  The official proceeding need not be pending or about to be instituted at the time of the offense.  If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant.

The term "knowingly" has the same meaning described in the instructions for Count 1.

To act corruptly, the defendant must use independently unlawful means or act with an unlawful purpose or both.  The defendant must also act with consciousness of wrongdoing.

"Consciousness of wrongdoing" means with an understanding or an awareness that what the person is doing is wrong.

Not all attempts to obstruct or impede an official proceeding involve acting corruptly.  For example, a witness in a court proceeding may refuse to testify by invoking his or her

1080

constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding.  But that person does not act corruptly.

So too, an individual who does no more than lawfully exercise his First Amendment rights to speak, assemble, and petition the government for redress of grievances does not act corruptly.

In contrast, an individual who obstructs or impedes a proceeding by bribe -- a court proceeding by bribing a witness to refuse to testify in that proceeding or by engaging in other independently unlawful conduct does act corruptly.

Often, acting corruptly involves acting with the intent to secure an unlawful advantage or benefit either for oneself or for another person.

While the defendant must act with intent to obstruct the official proceeding, this need not be his sole purpose.  A defendant's unlawful intent to obstruct an official proceeding is not negated by the simultaneous presence of another purpose for his conduct.  However, the fact that the defendant's mere presence may have had the unintended effect of obstructing or impeding a proceeding does not establish that the defendant acted with the intent to obstruct or impede that proceeding.

In Count 5, the defendant is also charged with attempt to commit the crime of obstruction of an official proceeding.  An attempt to commit obstruction of an official proceeding is a

crime even if the defendant did not actually complete the crime.

In order to find the defendant guilty of attempt to commit obstruction of an official proceeding, you must find that the government prove beyond a reasonable doubt each of the following elements:  First, that the defendant intended to commit the crime of obstruction of an official proceeding as I have defined that offense above; second, that the defendant took a substantial step toward committing obstruction of an official proceeding which strongly corroborates or confirms the defendant intended to commit the crime.

With respect to the first element of attempt, you may not find the defendant guilty of attempt to commit obstruction of an official proceeding merely because the defendant thought about it.  You must find that the evidence proved beyond a reasonable doubt that the defendant's mental state passed beyond the stage of thinking about the crime to actually intending to commit it.

With respect to the substantial step element, you may not find the defendant guilty of attempt to commit obstruction of an official proceeding merely because the defendant made some plans to or some preparation for committing that crime.

Instead, you must find that the defendant took some firm, clear, undeniable action to accomplish his intent to commit obstruction of an official proceeding.

However, the substantial step element does not require the government to prove that the defendant did everything except the

last act necessarily to commit the crime.

In this case, the government further alleges that the defendant committed obstruction of an official proceeding as charged in Count 5 by aiding and abetting others in committing this offense.  This is not a separate offense but merely another way in which the government alleges that the defendant committed this offense in Count 5.

A person may be guilty of an offense if he aided and abetted another person in committing the offense.  A person who has aided and abetted another person in committing an offense is often called an accomplice.  The person whom the accomplice aids and abets is known as the principal.

It is not necessary that all the people who committed the crime be caught or identified.  It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find the defendant guilty of obstruction of an official proceeding because the defendant aided and abetted others in committing this offense, you must find that the defendant proved beyond a reasonable doubt the following elements:  First, that others committed obstruction of an official proceeding by committing each of the elements of the offense charged, as I've explained above; second, that the defendant knew that obstruction of an official proceeding was

going to be committed or was being committed by others; third, that the defendant performed an act or acts in furtherance of the offense; fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; fifth, that the defendant did that act or acts with the intent that others commit the offense of obstruction of an official proceeding.

To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant with -- which at least encouraged others to commit the offense.  That is, you must find that the defendant's act or acts did in some way aid, assist, facilitate, or encourage others to commit the offense.

The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged.  It is enough if the defendant's act or acts further aided, assisted, facilitated, or encouraged only one or some parts or phases of the offense.  Also, the defendant's acts need not themselves be against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the fourth requirement for aiding and abetting, you may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances.

1084

However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for you to find the defendant guilty as an aider and abettor.

If the evidence shows that the defendant knew that the offense was being committed or was about to be committed but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate the defendant with the offense, you may not find the defendant guilty of the offense charged in Count 5 as an aider and abettor.

The government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and make succeed.

A defendant may be found guilty of the offense charged in Count 5 if the defendant obstructed an official proceeding, attempted to obstruct an official proceeding, or aided and abetted obstruction of an official proceeding.

Each of these three ways of committing the offense is described in the instructions that I've given you.  If you find beyond a reasonable doubt that the defendant committed the offense of obstruction of an official proceeding in any of these three ways, you should find the defendant guilty of Count 5, and

you need not consider whether the defendant committed the offense of obstruction of an official proceeding in the other two ways.

Count 6 of the indictment charges the defendant with entering or remaining in a restricted building or grounds with a deadly or dangerous weapon, which is a violation of federal law.

I'm going to instruct you on this charge and explain the various elements that you must consider.  I will also instruct you on a lesser included offense.  After I give you the elements of these crimes, I will tell you in what order you should consider them.

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:  First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so; second, the defendant did so knowingly; third, the defendant did so -- the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

The term "restricted building" means -- "or grounds" meaning any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the vice president and the immediate family of the vice

president.

The term "knowingly" has the same meaning described in the instructions for Count 1.

An object may be considered a deadly or dangerous weapon for one of two reasons:  First, an object is a deadly or dangerous weapon if it is inherently or obviously dangerous or deadly; second, an object is a deadly or dangerous weapon if the object is capable of causing serious bodily injury or death to another person and the defendant carried it with the intent that it be used in a manner capable of causing serious bodily injury or death.  The defendant need not have actually used the object in that manner.

In order to find the defendant of a lesser offense of Count 6, that is, entering or remaining in a restricted building or grounds, you must find the following elements beyond a reasonable doubt:  First, that the defendant entered or remained in a restricted building or grounds without lawful to do so; second, the defendant did so knowingly.

Now I'm going to instruct you as to the order in which you should consider the above offenses.

You should first consider whether the defendant is guilty of entering or remaining in a restricted building or grounds with a deadly or dangerous weapon.

If you find the defendant guilty of that offense, do not go on to the lesser included offense.

If, however, you find the defendant not guilty, go on to whether the defendant is guilty of entering or remaining in a restricted building or grounds.

And if after making all reasonable efforts to reach a verdict on the first charge you are not able to do so, you are also allowed to consider this lesser included charge.

Ladies and gentlemen, I'm going to pause briefly to confer with counsel.

(Bench conference.)

THE COURT:  I just got concerned that I should not have referred to "grounds," but this is a different statute.

MS. LEDERER:  Yeah.

THE COURT:  So we're okay with the way --

MS. LEDERER:  Yes.

THE COURT:  Are you in agreement?

MR. METCALF:  Yes.

THE COURT:  I just wanted to make sure.

(End of bench conference.)

THE COURT:  Okay.  This order, ladies and gentlemen, will be reflected in the verdict form that I will be giving you before you go back to the jury room.

Count 7 of the indictment charges the defendant with disorderly or disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, which is a violation of federal law.

I'm going to instruct you on this charge and explain the various elements that you must consider.  I will also instruct you on the lesser included offense.  After I give you the elements of these crimes, I will tell you in what order you should consider them.

In order to find the defendant guilty of this offense, you must find the government proved each of the following elements beyond a reasonable doubt:  First, the defendant engaged in disorderly or disruptive conduct in or in proximity to any restricted building or grounds; second, the defendant did so knowingly and with the intent to impede or disrupt the orderly conduct of government business or official functions; third, the defendant's conduct occurred when or so that his conduct in fact impeded or disrupted the orderly conduct of government business or official functions; fourth, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

Disorderly conduct is conduct that tends to disturb the public peace or undermine public safety.  Disorderly conduct includes when a person acts in such a manner as to cause another person to be in reasonable fear that a person or property in a person's immediate possession is likely to be harmed or taken, uses words likely to produce violence on the part of others, or is unreasonably loud and disruptive under the circumstances.

Disruptive conduct is a disturbance that interrupts an

event, activity, or the normal course of a process.

The terms "restricted building or grounds" and "deadly and dangerous weapon" have the same meaning described in the instructions for Count 6.

Scratch that.  The terms -- I'm going to check that, ladies and gentlemen, at the conclusion.

The term "knowingly" has the same meaning described in the instructions for Count 1.

In order to find the defendant guilty of the lesser offense of Count 7, that is, disorderly or disruptive conduct in a restricted building or grounds, you must find the following elements beyond a reasonable doubt:  First, the defendant engaged in disorderly or disruptive conduct in or in proximity to any restricted building or grounds; second, the defendant did so knowingly and with the intent to impede or disrupt the orderly conduct of government business or official functions; third, the defendant's conduct occurred when or so that his conduct in fact impeded or disrupted the orderly conduct of government business or official functions.

Now I'm going to instruct you as to the order in which you should consider the above offenses.

You should first consider whether the defendant is guilty of disorderly or disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon.

If you find the defendant guilty of that offense, do not go

on to the lesser included offense.

However, if you find the defendant not guilty, go on to consider whether the defendant is guilty of entering or remaining in a restricted building or grounds.

And if after making all reasonable efforts to reach a verdict on the first charge you're not able to do so, you are allowed to consider this lesser included charge.

Again, this order will be reflected in the verdict form that I will be giving you.

Count 8 of the indictment charges the defendant with engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, which is a violation of federal law.

I'm going to instruct you on this charge and explain the various elements that you must consider.  I will also instruct you on the lesser included offense.  After I give you the elements of these crimes, I will tell you in what order you should consider them.

In order to find the defendant guilty of this offense, you must find the government proved each of the following elements beyond a reasonable doubt:  First, the defendant engaged in an act of physical violence against a person or property or in proximity to restricted building or grounds; second, the defendant did so knowingly; third, the defendant knowingly used or carried a deadly or dangerous weapon during in relation to

the offense -- to that offense.

The term "act of physical violence" means any act involving an assault or other infliction of bodily harm on an individual or damage to or destruction of real or personal property.

The terms "restricted building or grounds" and "deadly and dangerous weapon" have the same meanings described in the instructions for Count 6.

The term "knowingly" has the same meaning described in the instructions for Count 1.

In order to find the defendant guilty of the lesser included offense of Count 8, that is, engaging in physical violence in a restricted building or grounds, you must find the following elements beyond a reasonable doubt:  First, the defendant engaged in an act of physical violence against a person or property in or in proximity to a restricted building or grounds; second, the defendant did so knowingly.

Again, ladies and gentlemen, I'm going to instruct you as to the order you should consider these offenses.

First, you should consider whether the defendant is guilty of engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon.

If you find the defendant guilty of that offense, no need to go on to the lesser included offense.

However, if you find the defendant not guilty, go on to consider whether the defendant is guilty of engaging in physical

violence in a restricted building or grounds.

And if after making all reasonable efforts to reach a verdict on the first charge you're not able to do so, you're allowed to consider this lesser included charge.

Again, this order will be reflected in the verdict form I will be giving you.

Count 9 of the indictment charges the defendant with disorderly and disruptive conduct in a Capitol building, which is a violation of federal law.

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:  First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol buildings; second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either house of Congress; third, the defendant acted willfully and knowingly.

The term "Capitol buildings" includes, as I've said, the United States Capitol located at First Street Southeast in Washington, D.C.

The term "house of Congress" means the United States Senate or the United States House of Representatives.

"Disorderly conduct" and "disruptive conduct" have the same meaning described in the instructions I've given you.

For purposes of this offense, the orderly -- strike that.

1093

The term "knowingly" has the same meaning described in the instructions for Count 1.

The term "willfully" has the same meaning described in the instructions for Count 4.

Count 10 of the indictment, finally, the last, it charges the defendant with an act of physical violence in the Capitol building, which is a violation of federal law.

In order to find the defendant guilty of this offense, you must find that the defendant proved each of the following elements beyond a reasonable doubt:  First, the defendant engaged in an act of physical violence within the Capitol buildings; second, the defendant acted willfully and knowingly.

The term "act of physical violence" means any act involving an assault or other infliction or threat of infliction of death or bodily harm on an individual or involving damage to or destruction of real or personal property.

For purposes of this offense, unlike the offense in Count 8, the threat of infliction of bodily harm is sufficient to meet this definition.

The term "Capitol buildings" has the same meaning described in the instructions for Count 9.

The term "knowingly" has the same meaning described in the instructions for Count 1.

The term "willfully" has the same meaning described in the instructions for Count 4.

Oh, I was wrong.  Count 11 of the indictment charges the defendant with parading, demonstrating, or picketing in a Capitol building, which is a violation of federal law.

Am I -- I thought we had ten counts.

MR. SMITH:  Your Honor, I believe one of the counts was --

THE COURT:  Oh, all right.  Thank you.  Sorry about that.  I forgot.

In order to find the defendant guilty of this offense, you must find that the defendant proved each of the following elements beyond a reasonable doubt:  First, the defendant paraded, demonstrated, or picketed in any of the United States buildings -- United States Capitol buildings; second, the defendant acted willfully and knowingly.

The terms "parade" and "picket" have their ordinarily meanings.

The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.

The terms "Capitol buildings" has the same meaning described in the instructions for Count 9.

The term "knowingly" has the same meaning described in the instructions for Count 1.

The terms "willfully" has the same meaning described in the

instructions for Count 4.

All right.  Counsel, I will have you approach, please.

(Bench conference.)

THE COURT:  First of all, were there any objections to the instructions as given?

MR. METCALF:  I think Your Honor covered it when you saw there was an issue.  After entering and remaining, there is -- what's the next count?  The lesser included?  So there's entering and remaining, and then there's, I think, act of physical violence.  The lesser included uses the words "entering and remaining" in the lesser included.  I just caught that.

THE COURT:  I'm pretty tired right now.  I imagine they're pretty tired.  What I would like to do is excuse them now for lunch and then take care of any of these nits.  I can look at what I said with the rough.

MR. METCALF:  Let me make sure that what I just noticed is accurate.  I just wanted to flag it.

THE COURT:  I appreciate you flagging it.  I want you to flag anything possible.  Okay?

MR. METCALF:  Of course.

THE COURT:  But I think it would be beneficial for me and, I'm guessing, counsel as well to review these again, all right, to make sure that they're properly instructed.  If there's any corrections, I will do that before the government opens.  All right?

So we will come back at 1:30.  Is that enough time?

MR. METCALF:  Your Honor, here's the thing.  By the time they leave, I say good-bye, less than an hour becomes --

THE COURT:  All right.

(End of bench conference.)

THE COURT:  All right, ladies and gentlemen.  That was a lot.  It took longer than I expected.  I'm pretty fatigued, and I'm guessing that you might be as well and perhaps a little bit hungry.  So we're going to excuse you now before we bring you back to hear the closing argument, first of the government and then of the defense, and then the government's rebuttal.

We're going to give you a little bit extra time to make sure -- given the lines in the cafeteria at this hour could be a little long, I'm going to ask that you come back at 1:45 -- between 1:45 and 1:50.  All right?  And then we will begin with the closing arguments.

Thank you, ladies and gentlemen.

(Jury exited courtroom.)

THE COURT:  All right.  So let's everybody take a look.  I will as well.  Flag any issues for me.

Also, we'll come back out and provide you what I'm going to read for the closing instructions, because we will just move straight in from the government's rebuttal into the closing instructions.

I imagine we'll take a break either after the government's

initial opening or before rebuttal -- probably after the government's initial opening, we'll take a ten-minute recess and then proceed to defense counsel.

Yes, Mr. Metcalf.

MR. METCALF:  I just found what I wanted to flag. It's instruction number 24 on Count 7, and it's with regards to the lesser included.  The order of deliberations uses the language "entering and remaining in a restricted ground" for this count, and that count is disorderly and disruptive conduct in a restricted building.

So that's what I wanted to flag for Your Honor.

THE COURT:  All right.  I will take a look at that and make any corrections.

Anything the government wants to flag?

MR. SMITH:  No, Your Honor.

THE COURT:  All right.  Okay.  We will see you back -- please come back at 1:45.

(Recess taken at 1:45 p.m.)

(Afternoon session reported by Timothy Miller and bound under separate cover.)

1098

CERTIFICATE OF OFFICIAL COURT REPORTER


        I, Sara A. Wick, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.



/s/ Sara A. Wick                    September 11, 2023

SIGNATURE OF COURT REPORTER         DATE

1099

## $

**$1,000** [11] - 1025:24, 1026:6, 1026:14, 1026:18, 1027:3, 1047:16, 1047:19, 1048:10, 1058:24, 1059:11, 1060:1
**$100** [3] - 1059:22, 1060:5, 1060:23

## /

**/s** [1] - 1098:8

## 1

**1** [14] - 1031:24, 1038:13, 1042:13, 1045:8, 1059:25, 1073:13, 1077:17, 1079:17, 1086:3, 1089:8, 1091:9, 1093:2, 1093:23, 1094:24
**1,000** [4] - 1046:14, 1047:23, 1048:15
**10** [7] - 1033:25, 1040:19, 1042:11, 1042:12, 1043:25, 1051:24, 1093:5
**10016** [1] - 1022:20
**101** [1] - 1044:9
**102** [1] - 1041:18
**10:00** [1] - 1028:17
**10:45** [2] - 1034:12, 1035:18
**10:49** [1] - 1054:25
**11** [3] - 1022:6, 1094:1, 1098:8
**111** [1] - 1045:12
**111(a** [1] - 1055:23
**111(a)(1** [1] - 1055:15
**11:00** [2] - 1035:24, 1044:22
**11:10** [2] - 1037:21, 1054:23
**11:15** [6] - 1035:24, 1035:25, 1036:3, 1036:8, 1037:9, 1037:22
**11:31** [1] - 1054:25
**127** [1] - 1041:23
**1361** [3] - 1047:13, 1050:19, 1054:3
**15-minute** [1] - 1033:25
**1512** [3] - 1028:6, 1032:11, 1039:24
**18** [3] - 1028:5,

1050:17, 1051:8
**19** [5] - 1038:11, 1039:22, 1039:23, 1045:11, 1045:14
**1946** [1] - 1041:22
**1:30** [1] - 1096:1
**1:45** [4] - 1096:14, 1096:15, 1097:17, 1097:18
**1:50** [1] - 1096:15

## 2

**2** [2] - 1039:6, 1049:3
**20001** [1] - 1022:22
**202-354-3284** [1] - 1022:23
**2021** [1] - 1077:12
**2023** [2] - 1022:6, 1098:8
**20579** [1] - 1022:14
**21** [1] - 1038:5
**21-190** [1] - 1023:5
**21-cr-190** [1] - 1022:3
**22** [1] - 1045:9
**23** [1] - 1038:6
**24** [1] - 1097:6
**25th** [1] - 1041:21
**26** [1] - 1058:1
**27** [5] - 1039:5, 1039:9, 1039:10, 1040:18, 1042:13
**28** [1] - 1044:1
**29** [11] - 1025:22, 1026:23, 1048:4, 1048:20, 1049:7, 1049:14, 1050:9, 1050:15, 1058:21, 1059:14, 1059:16
**294** [1] - 1025:19
**2:00** [1] - 1029:14
**2:17** [1] - 1029:15

## 3

**3** [4] - 1074:10, 1075:21, 1075:22, 1078:7
**30** [1] - 1057:7
**31** [1] - 1038:6
**33** [1] - 1057:7
**333** [1] - 1022:21
**34** [1] - 1057:7
**35** [1] - 1044:5
**359** [1] - 1027:18
**3:00** [1] - 1028:9

## 4

**4** [8] - 1025:21,

1025:23, 1026:22, 1059:10, 1077:18, 1093:4, 1093:25, 1095:1
**401** [1] - 1027:13
**403** [1] - 1027:14
**408.1** [1] - 1030:18
**409** [1] - 1061:19
**410.1** [1] - 1030:18
**45** [1] - 1061:19
**47** [1] - 1044:15
**4704-B** [1] - 1022:22
**4:00** [2] - 1027:24, 1028:10

## 5

**5** [11] - 1022:9, 1045:8, 1074:10, 1078:14, 1078:17, 1080:23, 1082:4, 1082:7, 1084:12, 1084:18, 1084:25
**5-0** [1] - 1062:14
**50** [1] - 1062:13
**5104(e)(2)(F)** [1] - 1040:24

## 6

**6** [6] - 1029:7, 1077:12, 1085:4, 1086:14, 1089:4, 1091:7
**601** [1] - 1022:14
**609** [1] - 1027:18
**616** [1] - 1027:19
**641** [3] - 1060:22, 1061:1, 1061:7
**649** [2] - 1050:17, 1051:8
**651** [2] - 1050:17, 1051:8

## 7

**7** [3] - 1087:22, 1089:10, 1097:6

## 8

**8** [4] - 1041:24, 1090:10, 1091:11, 1093:18
**880** [1] - 1022:16

## 9

**9** [5] - 1044:3, 1058:1, 1092:7, 1093:21,

1094:22
**911** [1] - 1025:19
**913** [1] - 1025:19
**92101** [1] - 1022:17
**99** [1] - 1022:19
**9:30** [1] - 1028:17
**9:48** [1] - 1022:6

## A

**a.m** [3] - 1022:6, 1054:25
**abets** [1] - 1082:12
**abetted** [6] - 1078:23, 1082:9, 1082:10, 1082:17, 1082:19, 1084:20
**abetting** [3] - 1078:18, 1082:4, 1083:23
**abettor** [2] - 1084:5, 1084:12
**ability** [6] - 1050:9, 1054:1, 1054:3, 1070:20, 1074:15, 1074:21
**able** [6] - 1046:25, 1052:14, 1053:21, 1087:5, 1090:6, 1092:3
**above-entitled** [1] - 1098:5
**absolute** [2] - 1056:18, 1072:7
**absolutely** [1] - 1024:13
**accept** [2] - 1064:11, 1071:13
**acceptable** [1] - 1068:16
**accident** [1] - 1075:10
**accomplice** [2] - 1082:11
**accomplish** [1] - 1081:22
**according** [1] - 1027:25
**accuracy** [1] - 1070:18
**accurate** [3] - 1070:12, 1071:13, 1095:17
**accurately** [1] - 1070:5
**accusing** [1] - 1066:9
**acquittal** [1] - 1061:20
**act** [30] - 1067:18, 1075:5, 1075:7, 1075:9, 1076:3, 1076:6, 1079:18, 1079:19, 1079:20, 1080:3, 1080:6,

1080:11, 1080:15, 1082:1, 1083:2, 1083:4, 1083:7, 1083:9, 1083:13, 1083:15, 1083:17, 1090:22, 1091:2, 1091:14, 1093:6, 1093:11, 1093:13, 1095:9
**acted** [9] - 1073:2, 1074:8, 1075:11, 1079:4, 1079:7, 1080:22, 1092:17, 1093:12, 1094:14
**acting** [5] - 1038:18, 1073:18, 1079:24, 1080:12
**Action** [1] - 1023:5
**action** [3] - 1031:2, 1076:24, 1081:22
**actions** [2] - 1028:16, 1083:25
**activities** [2] - 1029:15, 1094:20
**activity** [1] - 1089:1
**acts** [23] - 1029:11, 1041:1, 1055:25, 1072:17, 1072:21, 1074:2, 1074:11, 1074:17, 1075:8, 1076:13, 1078:8, 1083:2, 1083:4, 1083:7, 1083:9, 1083:13, 1083:15, 1083:17, 1083:19, 1088:20
**actual** [7] - 1054:18, 1059:25, 1060:3, 1068:2, 1071:8, 1074:13
**add** [1] - 1061:18
**addition** [4] - 1025:14, 1028:11, 1029:11, 1052:2
**additional** [4] - 1027:9, 1030:20, 1038:2, 1055:3
**address** [2] - 1052:15, 1063:16
**addresses** [2] - 1060:18, 1061:6
**addressing** [1] - 1038:24
**adduced** [1] - 1031:15
**adequate** [2] - 1035:21, 1036:15
**adjustments** [1] - 1039:1
**administration** [1] - 1077:7

**admissible** [1] - 1069:16
**admitted** [4] - 1064:16, 1065:18, 1065:20, 1072:17
**advantage** [1] - 1080:13
**adversely** [1] - 1076:9
**advise** [1] - 1033:10
**affect** [2] - 1068:25, 1071:20
**affected** [1] - 1076:9
**affects** [1] - 1070:7
**aftermath** [1] - 1030:24
**Afternoon** [1] - 1097:19
**afterwards** [1] - 1061:25
**agency** [5] - 1076:25, 1077:6, 1078:1, 1078:3, 1078:6
**agent** [4] - 1023:11, 1023:12, 1052:14, 1052:25
**Agent** [1] - 1029:3
**aggravated** [1] - 1055:21
**agonizing** [1] - 1057:25
**agree** [6] - 1027:2, 1036:13, 1046:17, 1051:24, 1056:13, 1056:14
**agreed** [1] - 1065:23
**agreement** [3] - 1042:21, 1042:23, 1087:15
**ahead** [5] - 1035:22, 1036:24, 1037:20, 1040:1, 1063:10
**aid** [4] - 1065:11, 1083:13, 1083:15, 1084:9
**aided** [8] - 1022:25, 1078:23, 1082:8, 1082:10, 1082:16, 1082:19, 1083:18, 1084:19
**aider** [2] - 1084:5, 1084:12
**aiding** [4] - 1078:18, 1082:4, 1083:4, 1083:23
**aids** [1] - 1082:11
**ALAM** [1] - 1022:6
**Alam** [32] - 1023:5, 1023:14, 1023:17, 1027:8, 1027:11, 1027:15, 1027:20,

1027:24, 1028:1, 1028:23, 1029:12, 1029:13, 1030:13, 1030:14, 1030:17, 1030:20, 1030:23, 1030:25, 1031:13, 1031:16, 1031:17, 1031:23, 1031:24, 1032:10, 1032:22, 1033:12, 1034:8, 1034:17, 1034:19, 1037:6, 1037:7, 1053:8
**Alam's** [9] - 1024:1, 1027:23, 1028:20, 1028:22, 1030:7, 1031:4, 1031:6, 1031:11, 1032:7
**allegations** [1] - 1040:20
**allege** [1] - 1032:11
**alleged** [3] - 1029:14, 1048:15, 1063:20
**alleges** [2] - 1082:2, 1082:6
**Allison** [1] - 1061:18
**allow** [3] - 1025:3, 1042:25, 1068:25
**allowed** [3] - 1087:6, 1090:7, 1092:4
**alone** [4] - 1034:24, 1064:17, 1064:18, 1069:25
**alternates** [1] - 1044:15
**Amendment** [1] - 1080:5
**AMERICA** [1] - 1022:3
**America** [1] - 1023:5
**amount** [1] - 1062:9
**answer** [1] - 1069:19
**anticipate** [2] - 1024:15, 1024:16
**anyway** [2] - 1027:6, 1058:11
**apologies** [1] - 1036:22
**apologize** [3] - 1040:22, 1044:3, 1062:10
**apparent** [1] - 1074:21
**APPEARANCES** [1] - 1022:12
**appellate** [1] - 1061:20
**applies** [4] - 1059:2, 1059:3, 1064:10, 1073:5
**apply** [1] - 1072:3
**appreciate** [2] -

1058:9, 1095:18
**approach** [2] - 1023:6, 1095:2
**appropriate** [3] - 1046:20, 1050:2, 1061:14
**approved** [2] - 1041:15, 1041:22
**Architect** [3] - 1024:4, 1041:15, 1041:22
**area** [2] - 1038:7, 1085:21
**areas** [4] - 1041:13, 1041:20, 1042:16, 1077:15
**argue** [1] - 1054:2
**arguing** [1] - 1048:2
**argument** [8] - 1050:23, 1051:25, 1052:4, 1062:8, 1063:14, 1069:12, 1096:10
**arguments** [9] - 1033:15, 1035:17, 1037:11, 1037:13, 1049:22, 1051:19, 1052:16, 1066:5, 1096:16
**arrived** [1] - 1028:23
**article** [1] - 1076:10
**ascending** [1] - 1032:4
**Ashli** [1] - 1030:9
**asleep** [1] - 1068:14
**assault** [10] - 1046:9, 1049:23, 1055:10, 1055:21, 1055:24, 1056:1, 1074:19, 1074:22, 1091:3, 1093:14
**assaulted** [7] - 1040:2, 1040:4, 1045:18, 1073:22, 1074:4, 1075:15, 1075:19
**assaulting** [2] - 1038:14, 1073:14
**assemble** [1] - 1080:5
**asserts** [1] - 1068:2
**assessed** [1] - 1026:13
**assist** [4] - 1066:6, 1083:14, 1083:15, 1084:9
**assisted** [1] - 1083:18
**assisting** [1] - 1083:4
**associate** [1] - 1084:10
**associated** [4] - 1029:19, 1032:16,

1078:21, 1084:1
**assume** [4] - 1056:22, 1068:6, 1068:10, 1072:11
**attempt** [7] - 1074:19, 1080:23, 1080:25, 1081:2, 1081:11, 1081:12, 1081:18
**attempted** [6] - 1047:15, 1047:18, 1074:11, 1078:22, 1079:2, 1084:19
**attempts** [2] - 1074:17, 1079:23
**attention** [3] - 1053:24, 1058:18, 1060:16
**Attorney's** [2] - 1022:13, 1022:16
**attorneys** [1] - 1065:4
**audio** [3] - 1044:6, 1044:9, 1044:12
**AUSA** [2] - 1022:13, 1022:15
**authority** [11] - 1049:12, 1049:14, 1050:5, 1050:11, 1050:14, 1051:11, 1053:21, 1053:24, 1061:4, 1077:8, 1085:16
**available** [2] - 1024:7, 1025:8
**Avenue** [2] - 1022:19, 1022:21
**aware** [4] - 1028:13, 1053:2, 1075:9, 1078:13
**awareness** [2] - 1079:5, 1079:22

## B

**Babbitt** [5] - 1029:23, 1030:9, 1030:13, 1030:17, 1030:20
**Babbitt's** [5] - 1029:24, 1030:25, 1031:11, 1032:1, 1032:18
**balance** [2] - 1029:18, 1032:15
**based** [11] - 1026:9, 1033:7, 1034:1, 1057:11, 1059:23, 1060:21, 1064:23, 1067:10, 1067:11, 1067:19, 1067:20
**battle** [1] - 1046:11
**bear** [1] - 1031:7

**bears** [1] - 1032:8
**become** [1] - 1043:9
**becomes** [1] - 1096:3
**BEFORE** [2] - 1022:1, 1022:10
**begin** [2] - 1063:18, 1096:15
**beginning** [4] - 1038:5, 1044:17, 1064:7, 1065:10
**behalf** [2] - 1023:14, 1027:16
**behavior** [1] - 1070:9
**behind** [3] - 1027:10, 1029:22, 1030:5
**believability** [1] - 1064:19
**believable** [1] - 1069:8
**believes** [1] - 1069:16
**belonged** [1] - 1078:5
**Bench** [1] - 1095:3
**bench** [4] - 1055:12, 1087:9, 1087:18, 1096:5
**beneficial** [2] - 1057:18, 1095:21
**benefit** [1] - 1080:13
**between** [6] - 1046:12, 1070:21, 1071:1, 1071:3, 1076:19, 1096:15
**beyond** [33] - 1037:7, 1066:16, 1066:20, 1066:25, 1067:4, 1067:8, 1067:21, 1067:23, 1069:22, 1073:1, 1073:21, 1074:23, 1076:2, 1077:23, 1079:1, 1079:14, 1081:4, 1081:14, 1081:15, 1082:15, 1082:21, 1084:8, 1084:13, 1084:23, 1085:14, 1086:15, 1088:8, 1089:12, 1090:21, 1091:13, 1092:12, 1093:10, 1094:11
**bias** [1] - 1071:18
**biased** [1] - 1071:17
**bit** [2] - 1096:9, 1096:12
**black** [1] - 1054:17
**black-and-white** [1] - 1054:17
**block** [1] - 1079:8
**board** [1] - 1077:8
**bodily** [8] - 1038:8, 1074:16, 1074:17, 1086:8, 1086:10,

1091:3, 1093:15, 1093:18
**Book** [2] - 1041:23, 1055:11
**bound** [1] - 1097:19
**Branch** [2] - 1077:3, 1077:5
**break** [12] - 1023:24, 1034:1, 1034:4, 1034:6, 1034:7, 1037:12, 1037:13, 1037:19, 1062:5, 1062:19, 1062:23, 1096:25
**bribe** [1] - 1080:9
**bribing** [1] - 1080:9
**briefly** [2] - 1034:8, 1087:7
**bring** [18] - 1023:18, 1033:10, 1033:12, 1034:9, 1035:12, 1035:22, 1036:14, 1038:1, 1038:11, 1038:20, 1055:4, 1055:9, 1058:17, 1061:24, 1061:25, 1063:10, 1084:15, 1096:9
**broaden** [1] - 1049:5
**broken** [3] - 1026:2, 1054:12, 1054:14
**brought** [5] - 1025:18, 1030:4, 1037:3, 1052:5, 1052:18
**build** [1] - 1054:1
**building** [33] - 1026:3, 1028:22, 1040:21, 1041:2, 1058:4, 1058:7, 1077:13, 1085:5, 1085:15, 1085:20, 1085:22, 1086:14, 1086:17, 1086:22, 1087:3, 1087:23, 1088:10, 1089:2, 1089:11, 1089:14, 1089:23, 1090:4, 1090:11, 1090:23, 1091:5, 1091:12, 1091:15, 1091:20, 1092:1, 1092:8, 1093:7, 1094:3, 1097:10
**buildings** [10] - 1044:2, 1044:3, 1092:14, 1092:18, 1093:12, 1093:20, 1094:13, 1094:21
**bulk** [1] - 1029:11
**burden** [5] - 1037:6, 1060:6, 1066:16,

1067:3, 1067:22
**bureau** [1] - 1077:8
**business** [5] - 1088:12, 1088:14, 1089:16, 1089:19, 1094:18
**bye** [1] - 1096:3
**Byrd** [2] - 1024:2, 1027:10

# C

**cafeteria** [1] - 1096:13
**California** [1] - 1022:17
**cannot** [4] - 1032:13, 1049:5, 1067:14, 1072:13
**capability** [1] - 1071:20
**capable** [2] - 1086:8, 1086:10
**Capitol** [37] - 1024:4, 1024:7, 1028:22, 1029:14, 1029:15, 1029:16, 1030:11, 1031:3, 1031:7, 1031:9, 1031:17, 1040:6, 1041:9, 1041:10, 1041:21, 1041:22, 1042:14, 1043:3, 1043:12, 1044:1, 1045:20, 1058:4, 1073:24, 1077:11, 1077:12, 1077:13, 1092:8, 1092:14, 1092:18, 1092:19, 1093:6, 1093:11, 1093:20, 1094:3, 1094:13, 1094:21
**car** [1] - 1052:17
**care** [2] - 1063:3, 1095:14
**careful** [2] - 1067:12, 1067:17
**carried** [5] - 1076:24, 1085:18, 1086:9, 1088:16, 1090:25
**carries** [1] - 1031:20
**carry** [1] - 1075:3
**carrying** [2] - 1075:17, 1075:18
**Case** [1] - 1022:3
**case** [57] - 1023:12, 1024:3, 1025:3, 1025:12, 1026:22, 1031:4, 1033:5, 1035:15, 1037:4, 1037:16, 1043:9,

1046:9, 1050:16, 1051:3, 1051:5, 1052:14, 1052:21, 1053:15, 1054:9, 1056:17, 1056:19, 1058:17, 1058:19, 1059:3, 1059:19, 1059:21, 1059:22, 1060:7, 1060:13, 1060:15, 1060:18, 1061:14, 1061:19, 1063:17, 1063:21, 1064:10, 1064:15, 1064:23, 1064:25, 1065:2, 1065:12, 1065:19, 1066:13, 1067:12, 1067:25, 1068:23, 1069:2, 1069:11, 1070:16, 1070:17, 1071:24, 1072:1, 1072:7, 1072:9, 1074:18, 1082:2
**cases** [4] - 1041:15, 1067:4, 1067:6, 1067:7
**caught** [2] - 1082:14, 1095:11
**causes** [2] - 1076:14, 1076:15
**causing** [2] - 1086:8, 1086:10
**CERT** [1] - 1032:4
**certain** [5] - 1031:10, 1052:15, 1054:13, 1065:23
**certainly** [8] - 1027:15, 1040:15, 1046:11, 1050:12, 1051:15, 1051:20, 1051:25, 1060:20
**certainty** [2] - 1067:22, 1068:22
**CERTIFICATE** [1] - 1098:1
**certification** [3] - 1029:1, 1031:9, 1039:6
**certify** [1] - 1098:3
**chambers** [2] - 1053:18, 1053:19
**change** [2] - 1046:2, 1046:18
**changed** [1] - 1040:8
**changes** [6] - 1023:20, 1023:21, 1034:1, 1036:10, 1044:23, 1045:1
**changing** [1] - 1044:16

**charge** [20] - 1038:8, 1046:25, 1047:6, 1051:16, 1051:17, 1059:4, 1060:21, 1061:21, 1061:22, 1068:25, 1085:7, 1087:5, 1087:6, 1088:1, 1090:6, 1090:7, 1090:14, 1092:3, 1092:4
**charged** [19] - 1025:13, 1029:12, 1031:23, 1032:8, 1038:5, 1038:12, 1058:22, 1060:6, 1060:7, 1060:23, 1066:22, 1074:10, 1080:23, 1082:4, 1082:24, 1083:10, 1083:17, 1084:12, 1084:17
**charges** [19] - 1031:10, 1037:6, 1038:14, 1049:6, 1060:22, 1063:20, 1069:22, 1073:4, 1073:13, 1075:22, 1077:18, 1078:14, 1078:17, 1085:4, 1087:22, 1090:10, 1092:7, 1093:5, 1094:1
**charging** [2] - 1023:21, 1051:23
**check** [1] - 1089:5
**choose** [1] - 1034:21
**chose** [2] - 1056:22, 1072:12
**chosen** [3] - 1037:8, 1056:18, 1072:8
**Christopher** [2] - 1045:21, 1073:25
**Circuit** [4] - 1050:17, 1051:9, 1059:3, 1061:19
**circumstances** [10] - 1068:4, 1069:5, 1070:19, 1070:20, 1070:22, 1072:16, 1072:18, 1072:25, 1083:25, 1088:24
**circumstantial** [9] - 1068:1, 1068:5, 1068:13, 1068:15, 1068:19, 1068:20, 1068:21, 1068:24, 1083:24
**cite** [2] - 1051:6, 1051:7
**civil** [6] - 1067:4,

1075:21, 1075:23, 1076:8, 1076:12
**claims** [1] - 1052:4
**clear** [4] - 1032:7, 1043:3, 1045:6, 1081:22
**clearly** [7] - 1026:3, 1047:25, 1049:8, 1051:17, 1053:8, 1058:21, 1059:14
**closing** [19] - 1033:14, 1035:17, 1036:9, 1036:11, 1037:11, 1051:15, 1051:18, 1053:10, 1057:4, 1057:15, 1062:5, 1062:8, 1062:18, 1062:20, 1096:10, 1096:16, 1096:22, 1096:23
**closings** [6] - 1033:24, 1033:25, 1034:5, 1034:14, 1036:6, 1062:1
**Code** [1] - 1028:6
**College** [2] - 1031:8, 1039:6
**colloquy** [2] - 1033:1, 1033:12
**colored** [1] - 1071:19
**COLUMBIA** [1] - 1022:1
**Columbia** [4] - 1041:23, 1076:20, 1076:21, 1076:22
**comfortable** [3] - 1043:15, 1058:2, 1058:7
**comments** [1] - 1051:23
**commerce** [5] - 1076:9, 1076:10, 1076:19, 1076:21
**commission** [2] - 1077:7, 1084:3
**commit** [18] - 1038:18, 1056:1, 1073:18, 1074:8, 1078:19, 1080:24, 1080:25, 1081:2, 1081:5, 1081:10, 1081:12, 1081:16, 1081:18, 1081:22, 1082:1, 1083:7, 1083:12, 1083:14
**committed** [16] - 1048:1, 1074:22, 1075:5, 1076:3, 1082:3, 1082:6, 1082:13, 1082:15,

1082:22, 1083:1, 1084:7, 1084:14, 1084:23, 1085:1

**committing** [10] - 1081:8, 1081:20, 1082:4, 1082:9, 1082:10, 1082:17, 1082:20, 1082:23, 1083:5, 1084:21

**commodity** [1] - 1076:10

**common** [3] - 1026:16, 1052:15, 1054:13

**complete** [2] - 1036:6, 1081:1

**completed** [1] - 1024:17

**comprising** [1] - 1041:21

**computer** [2] - 1022:25, 1040:23

**computer-aided** [1] - 1022:25

**conceded** [1] - 1050:7

**concern** [1] - 1042:25

**concerned** [4] - 1029:21, 1029:24, 1070:17, 1087:10

**conclusion** [5] - 1026:17, 1052:16, 1053:9, 1063:5, 1089:6

**conduct** [36] - 1028:4, 1028:22, 1031:4, 1058:4, 1064:8, 1075:9, 1076:10, 1078:11, 1078:13, 1079:5, 1080:11, 1080:19, 1087:23, 1088:9, 1088:12, 1088:13, 1088:14, 1088:18, 1088:19, 1088:25, 1089:10, 1089:13, 1089:16, 1089:17, 1089:18, 1089:23, 1092:8, 1092:13, 1092:15, 1092:23, 1094:17, 1097:9

**confer** [1] - 1087:7

**conference** [5] - 1023:21, 1087:9, 1087:18, 1095:3, 1096:5

**confirms** [1] - 1081:9

**conform** [1] - 1023:21

**conformity** [1] - 1038:11

**confronted** [1] -

1027:11

**confuse** [5] - 1029:10, 1029:17, 1029:25, 1032:18, 1042:4

**confusing** [3] - 1027:13, 1031:20, 1057:18

**confusion** [3] - 1029:19, 1032:16, 1043:4

**Congress** [7] - 1029:8, 1077:10, 1079:11, 1092:16, 1092:21, 1094:18

**Congress's** [4] - 1028:23, 1029:1, 1029:2, 1029:6

**consciously** [1] - 1075:5

**consciousness** [2] - 1079:20, 1079:21

**consequence** [2] - 1028:16, 1031:1

**consequences** [1] - 1072:21

**conservative** [1] - 1062:15

**consider** [44] - 1053:16, 1064:1, 1064:12, 1065:17, 1065:24, 1065:25, 1066:10, 1066:11, 1068:23, 1069:1, 1069:5, 1069:23, 1070:7, 1070:8, 1070:19, 1070:25, 1071:2, 1071:6, 1071:11, 1071:14, 1071:18, 1072:16, 1072:24, 1073:5, 1075:12, 1083:23, 1085:1, 1085:8, 1085:11, 1086:20, 1086:21, 1087:6, 1088:2, 1088:5, 1089:21, 1089:22, 1090:3, 1090:7, 1090:15, 1090:18, 1091:18, 1091:19, 1091:25, 1092:4

**considerable** [1] - 1027:16

**consideration** [2] - 1064:23, 1067:13

**considered** [1] - 1086:4

**considering** [2] - 1038:3, 1059:13

**consistent** [3] - 1057:2, 1057:6,

1057:12

**consists** [1] - 1065:19

**Constitution** [1] - 1022:21

**constitutional** [1] - 1080:1

**constructed** [1] - 1078:2

**consulted** [1] - 1058:6

**contact** [7] - 1038:18, 1055:25, 1073:17, 1074:7, 1074:13, 1078:11

**continued** [1] - 1031:21

**continuing** [1] - 1032:11

**contradicted** [1] - 1071:14

**contrast** [1] - 1080:8

**control** [2] - 1034:25, 1065:6

**conversations** [1] - 1024:10

**converts** [1] - 1061:3

**conviction** [1] - 1060:8

**convinced** [1] - 1067:14

**copies** [1] - 1045:5

**copy** [1] - 1063:23

**cordoned** [1] - 1085:21

**correct** [4] - 1025:20, 1030:16, 1039:13, 1098:4

**Correct** [1] - 1030:16

**corrections** [2] - 1095:24, 1097:13

**corroborates** [1] - 1081:9

**corruptly** [8] - 1078:15, 1079:7, 1079:18, 1079:24, 1080:3, 1080:7, 1080:11, 1080:12

**cost** [1] - 1026:12

**costs** [2] - 1026:11, 1054:14

**Counsel** [1] - 1055:2

**counsel** [10] - 1023:6, 1023:10, 1035:17, 1035:20, 1037:11, 1051:22, 1087:8, 1095:2, 1095:22, 1097:3

**Count** [50] - 1025:21, 1025:23, 1026:22, 1038:13, 1040:19, 1042:13, 1043:25,

1044:3, 1045:8, 1049:3, 1058:1, 1073:13, 1075:21, 1075:22, 1077:17, 1077:18, 1078:7, 1078:14, 1078:17, 1079:17, 1080:23, 1082:4, 1082:7, 1084:12, 1084:18, 1084:25, 1085:4, 1086:3, 1086:14, 1087:22, 1089:4, 1089:8, 1089:10, 1090:10, 1091:7, 1091:9, 1091:11, 1092:7, 1093:2, 1093:4, 1093:5, 1093:18, 1093:21, 1093:23, 1093:25, 1094:1, 1094:22, 1094:24, 1095:1, 1097:6

**count** [26] - 1026:24, 1027:2, 1027:4, 1027:5, 1028:23, 1032:11, 1038:4, 1038:9, 1045:10, 1045:12, 1046:21, 1047:11, 1048:21, 1048:24, 1049:25, 1050:5, 1050:22, 1073:4, 1073:7, 1073:8, 1073:10, 1073:12, 1095:8, 1097:9

**counts** [4] - 1032:10, 1051:24, 1094:4, 1094:5

**Counts** [1] - 1074:10

**couple** [2] - 1034:1, 1055:2

**coupled** [1] - 1074:20

**course** [4] - 1044:16, 1069:17, 1089:1, 1095:20

**COURT** [127] - 1022:1, 1023:13, 1023:17, 1024:19, 1025:24, 1026:10, 1026:19, 1027:1, 1032:24, 1033:1, 1033:9, 1033:21, 1033:24, 1034:3, 1034:17, 1034:24, 1035:2, 1035:5, 1035:8, 1035:12, 1035:20, 1036:1, 1036:5, 1036:18, 1037:1, 1037:25, 1039:2, 1039:11, 1039:16,

1039:20, 1040:1, 1040:8, 1040:11, 1040:13, 1040:16, 1040:18, 1040:24, 1041:1, 1041:7, 1041:20, 1042:1, 1042:4, 1042:8, 1042:13, 1042:17, 1042:25, 1043:11, 1043:20, 1044:5, 1044:11, 1044:14, 1045:4, 1045:10, 1045:14, 1045:17, 1045:25, 1046:2, 1046:17, 1046:22, 1047:3, 1047:6, 1047:12, 1047:24, 1048:16, 1048:23, 1049:4, 1049:16, 1050:4, 1050:23, 1051:2, 1051:5, 1051:10, 1052:6, 1052:8, 1052:11, 1052:20, 1052:23, 1052:25, 1053:4, 1053:11, 1053:14, 1054:4, 1054:11, 1054:23, 1055:2, 1055:7, 1055:12, 1055:17, 1055:20, 1056:4, 1056:8, 1056:13, 1056:15, 1057:1, 1057:19, 1057:23, 1058:9, 1058:16, 1058:20, 1060:10, 1060:13, 1061:15, 1061:18, 1062:6, 1062:12, 1062:14, 1062:16, 1063:1, 1063:7, 1063:12, 1087:10, 1087:13, 1087:15, 1087:17, 1087:19, 1094:7, 1095:4, 1095:12, 1095:18, 1095:21, 1096:4, 1096:6, 1096:19, 1097:12, 1097:16, 1098:1, 1098:9

**Court** [33] - 1022:21, 1024:1, 1027:12, 1027:16, 1027:22, 1027:23, 1028:7, 1028:8, 1028:9, 1028:13, 1028:16, 1029:18, 1029:20, 1029:21, 1030:4, 1031:6, 1032:13, 1032:15, 1032:19, 1039:20, 1039:23, 1048:4, 1048:7,

1049:7, 1049:12, 1049:13, 1050:13, 1050:14, 1053:16, 1059:8, 1059:13, 1063:4

**court** [7] - 1023:2, 1025:10, 1048:20, 1061:20, 1068:8, 1079:25, 1080:9

**Court's** [9] - 1025:12, 1028:12, 1029:24, 1030:1, 1048:19, 1049:10, 1050:9, 1060:16, 1061:17

**COURTROOM** [1] - 1023:4

**courtroom** [9] - 1027:20, 1027:25, 1028:10, 1028:14, 1036:25, 1037:3, 1037:24, 1063:11, 1096:18

**cover** [2] - 1051:21, 1097:20

**covered** [1] - 1095:6

**COVID** [2] - 1025:10, 1025:11

**credibility** [6] - 1043:18, 1064:18, 1069:25, 1070:3, 1070:8, 1072:2

**credit** [2] - 1071:4, 1071:15

**crime** [17] - 1038:12, 1054:19, 1060:3, 1060:7, 1066:10, 1075:6, 1080:24, 1081:1, 1081:6, 1081:10, 1081:16, 1081:20, 1082:1, 1082:14, 1082:15, 1082:17

**crimes** [5] - 1031:23, 1032:8, 1085:10, 1088:4, 1090:17

**criminal** [8] - 1027:17, 1056:17, 1061:8, 1061:20, 1066:13, 1067:7, 1072:7, 1084:2

**Criminal** [1] - 1023:4

**cross** [3] - 1030:14, 1031:18, 1052:14

**cross-examined** [2] - 1031:18, 1052:14

**CRR** [1] - 1022:21

**cumulative** [3] - 1027:14, 1030:21, 1031:17

**curiosity** [1] - 1055:10

# D

**D.C** [7] - 1022:5, 1022:14, 1022:22, 1041:11, 1061:19, 1077:14, 1092:20

**DABNEY** [1] - 1022:10

**damage** [19] - 1047:15, 1047:18, 1048:2, 1050:19, 1051:2, 1054:5, 1054:11, 1054:12, 1054:20, 1058:24, 1059:1, 1059:10, 1076:16, 1076:17, 1091:4, 1093:15

**damaged** [1] - 1077:24

**danger** [2] - 1076:14, 1076:15

**dangerous** [17] - 1038:7, 1049:3, 1085:6, 1085:18, 1086:4, 1086:6, 1086:7, 1086:23, 1087:24, 1088:16, 1089:3, 1089:24, 1090:12, 1090:25, 1091:6, 1091:21

**DATE** [1] - 1098:9

**dated** [1] - 1041:21

**DAY** [1] - 1022:9

**days** [1] - 1026:15

**deadly** [18] - 1038:7, 1049:2, 1049:3, 1085:6, 1085:18, 1086:4, 1086:5, 1086:7, 1086:23, 1087:24, 1088:16, 1089:2, 1089:24, 1090:12, 1090:25, 1091:5, 1091:21

**deal** [2] - 1032:3, 1036:15

**dealt** [1] - 1048:25

**death** [4] - 1030:16, 1086:8, 1086:11, 1093:14

**decide** [8] - 1027:6, 1064:16, 1064:17, 1064:18, 1064:22, 1064:25, 1068:18, 1072:23

**decided** [2] - 1035:5, 1049:1

**deciding** [2] - 1075:11, 1083:21

**decision** [10] - 1034:25, 1035:3, 1053:16, 1056:20,

1056:21, 1056:24, 1058:10, 1061:17, 1072:9, 1072:11

**decisions** [1] - 1029:6

**Defendant** [2] - 1022:7, 1022:18

**DEFENDANT** [4] - 1034:23, 1035:1, 1035:4, 1035:7

**defendant** [150] - 1038:14, 1040:2, 1040:3, 1045:18, 1050:7, 1056:17, 1056:18, 1056:22, 1066:13, 1066:15, 1066:18, 1066:22, 1067:1, 1067:4, 1069:22, 1072:7, 1072:8, 1072:11, 1072:17, 1073:2, 1073:8, 1073:13, 1073:20, 1073:22, 1074:1, 1074:2, 1074:3, 1074:7, 1074:22, 1074:23, 1075:4, 1075:11, 1075:12, 1075:14, 1075:19, 1075:22, 1075:25, 1076:2, 1077:18, 1077:21, 1077:23, 1077:24, 1078:5, 1078:10, 1078:12, 1078:15, 1078:17, 1078:22, 1078:23, 1078:24, 1079:1, 1079:3, 1079:4, 1079:7, 1079:15, 1079:18, 1079:20, 1080:15, 1080:21, 1080:23, 1081:1, 1081:2, 1081:5, 1081:7, 1081:9, 1081:12, 1081:13, 1081:18, 1081:19, 1081:21, 1081:25, 1082:3, 1082:6, 1082:16, 1082:18, 1082:19, 1082:21, 1082:25, 1083:2, 1083:3, 1083:6, 1083:9, 1083:11, 1083:21, 1084:1, 1084:4, 1084:6, 1084:10, 1084:11, 1084:14, 1084:15, 1084:17, 1084:18, 1084:23, 1084:25, 1085:1, 1085:4, 1085:12, 1085:14, 1085:16, 1085:17, 1086:9,

1086:11, 1086:13, 1086:16, 1086:18, 1086:21, 1086:24, 1087:1, 1087:2, 1087:22, 1088:6, 1088:8, 1088:10, 1088:15, 1089:9, 1089:12, 1089:14, 1089:22, 1089:25, 1090:2, 1090:3, 1090:10, 1090:19, 1090:21, 1090:24, 1091:10, 1091:14, 1091:16, 1091:19, 1091:22, 1091:24, 1091:25, 1092:7, 1092:10, 1092:12, 1092:14, 1092:17, 1093:6, 1093:8, 1093:9, 1093:10, 1093:12, 1094:2, 1094:9, 1094:10, 1094:11, 1094:14

**defendant's** [17] - 1027:8, 1027:17, 1052:5, 1066:12, 1067:14, 1076:5, 1080:17, 1080:19, 1081:15, 1083:13, 1083:15, 1083:17, 1083:19, 1083:24, 1084:9, 1088:13, 1089:17

**defense** [11] - 1025:2, 1027:15, 1033:5, 1035:15, 1050:4, 1056:10, 1057:21, 1058:21, 1062:19, 1096:11, 1097:3

**defense's** [1] - 1026:20

**defense-proposed** [1] - 1057:21

**define** [1] - 1043:5

**defined** [3] - 1043:16, 1056:2, 1081:6

**definition** [7] - 1041:9, 1042:6, 1042:15, 1043:1, 1046:16, 1058:3, 1093:19

**definitions** [1] - 1078:21

**degree** [3] - 1029:23, 1068:21, 1076:8

**delay** [2] - 1024:20, 1029:1

**delayed** [3] - 1025:1, 1028:22, 1076:9

**delaying** [1] - 1029:8

**delays** [1] - 1029:8

**deliberations** [7] - 1063:18, 1063:24, 1065:6, 1065:9, 1065:17, 1073:11, 1097:7

**delineates** [2] - 1047:14, 1047:21

**demeanor** [1] - 1070:9

**demonstrate** [1] - 1094:17

**demonstrated** [1] - 1094:12

**demonstrating** [1] - 1094:2

**deny** [4] - 1025:17, 1025:19, 1028:7, 1059:16

**department** [6] - 1076:25, 1077:2, 1077:6, 1078:1, 1078:3, 1078:6

**Department** [1] - 1077:3

**departments** [1] - 1077:2

**DEPUTY** [1] - 1023:4

**deputy** [4] - 1027:20, 1027:25, 1028:10, 1028:15

**described** [19] - 1070:5, 1077:16, 1078:7, 1079:16, 1084:22, 1086:2, 1089:3, 1089:7, 1091:6, 1091:8, 1092:24, 1093:1, 1093:3, 1093:20, 1093:22, 1093:24, 1094:22, 1094:23, 1094:25

**desire** [1] - 1071:20

**destroyed** [1] - 1077:24

**destroys** [1] - 1061:4

**destruction** [8] - 1046:6, 1046:16, 1058:15, 1060:22, 1061:8, 1077:19, 1091:4, 1093:16

**detail** [2] - 1024:15, 1029:3

**details** [3] - 1024:9, 1024:12, 1070:23

**determine** [8] - 1050:8, 1064:14, 1064:20, 1067:25, 1069:6, 1069:25, 1071:18, 1078:22

**determined** [1] - 1069:3

**determining** [3] - 1069:21, 1071:13, 1073:1
**Diego** [1] - 1022:17
**differ** [1] - 1046:13
**difference** [1] - 1025:15
**different** [5] - 1027:22, 1047:14, 1054:4, 1065:5, 1087:11
**differently** [1] - 1071:8
**difficult** [1] - 1051:12
**direct** [10] - 1030:17, 1053:24, 1067:25, 1068:3, 1068:8, 1068:15, 1068:19, 1068:22, 1068:24, 1083:23
**directed** [2] - 1031:16, 1031:19
**directly** [1] - 1072:14
**disagree** [1] - 1026:19
**disagreeing** [1] - 1048:16
**discover** [1] - 1053:21
**discrepancies** [1] - 1071:1
**discretion** [2] - 1025:16, 1027:17
**discuss** [8] - 1023:20, 1033:13, 1033:16, 1035:14, 1037:18, 1054:19, 1054:24, 1063:5
**discussed** [1] - 1062:11
**discussion** [8] - 1028:4, 1028:21, 1029:7, 1029:12, 1029:24, 1032:18, 1060:24, 1061:6
**dismiss** [3] - 1025:21, 1026:9, 1049:25
**dismissed** [2] - 1047:1, 1049:15
**disobey** [1] - 1078:9
**disorder** [4] - 1075:21, 1076:8, 1076:12
**disorderly** [12] - 1058:4, 1087:23, 1088:9, 1088:18, 1088:19, 1089:10, 1089:13, 1089:23, 1092:8, 1092:13, 1092:23, 1097:9
**dispersal** [2] - 1031:21, 1031:22
**disperse** [2] - 1031:14, 1031:16
**dispute** [1] - 1049:21

**disputing** [1] - 1049:21
**disregard** [1] - 1078:9
**disrupt** [4] - 1088:11, 1089:15, 1092:15, 1094:17
**disrupted** [2] - 1088:14, 1089:18
**disruptive** [12] - 1058:4, 1087:23, 1088:9, 1088:24, 1088:25, 1089:10, 1089:13, 1089:23, 1092:8, 1092:13, 1092:23, 1097:9
**distract** [1] - 1029:17
**District** [5] - 1041:16, 1041:23, 1076:20, 1076:21, 1076:22
**DISTRICT** [3] - 1022:1, 1022:1, 1022:10
**district** [2] - 1028:12
**disturb** [2] - 1088:18, 1092:15
**disturbance** [2] - 1076:12, 1088:25
**docket** [1] - 1028:14
**dollar** [2] - 1026:13, 1026:15
**done** [3] - 1033:17, 1064:24, 1072:17
**door** [4] - 1027:11, 1029:22, 1030:6, 1040:7
**doubt** [41] - 1037:7, 1066:16, 1066:21, 1067:1, 1067:4, 1067:9, 1067:10, 1067:11, 1067:15, 1067:16, 1067:19, 1067:20, 1067:22, 1067:23, 1069:22, 1073:2, 1073:22, 1074:23, 1076:2, 1077:23, 1079:1, 1079:14, 1081:4, 1081:15, 1082:15, 1082:21, 1084:8, 1084:13, 1084:23, 1085:14, 1086:16, 1088:8, 1089:12, 1090:21, 1091:13, 1092:12, 1093:10, 1094:11
**down** [2] - 1049:20, 1049:24
**draw** [3] - 1060:15, 1065:25, 1066:12
**drawn** [1] - 1068:4
**during** [19] - 1029:21,

1037:5, 1063:23, 1064:17, 1065:6, 1065:7, 1065:9, 1065:17, 1065:22, 1069:17, 1072:24, 1073:11, 1075:21, 1075:23, 1076:7, 1084:3, 1085:18, 1088:16, 1090:25
**duties** [5] - 1038:17, 1073:17, 1074:6, 1076:7, 1077:13
**duty** [5] - 1064:11, 1066:22, 1067:1, 1075:17, 1075:18

# E

**e-mail** [4] - 1028:10, 1028:11, 1028:14, 1028:15
**e-mailed** [1] - 1027:24
**effect** [2] - 1079:5, 1080:20
**effectively** [1] - 1049:8
**efficient** [1] - 1064:8
**efficiently** [1] - 1025:13
**efforts** [3] - 1087:4, 1090:5, 1092:2
**egress** [1] - 1032:3
**eight** [1] - 1056:2
**either** [11] - 1032:14, 1033:20, 1035:8, 1039:8, 1040:6, 1051:11, 1071:17, 1072:4, 1080:13, 1092:16, 1096:25
**Electoral** [2] - 1031:8, 1039:6
**electoral** [1] - 1028:23
**element** [22] - 1031:22, 1038:25, 1039:22, 1045:8, 1045:12, 1045:15, 1046:12, 1046:14, 1046:15, 1047:4, 1059:2, 1059:10, 1060:3, 1060:5, 1060:25, 1061:11, 1066:21, 1066:25, 1074:9, 1081:11, 1081:17, 1081:24
**elements** [37] - 1038:4, 1038:12, 1040:3, 1046:12, 1049:9, 1049:18, 1049:20, 1050:1, 1050:7, 1054:18, 1059:14, 1060:7,

1061:11, 1061:13, 1073:21, 1076:2, 1077:23, 1078:20, 1079:1, 1081:5, 1082:22, 1082:23, 1085:8, 1085:9, 1085:14, 1086:15, 1088:2, 1088:4, 1088:7, 1089:12, 1090:15, 1090:17, 1090:20, 1091:13, 1092:12, 1093:10, 1094:11
**elicit** [1] - 1028:1
**embezzles** [1] - 1061:2
**employee** [2] - 1074:5, 1077:1
**employees** [2] - 1038:16, 1073:15
**encompassed** [1] - 1045:2
**encourage** [3] - 1083:14, 1083:16, 1084:9
**encouraged** [2] - 1083:12, 1083:18
**encouraging** [1] - 1083:5
**End** [1] - 1096:5
**end** [3] - 1024:17, 1044:16, 1087:18
**enforcement** [4] - 1071:25, 1075:22, 1076:5, 1076:6
**enforcing** [1] - 1077:14
**engaged** [10] - 1038:16, 1073:16, 1074:6, 1076:6, 1088:8, 1089:13, 1090:21, 1091:14, 1092:13, 1093:11
**engaging** [5] - 1080:10, 1090:11, 1091:11, 1091:20, 1091:25
**enhancement** [1] - 1061:12
**enter** [2] - 1029:13, 1061:21
**entered** [5] - 1029:15, 1036:25, 1063:11, 1085:15, 1086:16
**entering** [10] - 1038:6, 1085:5, 1086:14, 1086:22, 1087:2, 1090:3, 1095:7, 1095:9, 1095:10, 1097:8

**entire** [1] - 1060:21
**entirely** [2] - 1037:5, 1072:22
**entitled** [3] - 1066:4, 1071:23, 1098:5
**entity** [1] - 1077:9
**equal** [2] - 1068:20
**errors** [1] - 1063:8
**ESQ** [1] - 1022:18
**essentially** [1] - 1060:9
**establish** [3] - 1030:24, 1031:25, 1080:21
**established** [3] - 1054:20, 1058:5
**establishing** [1] - 1050:18
**establishment** [1] - 1077:7
**ethnic** [1] - 1064:22
**evaluated** [1] - 1072:1
**evaluating** [3] - 1070:3, 1070:18, 1072:2
**evaluation** [1] - 1057:5
**event** [7] - 1070:19, 1070:21, 1070:22, 1070:24, 1072:4, 1089:1
**everyday** [1] - 1075:3
**everywhere** [1] - 1054:14
**evidence** [90] - 1023:22, 1024:17, 1026:3, 1026:10, 1027:18, 1030:2, 1030:4, 1030:19, 1031:15, 1032:20, 1035:15, 1037:4, 1037:8, 1041:6, 1043:7, 1043:13, 1046:9, 1047:10, 1047:25, 1048:17, 1049:10, 1049:17, 1049:19, 1050:6, 1050:18, 1050:21, 1050:25, 1051:22, 1052:8, 1052:13, 1052:21, 1056:10, 1059:12, 1059:24, 1063:17, 1064:16, 1064:18, 1064:23, 1065:4, 1065:5, 1065:11, 1065:13, 1065:15, 1065:18, 1065:20, 1065:24, 1065:25, 1066:3, 1066:6, 1066:7,

1066:8, 1066:11, 1066:18, 1067:12, 1067:13, 1067:24, 1067:25, 1068:1, 1068:3, 1068:5, 1068:9, 1068:13, 1068:15, 1068:17, 1068:18, 1068:21, 1068:22, 1068:23, 1069:1, 1069:3, 1069:5, 1069:9, 1069:12, 1069:16, 1071:4, 1071:15, 1072:1, 1072:18, 1072:24, 1072:25, 1073:5, 1075:12, 1081:14, 1083:24, 1084:1, 1084:6
**exact** [1] - 1031:11
**exactly** [3] - 1038:21, 1055:19, 1062:3
**examination** [1] - 1030:3
**examined** [2] - 1031:18, 1052:14
**example** [7] - 1031:7, 1031:22, 1032:11, 1068:6, 1070:8, 1079:24, 1094:18
**exceed** [2] - 1026:18, 1047:18
**exceeded** [2] - 1026:6, 1026:14
**exceeds** [1] - 1047:16
**except** [1] - 1081:25
**exception** [1] - 1058:14
**excess** [5] - 1046:14, 1059:22, 1059:25, 1060:5
**exclaimed** [1] - 1030:10
**exclude** [2] - 1027:12, 1032:19
**exclusive** [1] - 1065:3
**exculpatory** [1] - 1030:10
**excuse** [3] - 1035:23, 1095:13, 1096:9
**excusing** [1] - 1044:15
**Executive** [1] - 1077:3
**exercise** [3] - 1056:19, 1072:8, 1080:5
**Exhibit** [2] - 1041:18, 1044:9
**exhibits** [2] - 1030:18, 1065:20
**exit** [1] - 1032:7
**exited** [2] - 1037:24,

1096:18
**expected** [1] - 1096:7
**experience** [2] - 1026:16, 1066:3
**explain** [7] - 1033:11, 1043:14, 1078:20, 1078:22, 1085:7, 1088:1, 1090:14
**explained** [5] - 1030:25, 1032:12, 1064:7, 1067:3, 1082:24
**explanation** [1] - 1025:9
**expressed** [1] - 1065:1
**extent** [4] - 1044:18, 1059:16, 1061:6, 1070:1
**extra** [1] - 1096:12
**eyes** [1] - 1038:21
**eyewitness** [1] - 1068:1

## F

**F.2d** [2] - 1025:19, 1061:19
**F.3d** [3] - 1027:18, 1050:17, 1051:8
**face** [1] - 1030:3
**facilitate** [3] - 1083:14, 1083:16, 1084:10
**facilitated** [1] - 1083:18
**facilitating** [1] - 1083:5
**fact** [15] - 1024:13, 1026:2, 1029:8, 1030:2, 1032:12, 1049:22, 1065:24, 1067:5, 1068:2, 1068:16, 1073:7, 1075:18, 1080:19, 1088:13, 1089:18
**facts** [12] - 1064:14, 1064:15, 1064:20, 1065:20, 1065:23, 1066:1, 1067:25, 1068:3, 1069:5, 1072:18, 1072:23, 1083:25
**factual** [1] - 1052:12
**failed** [2] - 1026:22, 1066:25
**failure** [2] - 1050:1, 1060:8
**fair** [3] - 1064:8, 1064:23, 1069:2

**fairly** [2] - 1066:4, 1071:23
**falling** [2] - 1068:7, 1068:9
**falls** [2] - 1028:19, 1050:22
**falsehood** [1] - 1071:10
**family** [1] - 1085:25
**far** [2] - 1037:20, 1045:2
**fatigued** [1] - 1096:7
**favor** [1] - 1068:17
**favorable** [1] - 1059:13
**favoritism** [1] - 1064:21
**FBI** [1] - 1023:11
**fear** [2] - 1064:20, 1088:21
**federal** [12] - 1038:19, 1073:19, 1075:23, 1077:14, 1077:20, 1078:16, 1085:6, 1087:25, 1090:13, 1092:9, 1093:7, 1094:3
**federally** [2] - 1076:11, 1076:23
**feedback** [1] - 1038:3
**felonies** [1] - 1025:13
**felony** [13] - 1038:19, 1046:12, 1047:23, 1050:20, 1055:11, 1056:1, 1058:24, 1059:2, 1060:10, 1061:12, 1073:18, 1074:8, 1074:9
**few** [1] - 1023:19
**fifth** [2] - 1074:7, 1083:6
**figure** [1] - 1026:13
**file** [2] - 1028:13, 1028:14
**filled** [1] - 1052:18
**final** [1] - 1037:15
**finalize** [2] - 1044:19, 1053:20
**finally** [3] - 1032:10, 1057:1, 1093:5
**fine** [9] - 1036:3, 1041:10, 1045:4, 1045:23, 1045:25, 1046:1, 1047:16, 1047:19, 1062:24
**finished** [1] - 1039:25
**fired** [1] - 1028:21
**firm** [1] - 1081:21
**firmly** [1] - 1067:14
**first** [42] - 1024:5,

1024:8, 1028:7, 1030:8, 1038:4, 1038:13, 1038:25, 1039:22, 1040:3, 1045:12, 1045:15, 1045:17, 1055:3, 1056:9, 1063:13, 1073:22, 1076:2, 1077:23, 1078:20, 1079:1, 1081:5, 1081:11, 1082:22, 1085:14, 1086:5, 1086:16, 1086:21, 1087:5, 1088:8, 1089:12, 1089:22, 1090:6, 1090:21, 1091:13, 1091:19, 1092:3, 1092:12, 1093:10, 1094:11, 1095:4, 1096:10
**First** [3] - 1041:11, 1080:5, 1092:19
**five** [1] - 1025:13
**flag** [7] - 1041:4, 1095:17, 1095:19, 1096:20, 1097:5, 1097:11, 1097:14
**flagging** [1] - 1095:18
**Floor** [1] - 1022:19
**focus** [3] - 1031:21, 1052:13, 1061:10
**focused** [2] - 1051:15, 1061:7
**focusing** [1] - 1029:15
**follow** [2] - 1064:2, 1064:13
**followed** [2] - 1035:17, 1062:20
**following** [15] - 1073:21, 1076:1, 1077:22, 1078:25, 1081:4, 1082:21, 1085:13, 1086:15, 1088:7, 1089:11, 1090:20, 1091:13, 1092:11, 1093:9, 1094:10
**FOR** [1] - 1022:1
**forbids** [1] - 1078:9
**force** [4] - 1074:11, 1074:12, 1074:13
**forcibly** [7] - 1038:14, 1073:14, 1074:2, 1074:11, 1074:17, 1075:15, 1075:19
**foregoing** [1] - 1098:3
**foreseeable** [1] - 1079:15
**forgetfulness** [1] - 1071:8

**forgot** [1] - 1094:8
**form** [4] - 1068:17, 1087:20, 1090:8, 1092:5
**formal** [2] - 1066:9, 1077:9
**forward** [2] - 1058:7, 1060:1
**four** [3] - 1026:2, 1026:6, 1026:18
**fourth** [9] - 1031:24, 1046:13, 1046:15, 1061:11, 1074:3, 1079:6, 1083:3, 1083:22, 1088:15
**free** [1] - 1064:4
**Friday** [2] - 1024:13, 1024:18
**FRIEDRICH** [1] - 1022:10
**friendship** [1] - 1070:16
**front** [2] - 1030:15, 1048:10
**Front** [1] - 1022:16
**full** [4] - 1048:5, 1050:6, 1050:11, 1070:14
**function** [5] - 1064:7, 1064:14, 1076:11, 1076:23
**functions** [4] - 1088:12, 1088:15, 1089:16, 1089:19
**furtherance** [2] - 1083:2, 1083:10

## G

**gender** [1] - 1064:22
**general** [2] - 1063:19, 1075:6
**gentlemen** [9] - 1037:1, 1037:23, 1063:12, 1087:7, 1087:19, 1089:6, 1091:17, 1096:6, 1096:17
**given** [11] - 1024:12, 1026:1, 1026:15, 1031:15, 1043:12, 1046:9, 1048:14, 1084:22, 1092:24, 1095:5, 1096:13
**glass** [2] - 1054:12, 1054:14
**good-bye** [1] - 1096:3
**government** [73] - 1024:21, 1024:22, 1025:7, 1025:17,

1025:20, 1026:22, 1027:2, 1036:3, 1039:4, 1042:23, 1043:15, 1045:23, 1046:3, 1048:15, 1048:19, 1048:23, 1049:1, 1049:5, 1049:8, 1050:12, 1050:18, 1052:3, 1055:6, 1058:15, 1058:23, 1059:4, 1059:5, 1059:7, 1059:13, 1059:23, 1060:15, 1060:22, 1061:8, 1062:4, 1062:8, 1063:2, 1063:15, 1066:15, 1066:20, 1066:24, 1067:3, 1067:21, 1069:21, 1073:1, 1073:21, 1075:14, 1076:1, 1077:10, 1077:19, 1077:22, 1078:4, 1078:10, 1078:12, 1078:25, 1079:14, 1080:6, 1081:4, 1081:25, 1082:2, 1082:6, 1083:10, 1084:13, 1085:13, 1088:7, 1088:12, 1088:14, 1089:16, 1089:19, 1090:20, 1092:11, 1095:24, 1096:10, 1097:14

**government's** [19] - 1023:15, 1024:3, 1024:4, 1024:20, 1025:15, 1031:4, 1036:9, 1037:6, 1048:7, 1048:8, 1052:21, 1054:15, 1060:6, 1062:18, 1067:7, 1096:11, 1096:23, 1096:25, 1097:2

**grant** [9] - 1024:20, 1025:22, 1048:5, 1048:7, 1048:20, 1050:9, 1050:10, 1059:17, 1061:20

**granted** [1] - 1026:23
**gravely** [1] - 1029:24
**graver** [1] - 1067:18
**great** [1] - 1032:3
**greater** [5] - 1047:23, 1048:15, 1068:21, 1069:8, 1072:4
**grievances** [1] - 1080:6

**ground** [3] - 1068:11, 1068:12, 1097:8
**grounds** [40] - 1029:14, 1038:7, 1040:20, 1041:2, 1041:5, 1041:9, 1041:11, 1041:21, 1042:14, 1042:19, 1043:3, 1043:5, 1043:12, 1044:4, 1058:2, 1058:3, 1077:14, 1085:5, 1085:15, 1085:20, 1085:22, 1086:15, 1086:17, 1086:22, 1087:3, 1087:11, 1087:24, 1088:10, 1089:2, 1089:11, 1089:14, 1089:24, 1090:4, 1090:12, 1090:23, 1091:5, 1091:12, 1091:16, 1091:21, 1092:1
**groups** [1] - 1076:13
**growling** [1] - 1062:23
**guarding** [1] - 1029:4
**guess** [3] - 1027:4, 1048:13, 1048:20
**guessing** [2] - 1095:22, 1096:8
**guesswork** [1] - 1067:20
**guidelines** [1] - 1072:3
**guilt** [7] - 1031:9, 1032:8, 1066:12, 1067:15, 1067:21, 1067:23
**guilty** [44] - 1056:22, 1061:22, 1066:16, 1066:22, 1067:2, 1067:4, 1072:12, 1073:8, 1073:12, 1073:20, 1075:25, 1077:21, 1078:24, 1081:2, 1081:12, 1081:18, 1082:8, 1082:18, 1084:4, 1084:11, 1084:17, 1084:25, 1085:12, 1086:21, 1086:24, 1087:1, 1087:2, 1088:6, 1089:9, 1089:22, 1089:25, 1090:2, 1090:3, 1090:19, 1091:10, 1091:19, 1091:22, 1091:24, 1091:25, 1092:10, 1093:8, 1094:9

**guns** [2] - 1030:10, 1030:14

## H

**hand** [2] - 1066:24, 1068:3
**hands** [1] - 1037:16
**hard** [1] - 1030:1
**harm** [5] - 1074:16, 1074:17, 1091:3, 1093:15, 1093:18
**harmed** [1] - 1088:22
**Hawa** [1] - 1029:3
**head** [1] - 1052:19
**hear** [10] - 1024:3, 1024:8, 1033:14, 1036:9, 1036:19, 1037:11, 1037:14, 1039:3, 1063:14, 1096:10
**heard** [5] - 1032:3, 1032:5, 1053:4, 1063:17, 1071:24
**hearing** [2] - 1033:6, 1071:7
**hearings** [1] - 1094:19
**help** [2] - 1031:11, 1031:25
**helped** [1] - 1029:13
**helpful** [6] - 1024:6, 1036:19, 1051:13, 1051:14, 1053:15, 1053:20
**herein** [1] - 1045:2
**herself** [1] - 1071:16
**hesitant** [1] - 1046:19
**hesitate** [1] - 1067:18
**highly** [2] - 1025:7, 1067:6
**historic** [1] - 1026:2
**history** [1] - 1030:5
**hit** [2] - 1049:22
**hitting** [1] - 1041:4
**hold** [4] - 1045:4, 1056:19, 1069:14, 1072:9
**Homeland** [1] - 1077:3
**homeless** [2] - 1052:11, 1052:17
**homework** [1] - 1033:18
**honest** [1] - 1067:13
**Honor** [59] - 1023:4, 1023:8, 1023:16, 1024:9, 1025:23, 1026:1, 1026:21, 1026:25, 1032:23, 1034:16, 1035:10, 1035:11, 1036:4,

1038:24, 1039:21, 1040:12, 1040:15, 1040:22, 1041:3, 1042:3, 1042:5, 1042:24, 1043:23, 1043:24, 1044:8, 1045:11, 1045:24, 1046:1, 1046:4, 1046:7, 1046:20, 1047:2, 1047:13, 1048:13, 1048:22, 1050:16, 1052:2, 1052:22, 1053:23, 1055:5, 1055:18, 1055:23, 1056:25, 1057:17, 1057:20, 1058:6, 1058:14, 1058:19, 1059:19, 1060:4, 1060:17, 1060:19, 1061:16, 1063:4, 1094:5, 1095:6, 1096:2, 1097:11, 1097:15
**Honor's** [3] - 1033:7, 1034:1, 1049:25
**HONORABLE** [1] - 1022:10
**hope** [1] - 1037:2
**hoping** [1] - 1062:17
**Hopkins** [2] - 1053:17
**hostility** [1] - 1070:17
**hour** [4] - 1036:15, 1062:21, 1096:3, 1096:13
**house** [2] - 1092:16, 1092:21
**House** [1] - 1092:22
**hungry** [1] - 1096:9

## I

**idea** [1] - 1036:22
**ideally** [1] - 1044:19
**identified** [1] - 1082:14
**ignorance** [1] - 1075:10
**ignore** [4] - 1064:2, 1064:13, 1065:2, 1069:18
**II** [1] - 1022:18
**illuminate** [1] - 1031:12
**imaginary** [1] - 1067:19
**imagine** [2] - 1095:12, 1096:25
**immediate** [5] - 1030:24, 1076:14, 1076:15, 1085:25,

1088:22
**impair** [1] - 1070:20
**impartial** [2] - 1067:13, 1069:2
**impeachment** [1] - 1057:11
**impede** [11] - 1075:2, 1078:18, 1079:2, 1079:3, 1079:6, 1079:8, 1079:23, 1080:22, 1088:11, 1089:15, 1092:15
**impeded** [8] - 1040:4, 1045:18, 1073:23, 1074:4, 1075:16, 1075:20, 1088:14, 1089:18
**impedes** [1] - 1080:8
**impeding** [6] - 1038:15, 1073:14, 1076:4, 1080:2, 1080:21, 1094:18
**implies** [1] - 1067:10
**important** [1] - 1067:18
**importantly** [1] - 1028:19
**imposed** [2] - 1045:18, 1073:23
**imposing** [1] - 1038:15
**impresses** [2] - 1070:11, 1070:12
**imprisonment** [3] - 1047:17, 1047:19, 1056:2
**improbability** [1] - 1071:12
**improper** [3] - 1051:19, 1056:20, 1072:10
**improperly** [1] - 1064:21
**improve** [1] - 1070:20
**inappropriate** [1] - 1051:23
**incident** [1] - 1076:7
**inclination** [1] - 1050:10
**inclined** [13] - 1024:20, 1027:2, 1033:4, 1033:12, 1038:9, 1039:2, 1039:7, 1043:20, 1049:25, 1056:16, 1059:11, 1061:24, 1062:18
**include** [3] - 1040:19, 1041:8, 1094:20
**included** [26] - 1026:8,

1043:1, 1046:8, 1048:6, 1050:2, 1054:2, 1056:25, 1059:5, 1059:9, 1059:17, 1059:21, 1061:22, 1085:9, 1086:25, 1087:6, 1088:3, 1090:1, 1090:7, 1090:16, 1091:11, 1091:23, 1092:4, 1095:8, 1095:10, 1095:11, 1097:7

**includeds** [1] - 1053:25

**includes** [11] - 1041:10, 1041:12, 1042:19, 1077:2, 1077:4, 1077:6, 1077:9, 1079:10, 1085:24, 1088:20, 1092:18

**including** [6] - 1070:19, 1074:25, 1075:12, 1076:20, 1076:21, 1083:24

**inconsistencies** [3] - 1070:25, 1071:3, 1071:6

**inconsistent** [3] - 1057:3, 1057:5, 1057:11

**incrimination** [1] - 1080:1

**independent** [1] - 1077:7

**independently** [2] - 1079:18, 1080:11

**indicate** [2] - 1059:20, 1072:19

**indicated** [2] - 1060:2, 1065:1

**indicates** [1] - 1029:5

**indicating** [1] - 1064:25

**indictment** [23] - 1032:9, 1032:11, 1038:8, 1038:12, 1038:14, 1048:9, 1049:5, 1051:24, 1066:9, 1066:10, 1073:4, 1073:9, 1073:10, 1073:13, 1077:18, 1078:14, 1085:4, 1087:22, 1090:10, 1092:7, 1093:5, 1094:1

**individual** [10] - 1029:3, 1029:9, 1052:21, 1052:24,

1076:15, 1076:17, 1080:4, 1080:8, 1091:3, 1093:15

**individual's** [2] - 1076:16, 1076:18

**individuals** [2] - 1045:16, 1071:7

**infer** [3] - 1072:15, 1072:20

**inference** [1] - 1066:12

**inferences** [2] - 1066:2, 1068:4

**inferred** [1] - 1075:6

**inflict** [4] - 1074:16, 1074:17, 1074:20, 1074:24

**infliction** [4] - 1091:3, 1093:14, 1093:18

**influence** [1] - 1073:9

**influenced** [1] - 1064:22

**information** [3] - 1024:22, 1025:4, 1025:18

**inherently** [1] - 1086:6

**initial** [5] - 1037:10, 1060:25, 1063:14, 1097:1, 1097:2

**injured** [1] - 1077:24

**injury** [9] - 1038:8, 1074:20, 1074:24, 1076:15, 1076:16, 1086:8, 1086:10

**innocence** [4] - 1031:10, 1032:8, 1066:14, 1066:18

**innocent** [2] - 1066:14, 1071:9

**inside** [2] - 1031:9, 1041:2

**Inspector** [1] - 1030:12

**instead** [4] - 1028:9, 1034:4, 1050:12, 1081:21

**instituted** [2] - 1079:12, 1079:13

**instruct** [20] - 1033:14, 1034:13, 1036:8, 1037:9, 1059:9, 1059:17, 1063:13, 1063:18, 1064:9, 1064:11, 1073:7, 1085:7, 1085:8, 1086:19, 1088:1, 1088:2, 1089:20, 1090:14, 1090:15, 1091:17

**instructed** [5] -

1026:7, 1028:8, 1039:15, 1046:12, 1095:23

**instructing** [3] - 1058:2, 1061:13, 1063:5

**Instruction** [1] - 1044:5

**instruction** [26] - 1038:6, 1038:11, 1039:22, 1039:23, 1040:18, 1041:7, 1042:9, 1042:11, 1042:13, 1043:18, 1043:25, 1044:1, 1044:15, 1045:9, 1045:11, 1045:14, 1046:5, 1046:6, 1052:9, 1056:16, 1056:17, 1057:2, 1057:14, 1058:1, 1097:6

**instructions** [65] - 1023:20, 1023:23, 1033:17, 1034:5, 1034:10, 1035:16, 1035:21, 1036:16, 1036:21, 1037:10, 1037:15, 1038:1, 1039:5, 1044:11, 1050:3, 1051:12, 1051:21, 1053:20, 1054:2, 1055:5, 1055:7, 1056:8, 1057:1, 1057:4, 1057:7, 1057:15, 1057:16, 1057:21, 1058:13, 1061:21, 1061:25, 1062:2, 1062:7, 1062:21, 1063:8, 1063:22, 1063:23, 1063:25, 1064:1, 1064:3, 1064:5, 1064:12, 1077:17, 1078:7, 1079:17, 1084:22, 1086:3, 1089:4, 1089:8, 1091:7, 1091:9, 1092:24, 1093:2, 1093:4, 1093:21, 1093:23, 1093:25, 1094:22, 1094:24, 1095:1, 1095:5, 1096:22, 1096:24

**instrumentality** [2] - 1076:25, 1077:9

**intended** [8] - 1031:8, 1065:15, 1066:6, 1074:23, 1076:3,

1079:3, 1081:5, 1081:10

**intending** [1] - 1081:16

**intends** [1] - 1072:21

**intent** [22] - 1038:18, 1056:1, 1072:13, 1072:15, 1072:19, 1073:18, 1074:8, 1075:6, 1078:8, 1078:17, 1080:12, 1080:15, 1080:17, 1080:22, 1081:22, 1083:7, 1083:22, 1084:9, 1086:9, 1088:11, 1089:15, 1092:15

**intentional** [2] - 1071:9, 1074:19

**intentionally** [6] - 1072:22, 1074:3, 1075:4, 1075:19, 1082:16

**interest** [2] - 1025:12, 1070:16

**interfere** [2] - 1075:3, 1079:8

**interfered** [7] - 1040:5, 1045:12, 1045:19, 1073:23, 1074:5, 1075:16, 1075:20

**interfering** [3] - 1038:15, 1073:15, 1076:4

**interrupts** [1] - 1088:25

**intimidate** [1] - 1075:2

**intimidated** [6] - 1040:4, 1045:19, 1073:23, 1074:4, 1075:16, 1075:20

**intimidating** [2] - 1038:15, 1073:15

**introduce** [1] - 1041:17

**introduced** [1] - 1041:15

**investigation** [2] - 1053:3, 1053:5

**invoking** [1] - 1079:25

**involve** [2] - 1055:25, 1079:24

**involved** [4] - 1029:23, 1043:10, 1077:25, 1084:2

**involves** [1] - 1080:12

**involving** [5] - 1076:13, 1091:2, 1093:13, 1093:15

**irrelevant** [2] -

1027:13, 1029:10

**issue** [11] - 1043:4, 1043:9, 1048:25, 1049:10, 1050:13, 1058:21, 1059:16, 1060:18, 1060:20, 1061:17, 1095:7

**issues** [9] - 1033:13, 1035:14, 1037:18, 1054:24, 1055:3, 1055:4, 1062:1, 1063:21, 1096:20

**itself** [6] - 1025:23, 1030:5, 1041:5, 1048:14, 1054:8, 1054:18

## J

**January** [2] - 1029:7, 1077:12

**joined** [1] - 1023:9

**JORDAN** [1] - 1022:6

**Joseph** [1] - 1023:8

**JOSEPH** [1] - 1022:15

**JUDGE** [1] - 1022:10

**judges** [2] - 1064:15, 1069:24

**judging** [1] - 1070:3

**judgment** [4] - 1061:20, 1066:4, 1070:7, 1071:23

**June** [1] - 1041:21

**juror** [1] - 1048:1

**jurors** [4] - 1036:8, 1063:10, 1065:7, 1065:14

**jurors'** [1] - 1026:16

**jury** [36] - 1023:18, 1023:20, 1023:23, 1025:5, 1025:21, 1026:5, 1026:7, 1026:14, 1029:10, 1029:17, 1029:25, 1030:18, 1031:20, 1031:21, 1032:2, 1032:19, 1033:4, 1033:10, 1035:13, 1035:21, 1035:23, 1036:21, 1036:24, 1037:5, 1039:14, 1042:4, 1042:25, 1043:13, 1050:3, 1053:20, 1054:1, 1058:2, 1061:24, 1064:14, 1065:9, 1087:21

**JURY** [1] - 1022:9

**Jury** [6] - 1023:3, 1036:25, 1037:24,

1055:1, 1063:11, 1096:18
**jury's** [1] - 1030:22
**justified** [1] - 1066:2

## K

**keep** [2] - 1030:1, 1051:14
**kind** [2] - 1066:11, 1067:16
**knocked** [1] - 1047:11
**knowing** [2] - 1072:14, 1084:3
**knowingly** [28] - 1061:2, 1075:5, 1075:8, 1075:11, 1076:3, 1077:16, 1079:4, 1079:16, 1082:16, 1083:3, 1085:17, 1085:18, 1086:2, 1086:18, 1088:11, 1088:15, 1089:7, 1089:15, 1090:24, 1091:8, 1091:16, 1092:17, 1093:1, 1093:12, 1093:22, 1094:14, 1094:23
**knowledge** [7] - 1028:25, 1029:6, 1068:2, 1072:13, 1072:16, 1072:19, 1083:22
**known** [3] - 1024:22, 1025:3, 1082:12
**Kyle** [2] - 1045:20, 1073:25

## L

**labor** [1] - 1026:17
**lack** [3] - 1028:25, 1030:8, 1067:12
**lacked** [1] - 1031:25
**ladies** [9] - 1037:1, 1037:23, 1063:12, 1087:7, 1087:19, 1089:5, 1091:17, 1096:6, 1096:17
**Lanciano** [2] - 1045:21, 1073:25
**language** [7] - 1023:22, 1039:19, 1042:1, 1042:18, 1048:10, 1055:20, 1097:8
**lapsed** [1] - 1070:21
**last** [6] - 1024:7, 1024:8, 1028:17,

1059:24, 1082:1, 1093:5
**latest** [1] - 1038:1
**law** [37] - 1026:21, 1037:10, 1038:19, 1039:14, 1046:24, 1047:1, 1054:17, 1058:17, 1063:19, 1064:9, 1064:10, 1064:11, 1066:17, 1068:15, 1068:16, 1071:24, 1073:19, 1075:6, 1075:22, 1075:24, 1076:4, 1076:6, 1077:14, 1077:20, 1078:9, 1078:10, 1078:13, 1078:16, 1083:20, 1085:6, 1087:25, 1090:13, 1092:9, 1093:7, 1094:3
**lawful** [3] - 1076:6, 1085:16, 1086:17
**lawfully** [1] - 1080:4
**laws** [1] - 1076:24
**lawyer** [2] - 1069:13, 1069:14
**lawyer's** [2] - 1069:15, 1069:18
**lawyers** [3] - 1066:5, 1066:7, 1069:11
**lead** [1] - 1031:21
**least** [5] - 1041:6, 1046:10, 1059:15, 1060:18, 1083:12
**leave** [4] - 1031:16, 1031:19, 1032:1, 1096:3
**leaves** [1] - 1032:21
**leaving** [1] - 1031:7
**Lederer** [2] - 1023:9, 1055:17
**LEDERER** [27] - 1022:13, 1034:16, 1035:11, 1040:22, 1040:25, 1041:18, 1041:25, 1042:3, 1042:23, 1043:8, 1043:15, 1044:8, 1044:13, 1052:2, 1052:7, 1052:9, 1052:13, 1052:22, 1053:7, 1053:23, 1054:7, 1054:15, 1062:10, 1062:13, 1062:15, 1087:12, 1087:14
**left** [1] - 1030:11
**legal** [3] - 1033:13, 1035:14, 1037:18

**Legislative** [1] - 1077:5
**legitimate** [1] - 1051:17
**less** [2] - 1047:23, 1096:3
**lesser** [28] - 1026:7, 1046:8, 1048:5, 1050:2, 1053:25, 1054:2, 1059:5, 1059:9, 1059:17, 1059:21, 1061:22, 1072:4, 1085:9, 1086:13, 1086:25, 1087:6, 1088:3, 1089:9, 1090:1, 1090:7, 1090:16, 1091:10, 1091:23, 1092:4, 1095:8, 1095:10, 1095:11, 1097:7
**letter** [1] - 1054:17
**life** [2] - 1052:5, 1067:18
**light** [7] - 1025:20, 1033:9, 1048:19, 1051:19, 1056:24, 1059:12, 1066:2
**likelihood** [1] - 1037:12
**likely** [6] - 1029:10, 1029:16, 1034:6, 1067:5, 1088:22, 1088:23
**limitations** [1] - 1050:9
**limits** [1] - 1027:17
**line** [3] - 1038:20, 1039:6, 1039:11
**lines** [1] - 1096:13
**lively** [1] - 1030:16
**Lively** [6] - 1027:11, 1030:12, 1031:18, 1032:5, 1045:20, 1073:24
**living** [1] - 1052:17
**loading** [1] - 1051:23
**Lobby** [11] - 1027:10, 1028:3, 1028:24, 1029:4, 1029:22, 1031:19, 1032:1, 1032:4, 1040:6, 1045:22, 1074:1
**located** [4] - 1041:10, 1045:21, 1073:25, 1092:19
**location** [2] - 1031:1, 1031:11
**logical** [2] - 1052:15, 1053:9

**look** [12] - 1023:23, 1027:1, 1044:24, 1051:5, 1051:10, 1054:7, 1054:9, 1054:16, 1054:22, 1095:15, 1096:20, 1097:12
**looked** [2] - 1068:6, 1068:10
**looking** [2] - 1039:11, 1054:16
**lost** [1] - 1046:11
**loud** [1] - 1088:24
**Loyd** [4] - 1030:4, 1030:12, 1030:14, 1030:16
**lunch** [12] - 1034:14, 1036:6, 1036:9, 1036:11, 1037:12, 1037:13, 1062:5, 1062:19, 1063:1, 1063:15, 1095:14

## M

**Macechko** [1] - 1023:10
**mail** [4] - 1028:10, 1028:11, 1028:14, 1028:15
**mailed** [1] - 1027:24
**manner** [5] - 1064:9, 1070:10, 1086:10, 1086:12, 1088:20
**manufactured** [1] - 1078:2
**map** [6] - 1041:14, 1041:19, 1041:20, 1042:8, 1042:16, 1043:13
**marginally** [1] - 1031:14
**Marketos** [1] - 1023:11
**mathematical** [1] - 1067:22
**matter** [4] - 1026:21, 1046:24, 1047:1, 1098:5
**matters** [3] - 1067:18, 1070:5, 1070:15
**maximum** [2] - 1047:15, 1047:21
**McKenna** [2] - 1024:2, 1027:10
**mean** [6] - 1033:24, 1038:21, 1047:3, 1053:6, 1062:16, 1062:21
**meaning** [18] - 1028:5,

1077:16, 1078:6, 1079:16, 1085:21, 1086:2, 1089:3, 1089:7, 1091:8, 1092:24, 1093:1, 1093:3, 1093:20, 1093:22, 1093:24, 1094:21, 1094:23, 1094:25
**meanings** [3] - 1075:3, 1091:6, 1094:16
**means** [19] - 1028:14, 1059:9, 1068:16, 1070:3, 1074:19, 1074:24, 1075:4, 1076:12, 1076:19, 1076:21, 1076:23, 1077:13, 1079:8, 1079:19, 1079:21, 1085:20, 1091:2, 1092:21, 1093:13
**meet** [5] - 1046:25, 1049:18, 1049:20, 1050:1, 1093:19
**meetings** [1] - 1094:19
**Melissa** [1] - 1023:10
**memory** [7] - 1065:5, 1065:6, 1065:11, 1065:12, 1065:15, 1070:12, 1070:18
**mental** [1] - 1081:15
**mention** [1] - 1061:9
**mentions** [2] - 1045:15, 1061:1
**mere** [1] - 1080:19
**merely** [8] - 1066:9, 1072:5, 1081:13, 1081:19, 1082:5, 1084:1, 1084:2, 1084:3
**merit** [1] - 1030:8
**merits** [1] - 1028:20
**met** [6] - 1047:3, 1047:5, 1047:7, 1049:8, 1059:14
**metal** [1] - 1041:4
**METCALF** [56] - 1022:18, 1023:14, 1026:21, 1032:23, 1032:25, 1033:7, 1033:19, 1033:22, 1033:25, 1034:15, 1035:10, 1035:25, 1036:17, 1039:18, 1040:17, 1042:5, 1042:11, 1042:16, 1042:21, 1043:23, 1044:25, 1046:1,

1046:19, 1046:24, 1047:5, 1047:7, 1049:3, 1049:13, 1049:19, 1050:16, 1050:25, 1051:4, 1051:8, 1052:24, 1053:2, 1053:13, 1055:9, 1055:15, 1056:7, 1056:12, 1056:14, 1056:24, 1057:17, 1058:19, 1059:19, 1060:11, 1061:16, 1062:3, 1062:24, 1063:3, 1087:16, 1095:6, 1095:16, 1095:20, 1096:2, 1097:5

**Metcalf** [34] - 1022:18, 1023:14, 1024:24, 1026:20, 1028:8, 1028:10, 1028:16, 1029:5, 1032:21, 1034:6, 1035:3, 1036:10, 1039:17, 1040:16, 1042:10, 1043:22, 1044:23, 1045:25, 1046:17, 1047:24, 1048:25, 1051:15, 1052:3, 1053:12, 1055:8, 1055:13, 1056:6, 1056:10, 1057:9, 1058:17, 1059:18, 1061:15, 1097:4

**Metcalf's** [2] - 1030:3, 1036:11

**middle** [2] - 1037:13, 1053:10

**might** [7] - 1024:19, 1036:7, 1036:8, 1062:23, 1063:8, 1069:6, 1096:8

**Miller** [1] - 1097:19

**mind** [3] - 1031:7, 1031:12, 1073:3

**minimally** [1] - 1032:2

**minute** [1] - 1097:2

**minutes** [1] - 1062:13

**misdemeanor** [7] - 1046:8, 1046:13, 1047:22, 1050:20, 1058:25, 1059:15, 1060:11

**misdemeanors** [2] - 1025:14, 1046:16

**mistake** [1] - 1075:10

**mistakes** [1] - 1071:9

**modes** [1] - 1032:3

**modified** [1] - 1061:20

**moment** [1] - 1060:19

**Monday** [1] - 1025:8

**monetary** [3] - 1054:19, 1058:25, 1059:1

**money** [2] - 1049:24, 1061:5

**monitored** [1] - 1028:15

**montage** [1] - 1044:10

**Morgan** [1] - 1025:17

**morning** [9] - 1023:8, 1023:13, 1023:15, 1023:16, 1023:17, 1024:21, 1033:8, 1034:2

**MORNING** [1] - 1022:9

**most** [2] - 1035:25, 1059:12

**motion** [15] - 1024:2, 1024:3, 1024:5, 1024:20, 1025:17, 1025:19, 1026:23, 1027:8, 1028:7, 1048:4, 1048:5, 1048:8, 1049:5, 1050:10

**motions** [1] - 1024:1

**motive** [1] - 1070:13

**mouth** [1] - 1048:12

**move** [4] - 1025:21, 1026:8, 1054:18, 1096:22

**moved** [2] - 1048:23, 1050:13

**movement** [1] - 1076:10

**moves** [1] - 1054:21

**moving** [2] - 1027:8, 1048:14

**MR** [89] - 1023:8, 1023:14, 1024:9, 1025:23, 1026:1, 1026:13, 1026:21, 1032:23, 1032:25, 1033:7, 1033:19, 1033:22, 1033:25, 1034:15, 1035:10, 1035:25, 1036:3, 1036:17, 1038:24, 1039:9, 1039:13, 1039:18, 1039:21, 1040:2, 1040:10, 1040:12, 1040:15, 1040:17, 1041:3, 1042:5, 1042:11, 1042:16, 1042:21, 1043:23, 1043:24, 1044:25, 1045:8, 1045:11, 1045:15, 1045:23, 1046:1,

1046:4, 1046:19, 1046:24, 1047:5, 1047:7, 1047:13, 1048:13, 1048:22, 1049:3, 1049:13, 1049:19, 1050:16, 1050:25, 1051:4, 1051:8, 1052:24, 1053:2, 1053:13, 1055:5, 1055:9, 1055:15, 1055:18, 1055:23, 1056:7, 1056:12, 1056:14, 1056:24, 1057:17, 1057:20, 1058:6, 1058:14, 1058:19, 1059:19, 1060:11, 1060:17, 1061:16, 1062:3, 1062:24, 1063:3, 1063:4, 1087:16, 1094:5, 1095:6, 1095:16, 1095:20, 1096:2, 1097:5, 1097:15

**MS** [26] - 1034:16, 1035:11, 1040:22, 1040:25, 1041:18, 1041:25, 1042:3, 1042:23, 1043:8, 1043:15, 1044:8, 1044:13, 1052:2, 1052:7, 1052:9, 1052:13, 1052:22, 1053:7, 1053:23, 1054:7, 1054:15, 1062:10, 1062:13, 1062:15, 1087:12, 1087:14

**multiple** [1] - 1055:21

**must** [48] - 1029:18, 1032:15, 1050:18, 1054:19, 1054:20, 1056:19, 1056:22, 1059:13, 1066:10, 1067:8, 1068:25, 1069:1, 1069:13, 1069:19, 1069:23, 1072:9, 1072:11, 1073:20, 1074:18, 1074:22, 1076:1, 1077:22, 1078:10, 1078:25, 1079:14, 1079:18, 1079:20, 1080:15, 1081:3, 1081:14, 1081:21, 1082:20, 1083:10, 1083:13, 1084:13, 1085:8, 1085:13, 1086:15, 1088:2, 1088:7, 1089:11, 1090:15, 1090:20,

1091:12, 1092:11, 1093:9, 1094:10

## N

**name** [1] - 1067:10

**names** [2] - 1023:7, 1040:11

**natural** [2] - 1072:21, 1079:5

**nature** [4] - 1024:12, 1051:2, 1068:25, 1075:9

**near** [3] - 1030:9, 1030:13, 1030:20

**necessarily** [3] - 1048:13, 1069:3, 1082:1

**necessary** [7] - 1031:22, 1042:22, 1050:1, 1057:22, 1067:5, 1073:2, 1082:13

**need** [30] - 1023:24, 1026:3, 1026:4, 1030:10, 1030:14, 1033:3, 1033:10, 1033:16, 1033:19, 1034:9, 1034:10, 1035:24, 1036:10, 1037:21, 1038:22, 1039:1, 1042:10, 1044:23, 1057:17, 1058:3, 1075:17, 1078:4, 1078:12, 1079:11, 1080:16, 1083:15, 1083:19, 1085:1, 1086:11, 1091:22

**needs** [3] - 1026:14, 1040:8, 1042:1

**negated** [1] - 1080:18

**never** [1] - 1066:17

**new** [1] - 1055:4

**New** [2] - 1022:20

**next** [4] - 1023:24, 1035:16, 1043:25, 1095:8

**nice** [1] - 1034:4

**night** [2] - 1024:8, 1028:18

**Ninth** [3] - 1050:17, 1051:9, 1059:3

**nits** [1] - 1095:14

**normal** [1] - 1089:1

**Northwest** [2] - 1022:14, 1022:21

**note** [4] - 1030:1, 1036:18, 1063:7, 1064:4

**notebooks** [1] - 1065:8

**noted** [1] - 1029:20

**notes** [4] - 1065:8, 1065:10, 1065:14, 1065:15

**notetaker's** [1] - 1065:16

**nothing** [3] - 1035:10, 1056:7, 1061:16

**notice** [1] - 1058:22

**noticed** [1] - 1095:17

**Number** [1] - 1022:3

**number** [10] - 1044:5, 1045:7, 1045:9, 1057:7, 1058:1, 1069:4, 1069:7, 1069:8, 1071:24, 1097:6

**numbering** [1] - 1051:13

**numbers** [1] - 1044:17

**numeric** [1] - 1054:13

## O

**object** [7] - 1053:10, 1069:15, 1086:4, 1086:5, 1086:7, 1086:8, 1086:11

**objected** [1] - 1069:11

**objecting** [1] - 1069:13

**objection** [6] - 1038:22, 1039:8, 1039:18, 1043:22, 1049:4, 1069:18

**objections** [2] - 1069:14, 1095:4

**obligation** [1] - 1037:7

**observe** [1] - 1070:14

**observed** [1] - 1070:5

**observes** [1] - 1032:10

**obstruct** [11] - 1031:8, 1078:17, 1079:2, 1079:3, 1079:6, 1079:8, 1079:23, 1080:15, 1080:17, 1080:22, 1084:19

**obstructed** [3] - 1028:4, 1076:9, 1084:18

**obstructing** [7] - 1075:21, 1075:22, 1076:4, 1078:15, 1080:2, 1080:20, 1094:19

**obstruction** [18] - 1029:11, 1080:24,

1080:25, 1081:3, 1081:6, 1081:8, 1081:12, 1081:18, 1081:23, 1082:3, 1082:18, 1082:22, 1082:25, 1083:6, 1083:8, 1084:20, 1084:24, 1085:2
**obstructs** [1] - 1080:8
**obviously** [3] - 1052:9, 1052:13, 1086:6
**occur** [1] - 1041:2
**occurred** [4] - 1029:12, 1040:21, 1088:13, 1089:17
**OF** [5] - 1022:1, 1022:3, 1022:9, 1098:1, 1098:9
**offense** [75] - 1040:3, 1046:8, 1046:13, 1048:6, 1059:5, 1059:9, 1060:6, 1060:23, 1061:8, 1066:25, 1067:2, 1073:4, 1073:5, 1073:20, 1074:25, 1075:25, 1077:21, 1078:19, 1078:21, 1078:23, 1078:24, 1079:12, 1081:7, 1082:5, 1082:7, 1082:8, 1082:9, 1082:10, 1082:20, 1082:24, 1083:3, 1083:5, 1083:8, 1083:10, 1083:12, 1083:14, 1083:16, 1083:19, 1084:4, 1084:7, 1084:11, 1084:14, 1084:17, 1084:21, 1084:24, 1085:2, 1085:9, 1085:12, 1085:19, 1086:13, 1086:24, 1086:25, 1088:3, 1088:6, 1088:17, 1089:9, 1089:25, 1090:1, 1090:16, 1090:19, 1091:1, 1091:11, 1091:22, 1091:23, 1092:10, 1092:25, 1093:8, 1093:17, 1094:9
**offenses** [10] - 1032:12, 1038:5, 1047:14, 1047:22, 1066:21, 1066:23, 1074:10, 1086:20, 1089:21, 1091:18

**offer** [2] - 1030:18, 1057:21
**offered** [1] - 1069:12
**Office** [4] - 1022:13, 1022:16, 1041:16, 1041:23
**officer** [9] - 1025:11, 1057:10, 1072:6, 1074:3, 1074:5, 1074:12, 1075:18, 1075:20, 1077:1
**officer's** [3] - 1030:23, 1071:25, 1072:2
**officers** [30] - 1027:9, 1027:22, 1028:1, 1028:21, 1028:25, 1029:3, 1029:9, 1029:22, 1030:3, 1030:5, 1030:7, 1030:8, 1031:13, 1031:25, 1032:13, 1038:16, 1040:5, 1040:10, 1045:13, 1045:19, 1049:23, 1071:25, 1073:15, 1073:24, 1074:3, 1074:7, 1075:21, 1075:23, 1076:5, 1076:6
**Officers** [5] - 1024:2, 1027:9, 1027:11, 1031:18, 1032:5
**officers'** [3] - 1029:19, 1032:16, 1040:11
**Official** [1] - 1022:21
**OFFICIAL** [1] - 1098:1
**official** [45] - 1028:5, 1038:17, 1039:7, 1073:17, 1074:6, 1075:17, 1075:18, 1076:7, 1077:13, 1078:15, 1078:18, 1079:2, 1079:4, 1079:6, 1079:9, 1079:10, 1079:11, 1079:12, 1079:15, 1079:23, 1080:16, 1080:17, 1080:24, 1080:25, 1081:3, 1081:6, 1081:8, 1081:13, 1081:19, 1081:23, 1082:3, 1082:19, 1082:23, 1082:25, 1083:6, 1083:8, 1084:18, 1084:19, 1084:20, 1084:24, 1085:2, 1088:12, 1088:15, 1089:16, 1089:19
**often** [2] - 1080:12,

1082:11
**once** [1] - 1034:10
**one** [30] - 1024:1, 1026:24, 1028:1, 1031:23, 1032:2, 1040:5, 1040:25, 1044:25, 1045:3, 1045:6, 1045:13, 1045:19, 1047:20, 1050:1, 1060:4, 1060:17, 1060:19, 1067:7, 1068:17, 1069:7, 1073:8, 1073:23, 1074:18, 1076:4, 1076:19, 1077:2, 1083:18, 1086:5, 1094:5
**oneself** [1] - 1080:13
**opening** [6] - 1024:24, 1051:20, 1051:25, 1052:4, 1097:1, 1097:2
**openings** [1] - 1033:23
**opens** [1] - 1095:25
**operates** [1] - 1077:10
**operation** [1] - 1076:24
**opinion** [3] - 1060:21, 1060:24, 1065:1
**opportunity** [2] - 1032:7, 1070:14
**oppose** [1] - 1075:2
**opposed** [4] - 1040:4, 1074:4, 1075:16, 1075:19
**opposing** [1] - 1073:14
**opposite** [1] - 1069:10
**order** [27] - 1023:2, 1031:22, 1075:23, 1075:25, 1077:21, 1078:24, 1081:2, 1082:18, 1085:10, 1085:12, 1086:13, 1086:19, 1087:19, 1088:4, 1088:6, 1089:9, 1089:20, 1090:8, 1090:17, 1090:19, 1091:10, 1091:18, 1092:5, 1092:10, 1093:8, 1094:9, 1097:7
**ordered** [1] - 1031:14
**orderly** [8] - 1064:8, 1088:11, 1088:14, 1089:16, 1089:18, 1092:15, 1092:25, 1094:18
**orders** [1] - 1031:21

**ordinarily** [2] - 1072:13, 1094:15
**ordinary** [1] - 1075:3
**origin** [1] - 1064:22
**otherwise** [4] - 1042:17, 1073:7, 1084:10, 1085:21
**outcome** [1] - 1070:16
**outset** [1] - 1037:5
**outside** [2] - 1041:5, 1043:10
**overwhelming** [2] - 1049:10, 1050:6
**own** [8] - 1028:11, 1028:22, 1038:21, 1053:22, 1065:5, 1065:12, 1065:15, 1065:16

## P

**P.C** [1] - 1022:18
**p.m** [7] - 1027:24, 1028:9, 1028:10, 1028:17, 1029:14, 1029:15, 1097:18
**page** [6] - 1038:5, 1039:5, 1039:9, 1041:24, 1043:25, 1051:13
**parade** [1] - 1094:15
**paraded** [1] - 1094:12
**parading** [1] - 1094:2
**paragraph** [7] - 1038:13, 1041:8, 1042:14, 1043:12, 1043:21, 1047:13, 1059:24
**paralegal** [1] - 1023:10
**Park** [1] - 1022:19
**part** [8] - 1038:25, 1050:10, 1053:2, 1053:5, 1060:4, 1060:18, 1083:16, 1088:23
**participated** [1] - 1084:14
**participation** [1] - 1083:11
**particular** [4] - 1046:4, 1063:25, 1066:25, 1068:18
**particulars** [1] - 1024:11
**parties** [3] - 1057:13, 1065:21, 1065:22
**parts** [2] - 1026:17, 1083:19
**party** [1] - 1069:14

**passageways** [1] - 1094:19
**passed** [1] - 1081:15
**Pause** [1] - 1035:19
**pause** [1] - 1087:7
**peace** [1] - 1088:19
**penalties** [1] - 1047:21
**penalty** [3] - 1047:15, 1054:18, 1054:21
**pending** [2] - 1079:11, 1079:13
**people** [2] - 1070:17, 1082:13
**people's** [1] - 1062:23
**perceived** [1] - 1075:13
**performance** [5] - 1038:17, 1073:16, 1074:6, 1076:7, 1076:11
**performed** [3] - 1083:2, 1083:3, 1083:9
**perhaps** [2] - 1025:1, 1096:8
**perimeter** [1] - 1041:19
**period** [3] - 1029:16, 1031:3, 1042:20
**permitted** [3] - 1065:7, 1065:25, 1068:19
**person** [35] - 1038:18, 1052:20, 1052:25, 1053:9, 1066:10, 1067:17, 1068:6, 1070:11, 1072:14, 1072:20, 1073:17, 1074:11, 1074:15, 1074:17, 1074:25, 1075:8, 1075:15, 1078:8, 1079:22, 1080:2, 1080:14, 1082:8, 1082:9, 1082:10, 1082:11, 1082:17, 1085:22, 1085:24, 1086:9, 1088:20, 1088:21, 1090:22, 1091:15
**person's** [1] - 1088:22
**personal** [6] - 1028:25, 1029:6, 1052:5, 1065:16, 1091:4, 1093:16
**persons** [2] - 1076:14, 1084:2
**persuaded** [1] - 1027:23
**petition** [1] - 1080:6
**phase** [2] - 1054:18,

1083:16
**phases** [1] - 1083:19
**phasing** [1] - 1054:21
**physical** [19] -
1038:17, 1040:20,
1055:25, 1073:17,
1074:7, 1074:12,
1074:13, 1074:24,
1090:11, 1090:22,
1091:2, 1091:11,
1091:14, 1091:20,
1091:25, 1093:6,
1093:11, 1093:13,
1095:10
**picket** [1] - 1094:15
**picketed** [1] - 1094:12
**picketing** [1] - 1094:2
**piece** [1] - 1043:6
**place** [1] - 1027:17
**Plaintiff** [1] - 1022:4
**plans** [1] - 1081:19
**plenty** [2] - 1043:2,
1048:2
**podium** [2] - 1023:6,
1034:18
**point** [7] - 1026:8,
1035:9, 1053:24,
1057:18, 1061:9,
1061:23, 1063:9
**points** [1] - 1052:12
**pole** [1] - 1041:4
**police** [4] - 1027:9,
1030:3, 1071:25,
1072:5
**Police** [5] - 1040:6,
1045:20, 1073:24,
1077:11, 1077:12
**policing** [1] - 1077:13
**portion** [11] - 1025:24,
1025:25, 1027:4,
1035:15, 1042:17,
1047:4, 1047:5,
1047:7, 1048:20,
1048:24, 1063:25
**position** [11] - 1026:1,
1026:8, 1026:20,
1026:25, 1039:15,
1046:23, 1046:24,
1047:25, 1050:21,
1054:8, 1054:16
**positioned** [1] -
1040:6
**positions** [1] - 1039:3
**positive** [1] - 1025:11
**possession** [1] -
1088:22
**possible** [2] -
1023:19, 1095:19
**posted** [1] - 1085:21
**potential** [2] -

1025:10, 1044:23
**powerful** [1] - 1067:8
**practice** [1] - 1028:12
**praying** [1] - 1094:20
**precise** [1] - 1031:1
**preferred** [1] -
1024:25
**prejudice** [6] -
1029:19, 1029:25,
1032:16, 1032:19,
1064:20, 1071:19
**prejudiced** [1] -
1071:17
**prejudicial** [3] -
1025:2, 1027:14,
1030:2
**preliminary** [1] -
1063:22
**preparation** [1] -
1081:20
**prepare** [1] - 1051:12
**presence** [2] -
1080:18, 1080:20
**present** [11] - 1023:3,
1027:15, 1037:8,
1050:18, 1050:21,
1050:25, 1055:1,
1074:15, 1074:18,
1074:21, 1084:2
**presentation** [2] -
1024:17, 1027:18
**presented** [3] -
1046:9, 1068:23,
1069:2
**presenting** [2] -
1033:5, 1035:15
**president** [2] -
1085:25, 1086:1
**president's** [1] -
1029:2
**press** [1] - 1058:10
**presumed** [1] -
1066:13
**presumption** [1] -
1066:14
**pretrial** [2] - 1048:25,
1049:6
**pretty** [3] - 1095:12,
1095:13, 1096:7
**previously** [1] -
1071:2
**primary** [1] - 1061:21
**principal** [1] - 1082:12
**print** [1] - 1034:10
**printed** [1] - 1044:20
**private** [1] - 1024:12
**privilege** [1] - 1080:1
**probability** [1] -
1071:12
**probable** [3] - 1067:6,

1072:21, 1079:5
**problem** [1] - 1025:10
**procedurally** [1] -
1033:3
**proceed** [4] - 1049:1,
1050:2, 1062:18,
1097:3
**proceeding** [42] -
1028:5, 1039:7,
1078:15, 1078:18,
1079:2, 1079:4,
1079:6, 1079:9,
1079:10, 1079:11,
1079:13, 1079:15,
1079:24, 1079:25,
1080:2, 1080:9,
1080:10, 1080:16,
1080:17, 1080:21,
1080:22, 1080:24,
1080:25, 1081:3,
1081:6, 1081:9,
1081:13, 1081:19,
1081:23, 1082:3,
1082:19, 1082:23,
1082:25, 1083:6,
1083:8, 1084:18,
1084:19, 1084:20,
1084:24, 1085:2
**Proceedings** [1] -
1022:24
**proceedings** [2] -
1028:23, 1098:4
**process** [2] - 1029:1,
1089:1
**produce** [2] - 1066:18,
1088:23
**produced** [2] -
1022:25, 1037:4
**proffer** [7] - 1027:25,
1028:1, 1028:7,
1028:9, 1028:17,
1028:19, 1031:24
**progress** [1] - 1079:9
**proof** [7] - 1047:10,
1059:23, 1060:1,
1060:8, 1060:12,
1061:7, 1067:7
**proper** [3] - 1051:18,
1051:25, 1069:13
**properly** [2] - 1065:18,
1095:23
**property** [25] - 1046:6,
1047:16, 1047:18,
1048:2, 1049:11,
1051:2, 1054:11,
1058:15, 1059:10,
1060:22, 1061:8,
1061:9, 1076:16,
1076:18, 1077:19,
1077:24, 1077:25,

1078:2, 1078:5,
1088:21, 1090:22,
1091:4, 1091:15,
1093:16
**propose** [2] - 1038:13,
1045:17
**proposed** [7] -
1023:20, 1039:5,
1046:2, 1046:18,
1057:2, 1057:3,
1057:21
**protected** [4] -
1076:11, 1076:23,
1085:22, 1085:24
**protestor** [1] - 1030:2
**prove** [22] - 1026:22,
1037:6, 1054:11,
1058:23, 1058:24,
1060:7, 1066:18,
1066:25, 1067:5,
1067:21, 1067:23,
1075:14, 1075:17,
1078:4, 1078:12,
1079:14, 1081:4,
1081:25, 1083:10,
1084:8, 1084:13
**proved** [14] - 1069:21,
1072:13, 1073:21,
1076:1, 1077:22,
1078:25, 1081:14,
1082:21, 1085:13,
1088:7, 1090:20,
1092:11, 1093:9,
1094:10
**proven** [8] - 1041:1,
1047:9, 1051:20,
1055:21, 1066:1,
1066:16, 1066:20,
1073:1
**provide** [4] - 1051:11,
1053:17, 1063:23,
1096:21
**provided** [2] - 1054:6,
1057:14
**providing** [3] -
1027:22, 1030:10,
1059:23
**proving** [5] - 1027:2,
1058:24, 1058:25,
1067:3, 1068:16
**proximity** [6] -
1045:21, 1074:1,
1088:9, 1089:13,
1090:23, 1091:15
**public** [3] - 1076:12,
1088:19
**pull** [1] - 1037:25
**purely** [1] - 1049:24
**purloins** [1] - 1061:2
**purpose** [6] - 1076:3,

1079:19, 1080:16,
1080:18, 1083:4,
1084:9
**purposes** [4] -
1053:16, 1074:9,
1092:25, 1093:17
**purveys** [1] - 1061:4
**put** [5] - 1035:9,
1040:11, 1048:11,
1057:15, 1060:1

---

## Q

**questioned** [1] -
1052:24
**questioning** [1] -
1057:9
**questions** [3] -
1064:3, 1064:9,
1066:7
**quiet** [1] - 1094:20
**quite** [1] - 1037:12

---

## R

**race** [1] - 1064:22
**radio** [5] - 1028:2,
1028:3, 1028:21,
1029:7, 1029:12
**raises** [1] - 1054:4
**rally** [1] - 1052:18
**rather** [2] - 1028:4,
1069:4
**re** [1] - 1042:6
**re-reading** [1] - 1042:6
**reach** [3] - 1087:4,
1090:5, 1092:2
**reaching** [2] -
1068:22, 1069:2
**read** [9] - 1038:13,
1045:1, 1045:3,
1047:12, 1060:13,
1060:20, 1062:7,
1062:22, 1096:22
**reading** [3] - 1042:6,
1059:19, 1063:8
**reads** [1] - 1047:8
**ready** [4] - 1023:25,
1037:22, 1044:21,
1044:23
**real** [2] - 1091:4,
1093:16
**realizes** [1] - 1075:8
**really** [2] - 1024:6,
1053:14
**reason** [15] - 1024:7,
1030:10, 1031:10,
1032:14, 1035:22,
1040:13, 1040:19,
1041:8, 1051:14,

1056:21, 1057:4, 1067:11, 1067:20, 1072:10

**reasonable** [45] - 1026:5, 1027:17, 1037:7, 1048:1, 1066:1, 1066:16, 1066:21, 1067:1, 1067:4, 1067:8, 1067:10, 1067:15, 1067:16, 1067:17, 1067:23, 1068:4, 1069:22, 1073:2, 1073:22, 1074:23, 1075:1, 1076:2, 1077:23, 1079:1, 1079:14, 1081:4, 1081:14, 1082:15, 1082:21, 1084:8, 1084:13, 1084:23, 1085:14, 1086:16, 1087:4, 1088:8, 1088:21, 1089:12, 1090:5, 1090:21, 1091:13, 1092:2, 1092:12, 1093:10, 1094:11

**reasonableness** [1] - 1071:11

**reasonably** [2] - 1026:16, 1079:15

**reasoning** [1] - 1049:17

**reasons** [5] - 1027:22, 1030:7, 1056:21, 1072:11, 1086:5

**Rebekah** [1] - 1023:9

**REBEKAH** [1] - 1022:13

**rebuttal** [5] - 1036:12, 1062:20, 1096:11, 1096:23, 1097:1

**recalled** [1] - 1070:5

**receive** [2] - 1066:4, 1071:23

**received** [2] - 1072:18, 1072:24

**Recess** [2] - 1054:25, 1097:18

**recess** [1] - 1097:2

**recognizes** [1] - 1031:6

**recollecting** [1] - 1071:7

**recollection** [1] - 1070:12

**recollections** [1] - 1070:22

**reconvene** [1] - 1029:9

**record** [9] - 1023:7, 1033:2, 1035:9, 1048:1, 1049:18, 1049:20, 1059:18, 1061:4, 1098:4

**recorded** [3] - 1022:24, 1041:15, 1041:22

**recordings** [3] - 1044:6, 1044:9, 1044:12

**red** [2] - 1038:20, 1039:11

**Red** [1] - 1055:11

**redress** [1] - 1080:6

**refer** [2] - 1063:24, 1063:25

**reference** [3] - 1055:11, 1059:21, 1065:4

**referencing** [1] - 1059:6

**referred** [1] - 1087:11

**referring** [2] - 1042:8, 1052:21

**refers** [4] - 1044:2, 1044:5, 1074:9, 1094:17

**reflected** [3] - 1087:20, 1090:8, 1092:5

**reflection** [1] - 1067:17

**refuse** [3] - 1064:13, 1079:25, 1080:10

**regarding** [5] - 1041:4, 1046:6, 1047:10, 1050:22, 1060:17

**regardless** [2] - 1050:19, 1059:25

**regards** [6] - 1026:22, 1026:24, 1050:3, 1052:4, 1060:2, 1097:6

**rehabilitation** [1] - 1057:11

**related** [1] - 1044:11

**relates** [1] - 1048:10

**relating** [1] - 1045:7

**relation** [3] - 1085:19, 1088:16, 1090:25

**relax** [1] - 1037:20

**relevant** [4] - 1031:15, 1032:2, 1032:13, 1072:25

**rely** [1] - 1065:14

**remainder** [1] - 1037:14

**remained** [3] - 1031:2,

1085:15, 1086:16

**remaining** [10] - 1038:6, 1085:5, 1086:14, 1086:22, 1087:2, 1090:4, 1095:7, 1095:9, 1095:11, 1097:8

**remains** [1] - 1066:14

**remanded** [1] - 1061:21

**remember** [3] - 1052:12, 1062:22, 1070:21

**remove** [1] - 1039:20

**removing** [2] - 1039:18, 1059:10

**rendered** [1] - 1064:6

**reopen** [2] - 1024:3, 1025:2

**repeat** [3] - 1030:5, 1052:3, 1063:21

**repeating** [1] - 1052:10

**repetition** [1] - 1052:11

**replace** [3] - 1026:17, 1026:18, 1065:12

**replaced** [2] - 1026:3, 1026:4

**replacement** [2] - 1026:11, 1026:12

**report** [1] - 1057:10

**reported** [1] - 1097:19

**Reporter** [1] - 1022:21

**REPORTER** [2] - 1098:1, 1098:9

**Representatives** [1] - 1092:22

**represents** [1] - 1069:15

**request** [4] - 1039:16, 1059:7, 1059:8, 1059:17

**requested** [1] - 1056:15

**requesting** [2] - 1049:14, 1062:9

**require** [3] - 1066:17, 1068:21, 1081:24

**required** [4] - 1067:21, 1072:20, 1074:14, 1083:21

**requirement** [1] - 1083:22

**requires** [1] - 1060:8

**research** [2] - 1050:8, 1053:22

**reservations** [2] - 1041:12, 1042:20

**reserve** [1] - 1046:7

**resist** [1] - 1075:2

**resisted** [7] - 1040:3, 1040:4, 1045:18, 1073:22, 1074:4, 1075:15, 1075:19

**resisting** [2] - 1038:15, 1073:14

**resolve** [1] - 1058:12

**respect** [10] - 1038:9, 1048:5, 1049:1, 1049:11, 1058:1, 1061:16, 1073:9, 1073:12, 1081:11, 1081:17

**responsibility** [3] - 1064:16, 1065:3, 1069:15

**rest** [1] - 1042:22

**restful** [1] - 1037:2

**restricted** [26] - 1038:6, 1041:19, 1085:5, 1085:15, 1085:20, 1085:21, 1086:14, 1086:17, 1086:22, 1087:3, 1087:23, 1088:10, 1089:2, 1089:11, 1089:14, 1089:23, 1090:4, 1090:11, 1090:23, 1091:5, 1091:12, 1091:15, 1091:20, 1092:1, 1097:8, 1097:10

**result** [6] - 1025:15, 1049:23, 1071:7, 1071:8, 1071:9

**results** [2] - 1076:16, 1076:17

**reticent** [1] - 1024:11

**retreated** [1] - 1032:5

**return** [3] - 1064:5, 1073:6, 1073:11

**reversal** [1] - 1060:8

**reversed** [1] - 1059:22

**review** [2] - 1036:21, 1095:22

**revised** [2] - 1034:11, 1038:11

**revisions** [1] - 1038:2

**rights** [1] - 1080:5

**rioters** [1] - 1029:13

**risk** [6] - 1029:18, 1029:21, 1031:20, 1032:15, 1032:17, 1032:18

**roadways** [2] - 1041:12, 1042:20

**Room** [1] - 1022:22

**room** [3] - 1034:12, 1065:9, 1087:21

**Rosemaria** [1] - 1023:11

**rough** [1] - 1095:15

**roughly** [1] - 1062:8

**RPR** [1] - 1022:21

**Rule** [13] - 1025:22, 1026:23, 1027:13, 1027:14, 1048:4, 1048:20, 1049:7, 1049:14, 1050:9, 1050:15, 1058:21, 1059:14, 1059:16

**rule** [1] - 1064:9

**rules** [2] - 1063:19, 1063:21

**ruling** [2] - 1034:2, 1046:20

**rulings** [1] - 1033:7

**run** [1] - 1044:9

**rushed** [1] - 1036:2

# S

**safe** [1] - 1031:25

**safety** [1] - 1088:19

**San** [1] - 1022:17

**SARA** [1] - 1022:21

**Sara** [2] - 1098:3, 1098:8

**satisfies** [1] - 1061:14

**satisfy** [1] - 1083:22

**Saturday** [3] - 1027:21, 1027:24, 1028:9

**saw** [5] - 1068:7, 1068:9, 1068:10, 1068:11, 1095:7

**scientific** [1] - 1067:22

**scintilla** [1] - 1047:10

**scratch** [1] - 1089:5

**seat** [1] - 1035:13

**second** [20] - 1027:25, 1030:23, 1047:13, 1060:4, 1074:1, 1076:5, 1077:24, 1079:3, 1081:7, 1082:24, 1085:16, 1086:7, 1086:18, 1088:10, 1089:14, 1090:23, 1091:16, 1092:14, 1093:12, 1094:13

**Secret** [3] - 1077:4, 1085:22, 1085:24

**Section** [2] - 1028:6, 1040:24

**section** [2] - 1041:9, 1042:15

**secure** [1] - 1080:13

**Security** [1] - 1077:4
**security** [4] - 1025:11, 1029:2, 1029:3, 1029:6
**see** [18] - 1030:5, 1032:13, 1036:7, 1036:14, 1037:25, 1038:21, 1038:22, 1041:8, 1050:14, 1050:23, 1053:21, 1054:9, 1056:10, 1057:17, 1057:25, 1062:21, 1063:16, 1097:16
**seeing** [1] - 1071:7
**seeks** [1] - 1027:8
**seem** [2] - 1042:22, 1045:2
**Seeman** [5] - 1050:17, 1060:20, 1060:21, 1061:6
**seeman** [2] - 1059:20, 1060:2
**selected** [1] - 1044:17
**selection** [2] - 1025:5, 1037:5
**self** [3] - 1036:18, 1056:10, 1080:1
**self-defense** [1] - 1056:10
**self-incrimination** [1] - 1080:1
**sells** [1] - 1061:4
**Senate** [1] - 1092:21
**send** [1] - 1064:4
**sense** [7] - 1026:16, 1034:13, 1035:25, 1036:8, 1052:15, 1054:14, 1062:6
**sensibility** [1] - 1075:1
**sent** [1] - 1028:10
**sentence** [6] - 1039:4, 1042:5, 1042:8, 1042:18, 1042:22
**sentencing** [1] - 1061:12
**separate** [5] - 1047:22, 1073:4, 1073:6, 1082:5, 1097:20
**separately** [1] - 1073:6
**September** [3] - 1022:6, 1031:24, 1098:8
**Sergeant** [1] - 1030:12
**serious** [3] - 1038:8, 1086:8, 1086:10
**Service** [3] - 1077:4, 1085:23, 1085:24

**SESSION** [1] - 1022:9
**session** [2] - 1092:16, 1097:19
**several** [1] - 1027:21
**shattered** [1] - 1026:18
**shifts** [1] - 1066:17
**shooting** [16] - 1028:2, 1028:4, 1029:8, 1029:10, 1029:13, 1029:23, 1029:25, 1030:14, 1030:21, 1030:25, 1031:1, 1031:3, 1031:5, 1031:11, 1032:1, 1032:18
**shorter** [1] - 1062:17
**shorthand** [1] - 1022:24
**shot** [4] - 1030:2, 1030:9, 1030:15, 1030:17
**shots** [1] - 1028:21
**show** [5] - 1026:4, 1047:9, 1054:12, 1078:10, 1083:9
**showing** [4] - 1030:17, 1041:20, 1042:16, 1050:25
**shown** [2] - 1047:9, 1071:16
**shows** [2] - 1050:5, 1084:6
**side** [11] - 1023:15, 1035:8, 1039:8, 1040:6, 1051:11, 1069:4, 1069:7, 1069:9, 1069:12, 1071:17
**sidebar** [1] - 1063:5
**sides** [1] - 1037:11
**SIGNATURE** [1] - 1098:9
**significant** [1] - 1032:17
**similar** [1] - 1053:25
**similarly** [2] - 1030:1, 1066:7
**simple** [1] - 1055:24
**Simultaneous** [1] - 1040:9
**simultaneous** [1] - 1080:18
**sitting** [1] - 1037:17
**Sixth** [1] - 1022:19
**sleep** [1] - 1068:11
**slow** [1] - 1079:9
**small** [2] - 1023:22, 1074:25
**smaller** [1] - 1069:7

**Smith** [5] - 1023:8, 1024:6, 1045:7, 1055:17, 1057:25
**SMITH** [35] - 1022:15, 1023:8, 1024:9, 1025:23, 1026:1, 1026:13, 1036:3, 1038:24, 1039:9, 1039:13, 1039:21, 1040:2, 1040:10, 1040:12, 1040:15, 1041:3, 1043:24, 1045:8, 1045:11, 1045:15, 1045:23, 1046:4, 1047:13, 1048:13, 1048:22, 1055:5, 1055:18, 1055:23, 1057:20, 1058:6, 1058:14, 1060:17, 1063:4, 1094:5, 1097:15
**snafu** [1] - 1035:20
**snow** [4] - 1068:7, 1068:9, 1068:11
**snowed** [1] - 1068:13
**sole** [4] - 1064:15, 1065:2, 1069:24, 1080:16
**solely** [2] - 1049:11, 1064:23
**soliciting** [1] - 1083:4
**someone** [5] - 1029:7, 1043:10, 1052:18, 1074:20, 1082:16
**sometimes** [1] - 1069:11
**somewhat** [2] - 1024:11, 1059:20
**soon** [1] - 1023:18
**sorry** [9] - 1025:24, 1038:5, 1039:11, 1039:12, 1042:6, 1044:2, 1045:9, 1045:12, 1094:7
**sort** [1] - 1060:1
**sounds** [1] - 1034:15
**Southeast** [2] - 1041:11, 1092:19
**Speaker's** [12] - 1027:10, 1028:3, 1028:24, 1029:4, 1029:22, 1030:6, 1031:19, 1032:1, 1032:3, 1040:6, 1045:21, 1074:1
**speaking** [2] - 1040:9, 1055:10
**special** [1] - 1023:11
**specific** [5] - 1043:13, 1055:20, 1063:20,

1078:13
**specifically** [3] - 1047:21, 1055:23, 1061:1
**spectator** [1] - 1084:3
**speculate** [4] - 1043:1, 1056:21, 1069:19, 1072:10
**speculation** [1] - 1067:20
**squares** [2] - 1041:12, 1042:19
**staff** [1] - 1029:2
**stage** [1] - 1081:15
**stairs** [2] - 1032:4, 1032:6
**stairwell** [1] - 1030:17
**stand** [2] - 1041:4, 1070:9
**standard** [1] - 1056:17
**standing** [1] - 1030:15
**start** [4] - 1024:4, 1044:20, 1061:24, 1063:19
**starting** [1] - 1023:7
**state** [7] - 1023:6, 1031:7, 1031:12, 1073:3, 1076:20, 1081:15
**statement** [6] - 1039:14, 1052:1, 1057:6, 1062:19, 1072:17
**statements** [5] - 1031:6, 1051:22, 1057:3, 1057:12, 1066:5
**STATES** [3] - 1022:1, 1022:3, 1022:10
**states** [1] - 1039:5
**States** [33] - 1022:13, 1022:13, 1022:16, 1023:5, 1023:7, 1023:9, 1028:6, 1038:16, 1040:5, 1041:21, 1042:14, 1043:12, 1045:20, 1061:5, 1061:10, 1061:19, 1073:16, 1073:24, 1074:5, 1076:25, 1077:1, 1077:4, 1077:8, 1077:11, 1078:1, 1078:3, 1078:5, 1092:14, 1092:19, 1092:21, 1092:22, 1094:12, 1094:13
**statute** [14] - 1047:8, 1047:12, 1048:14, 1054:8, 1055:14,

1055:18, 1055:21, 1056:5, 1058:23, 1059:1, 1059:6, 1059:15, 1061:14, 1087:11
**steals** [1] - 1061:2
**stenotype** [1] - 1022:24
**step** [4] - 1035:16, 1081:8, 1081:17, 1081:24
**Stephen** [1] - 1023:14
**steps** [1] - 1041:5
**STEVEN** [1] - 1022:18
**still** [3] - 1042:11, 1054:3, 1060:1
**stipulated** [3] - 1031:2, 1065:21, 1065:23
**stipulation** [1] - 1065:24
**stomachs** [1] - 1062:23
**stood** [1] - 1046:21
**stop** [2] - 1042:18
**straight** [3] - 1034:5, 1052:16, 1096:23
**Street** [4] - 1022:14, 1022:16, 1041:11, 1092:19
**streets** [2] - 1041:12, 1042:20
**stricken** [2] - 1042:1, 1044:7
**strike** [13] - 1038:9, 1039:2, 1039:7, 1043:11, 1043:20, 1044:14, 1046:15, 1048:9, 1048:14, 1048:24, 1050:5, 1050:13, 1092:25
**strongly** [1] - 1081:9
**struck** [2] - 1025:7, 1027:11
**stupid** [1] - 1051:16
**submission** [2] - 1027:20, 1028:20
**submissions** [2] - 1027:21, 1027:23
**submit** [1] - 1028:8
**substantial** [5] - 1029:22, 1032:17, 1081:8, 1081:17, 1081:24
**substantive** [1] - 1078:20
**succeed** [1] - 1084:16
**sufficient** [4] - 1047:25, 1074:13, 1082:14, 1093:18

suggest [1] - 1034:5
suggested [1] - 1031:24
suggestion [2] - 1043:16, 1045:6
suggestions [1] - 1044:18
sum [2] - 1047:16, 1047:19
support [1] - 1061:23
supported [1] - 1071:15
surrounding [2] - 1070:19, 1072:16
Surveyor [2] - 1041:16, 1041:23
survive [1] - 1027:5
sustain [1] - 1053:11
sustained [1] - 1069:17
sworn [1] - 1065:19
sympathy [1] - 1064:21

## T

table [2] - 1023:10, 1027:6
talks [4] - 1055:24, 1059:1, 1059:10
team [1] - 1032:4
temporarily [1] - 1085:23
ten [3] - 1047:17, 1094:4, 1097:2
ten-minute [1] - 1097:2
tend [1] - 1026:19
tends [1] - 1088:18
term [30] - 1041:9, 1044:1, 1074:19, 1075:4, 1076:12, 1076:19, 1076:23, 1077:2, 1077:6, 1077:9, 1077:13, 1077:16, 1079:10, 1079:16, 1085:20, 1085:24, 1086:2, 1089:7, 1091:2, 1091:8, 1092:18, 1092:21, 1093:1, 1093:3, 1093:13, 1093:20, 1093:22, 1093:24, 1094:17, 1094:23
terms [10] - 1025:15, 1028:11, 1075:2, 1078:6, 1089:2, 1089:5, 1091:5, 1094:15, 1094:21,

1094:25
tested [1] - 1025:11
testified [6] - 1030:13, 1068:7, 1069:24, 1070:4, 1070:6, 1070:15
testify [16] - 1025:1, 1028:21, 1029:7, 1030:8, 1030:9, 1032:22, 1034:20, 1034:25, 1035:3, 1035:6, 1056:18, 1056:23, 1072:8, 1072:12, 1079:25, 1080:10
testifying [2] - 1069:4, 1070:10
testimony [29] - 1024:3, 1027:12, 1028:1, 1029:9, 1029:20, 1030:20, 1030:23, 1031:14, 1032:13, 1032:16, 1041:3, 1043:2, 1043:17, 1065:19, 1068:2, 1068:8, 1068:12, 1069:7, 1069:8, 1069:23, 1071:3, 1071:4, 1071:12, 1071:19, 1071:22, 1071:24, 1071:25, 1072:3, 1072:5
tethering [1] - 1043:13
THE [131] - 1022:1, 1022:1, 1022:10, 1023:13, 1023:17, 1024:19, 1025:24, 1026:10, 1026:19, 1027:1, 1032:24, 1033:1, 1033:9, 1033:21, 1033:24, 1034:3, 1034:17, 1034:23, 1034:24, 1035:1, 1035:2, 1035:4, 1035:5, 1035:7, 1035:8, 1035:12, 1035:20, 1036:1, 1036:5, 1036:18, 1037:1, 1037:25, 1039:2, 1039:11, 1039:16, 1039:20, 1040:1, 1040:8, 1040:11, 1040:13, 1040:16, 1040:18, 1040:24, 1041:1, 1041:7, 1041:20, 1042:1, 1042:4, 1042:8, 1042:13, 1042:17,

1042:25, 1043:11, 1043:20, 1044:5, 1044:11, 1044:14, 1045:4, 1045:10, 1045:14, 1045:17, 1045:25, 1046:2, 1046:17, 1046:22, 1047:3, 1047:6, 1047:12, 1047:24, 1048:16, 1048:23, 1049:4, 1049:16, 1050:4, 1050:23, 1051:2, 1051:5, 1051:10, 1052:6, 1052:8, 1052:11, 1052:20, 1052:23, 1052:25, 1053:4, 1053:11, 1053:14, 1054:4, 1054:11, 1054:23, 1055:2, 1055:7, 1055:12, 1055:17, 1055:20, 1056:4, 1056:8, 1056:13, 1056:15, 1057:1, 1057:19, 1057:23, 1058:9, 1058:16, 1058:20, 1060:10, 1060:13, 1061:15, 1061:18, 1062:6, 1062:12, 1062:14, 1062:16, 1063:1, 1063:7, 1063:12, 1087:10, 1087:13, 1087:15, 1087:17, 1087:19, 1094:7, 1095:4, 1095:12, 1095:18, 1095:21, 1096:4, 1096:6, 1096:19, 1097:12, 1097:16
theft [1] - 1060:23
themselves [1] - 1083:20
theory [1] - 1038:22
thereby [1] - 1080:1
therefore [2] - 1047:11, 1050:22
thereof [3] - 1077:1, 1078:1, 1078:3
they've [2] - 1047:7, 1059:14
thinking [3] - 1058:20, 1072:15, 1081:16
third [11] - 1031:13, 1074:2, 1076:8, 1077:25, 1079:4, 1083:1, 1085:17, 1088:12, 1089:17, 1090:24, 1092:16
thoughtful [1] -

1067:17
threat [4] - 1074:18, 1074:19, 1093:14, 1093:18
threaten [1] - 1074:24
threatened [1] - 1074:12
threatens [1] - 1074:16
three [7] - 1025:13, 1027:9, 1061:11, 1061:13, 1076:14, 1084:21, 1084:25
throughout [2] - 1066:15, 1066:17
thrust [1] - 1028:20
Thursday [1] - 1024:13
tie [1] - 1052:15
tied [1] - 1043:6
timing [1] - 1063:9
Timothy [3] - 1045:20, 1073:24, 1097:19
tired [2] - 1095:12, 1095:13
Title [1] - 1028:5
title [3] - 1047:17, 1047:19, 1056:2
today [2] - 1024:25, 1025:1
today's [1] - 1056:24
took [5] - 1025:5, 1056:11, 1081:7, 1081:21, 1096:7
top [2] - 1039:6, 1043:25
total [1] - 1062:9
touching [1] - 1074:25
toward [2] - 1070:17, 1081:8
Transcript [1] - 1022:25
TRANSCRIPT [1] - 1022:9
transcript [1] - 1098:4
transcription [1] - 1022:25
transcripts [3] - 1044:6, 1044:7, 1044:12
travel [1] - 1076:19
trial [24] - 1023:22, 1024:20, 1025:1, 1025:9, 1029:20, 1029:21, 1031:15, 1034:20, 1035:6, 1035:16, 1037:5, 1046:10, 1064:7, 1064:8, 1064:17, 1065:7, 1065:10,

1065:18, 1065:22, 1066:15, 1066:17, 1069:17, 1071:18, 1072:24
TRIAL [1] - 1022:9
tried [1] - 1030:1
true [2] - 1067:5, 1071:13
truth [3] - 1067:6, 1070:13, 1071:21
truthful [1] - 1070:11
truthfully [1] - 1070:4
trying [2] - 1025:12, 1055:19
turn [1] - 1031:4
tweaks [1] - 1023:22
two [10] - 1024:1, 1024:2, 1028:3, 1044:16, 1047:14, 1047:22, 1060:21, 1067:24, 1085:3, 1086:5
tying [1] - 1043:2
types [1] - 1067:24
Tyson [2] - 1024:2, 1027:10

## U

U.S [8] - 1027:18, 1041:9, 1041:10, 1050:16, 1059:20, 1060:2, 1077:12, 1077:13
ultimate [1] - 1025:15
ultimately [1] - 1059:22
unavailable [1] - 1024:13
unconditional [1] - 1034:20
undeniable [1] - 1081:22
under [11] - 1025:16, 1027:13, 1027:14, 1047:16, 1047:19, 1050:19, 1056:2, 1070:23, 1076:24, 1088:24, 1097:20
undermine [1] - 1088:19
understood [1] - 1053:13
undisputed [1] - 1065:24
undue [1] - 1029:24
unduly [1] - 1027:14
unexpectedly [1] - 1024:14
unintended [1] -

1080:20

**UNITED** [3] - 1022:1, 1022:3, 1022:10

**United** [33] - 1022:13, 1022:13, 1022:16, 1023:5, 1023:7, 1023:9, 1028:5, 1038:16, 1040:5, 1041:21, 1042:14, 1043:12, 1045:20, 1061:5, 1061:10, 1061:18, 1073:16, 1073:24, 1074:5, 1076:24, 1077:1, 1077:4, 1077:8, 1077:11, 1078:1, 1078:3, 1078:5, 1092:13, 1092:19, 1092:21, 1092:22, 1094:12, 1094:13

**unlawful** [7] - 1078:11, 1079:19, 1080:11, 1080:13, 1080:17

**unless** [3] - 1029:5, 1066:15, 1073:7

**unlike** [1] - 1093:17

**unreasonableness** [1] - 1071:11

**unreasonably** [1] - 1088:24

**untimely** [2] - 1028:8, 1028:11

**unusual** [1] - 1025:7

**up** [11] - 1034:18, 1037:25, 1051:20, 1051:24, 1052:16, 1053:15, 1055:4, 1055:9, 1061:25, 1068:12, 1072:23

**updated** [1] - 1036:21

**uses** [3] - 1088:23, 1095:10, 1097:7

**V**

**vacated** [1] - 1059:23

**vacating** [1] - 1060:8

**value** [31] - 1026:5, 1026:11, 1026:15, 1046:14, 1047:8, 1047:10, 1048:17, 1049:11, 1049:21, 1050:19, 1050:22, 1050:24, 1051:1, 1054:13, 1054:19, 1058:25, 1059:1, 1059:25, 1060:5, 1060:11, 1060:12, 1060:18, 1060:23,

1060:25, 1061:1, 1061:5, 1061:7, 1061:9

**various** [3] - 1085:8, 1088:2, 1090:15

**venture** [1] - 1084:2

**verdict** [15] - 1061:22, 1064:5, 1065:2, 1068:22, 1069:1, 1069:2, 1073:6, 1073:9, 1073:12, 1087:5, 1087:20, 1090:6, 1090:8, 1092:3, 1092:5

**version** [2] - 1038:1, 1039:12

**versus** [1] - 1023:5

**vice** [3] - 1029:2, 1085:25

**vicinity** [1] - 1040:10

**victim** [1] - 1056:1

**video** [5] - 1030:18, 1041:3, 1044:6, 1044:10, 1044:12

**viewing** [1] - 1059:12

**violated** [1] - 1078:13

**violation** [12] - 1038:19, 1058:23, 1073:19, 1075:23, 1077:19, 1078:16, 1085:6, 1087:24, 1090:12, 1092:9, 1093:7, 1094:3

**violence** [17] - 1040:21, 1040:25, 1041:1, 1041:2, 1076:13, 1088:23, 1090:11, 1090:22, 1091:2, 1091:12, 1091:14, 1091:20, 1092:1, 1093:6, 1093:11, 1093:13, 1095:10

**visiting** [1] - 1085:23

**voluntarily** [3] - 1035:5, 1074:2, 1075:5

**voucher** [1] - 1061:4

**vs** [1] - 1022:5

**W**

**waited** [1] - 1024:25

**walk** [1] - 1037:20

**walks** [3] - 1041:13, 1042:18, 1042:20

**wants** [5] - 1025:20, 1051:11, 1059:7, 1059:8, 1097:14

**warranted** [1] - 1046:9

**Washington** [5] - 1022:5, 1022:14, 1022:22, 1041:11, 1092:20

**waste** [1] - 1030:21

**ways** [5] - 1051:12, 1055:22, 1084:21, 1084:25, 1085:3

**weapon** [16] - 1038:7, 1049:2, 1085:6, 1085:18, 1086:4, 1086:6, 1086:7, 1086:23, 1087:24, 1088:16, 1089:3, 1089:24, 1090:12, 1090:25, 1091:6, 1091:21

**Wednesday** [2] - 1025:6, 1025:8

**week** [1] - 1024:7

**weekend** [4] - 1024:10, 1025:11, 1028:15, 1037:2

**weigh** [1] - 1043:18

**weight** [8] - 1064:17, 1066:3, 1068:18, 1068:20, 1069:3, 1071:22, 1072:4

**welcome** [1] - 1037:1

**well-established** [1] - 1058:5

**whatsoever** [2] - 1026:10, 1048:17

**whereabouts** [1] - 1030:24

**white** [1] - 1054:17

**Whitmore** [1] - 1027:18

**whole** [10] - 1027:5, 1043:11, 1043:20, 1046:21, 1047:11, 1049:25, 1050:22, 1059:6, 1064:2, 1064:12

**wholly** [1] - 1076:22

**WICK** [1] - 1022:21

**Wick** [2] - 1098:3, 1098:8

**willfully** [8] - 1077:25, 1078:8, 1092:17, 1093:3, 1093:12, 1093:24, 1094:14, 1094:25

**window** [4] - 1049:22, 1068:7, 1068:10

**windows** [3] - 1026:2, 1026:6, 1026:18

**windows'** [1] - 1026:12

**wise** [1] - 1058:9

**wish** [1] - 1065:10

**wished** [1] - 1084:15

**witness** [37] - 1024:7, 1024:10, 1024:21, 1025:1, 1025:3, 1025:8, 1029:6, 1057:6, 1068:1, 1070:1, 1070:4, 1070:5, 1070:6, 1070:8, 1070:9, 1070:10, 1070:11, 1070:13, 1070:14, 1070:15, 1070:23, 1071:1, 1071:2, 1071:5, 1071:12, 1071:14, 1071:16, 1071:19, 1071:20, 1071:22, 1072:3, 1072:5, 1079:24, 1080:9

**witness's** [6] - 1068:2, 1070:3, 1070:10, 1070:18, 1070:20, 1071:3

**witnesses** [13] - 1027:9, 1027:16, 1033:8, 1043:17, 1043:19, 1064:19, 1065:19, 1069:4, 1069:6, 1069:7, 1069:9, 1069:23, 1069:25

**woke** [1] - 1068:12

**woman** [1] - 1030:15

**wondering** [3] - 1037:17, 1043:5, 1057:13

**words** [6] - 1043:14, 1048:7, 1048:11, 1083:24, 1088:23, 1095:10

**works** [1] - 1036:17

**wrinkle** [1] - 1054:4

**wrongdoing** [2] - 1079:20, 1079:21

**Y**

**year** [1] - 1047:20

**years** [2] - 1047:17, 1056:3

**Yetter** [5] - 1027:12, 1031:18, 1032:5, 1045:20, 1073:25

**York** [2] - 1022:20

**Z**

**Zach** [1] - 1055:10

**Zachary** [1] - 1023:5

**ZACHARY** [1] - 1022:6