1182

BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,           .
                                    .  Case Number 21-cr-190
          Plaintiff,                .
                                    .
     vs.                            .
                                    .  Washington, D.C.
ZACHARY JORDAN ALAM,                .  September 12, 2023
                                    .  11:16 a.m.
          Defendant.                .
- - - - - - - - - - - - - - - - - -

TRANSCRIPT OF JURY TRIAL, DAY 6
BEFORE THE HONORABLE DABNEY L. FRIEDRICH
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the United States:      REBEKAH LEDERER, AUSA
                            United States Attorney's Office
                            601 D Street Northwest
                            Washington, D.C. 20579

                            JOSEPH SMITH, AUSA
                            United States Attorney's Office
                            880 Front Street
                            San Diego, California 92101

For the Defendant:          STEVEN METCALF II, ESQ.
                            Metcalf & Metcalf, P.C.
                            99 Park Avenue
                            Sixth Floor
                            New York, New York 10016

Official Court Reporter:    SARA A. WICK, RPR, CRR
                            333 Constitution Avenue Northwest
                            Room 4704-B
                            Washington, D.C. 20001
                            202-354-3284

Proceedings recorded by stenotype shorthand.
Transcript produced by computer-aided transcription.

P R O C E E D I N G S

(Call to order of the court.)

(Jury not present.)

COURTROOM DEPUTY:  We are in Criminal Action 21-190, United States of America versus Zachary Alam.

If I can have counsel approach the podium and state your names for the record.

THE COURT:  You can just do it from the table.

MR. SMITH:  Good morning, Your Honor.  Joseph Smith and Rebecca Lederer for the United States, joined by Melissa Macechko, our paralegal, and Rosemaria Marketos, the case agent.

MR. METCALF:  For Mr. Alam, Steven Metcalf.  Good morning, everyone.  Good morning, Your Honor.

THE COURT:  Good morning.

As you all know, we have a note from the jury.  It reads, "In the definition of deadly or dangerous weapon on page 35 of the instructions, in the clause 'carried it with the intent that it be used in a manner capable of causing serious bodily injury or death,' to meet that definition, does it require defendant intended to cause serious bodily injury or death to another person?"

Let me hear from both sides on this.

MR. SMITH:  Your Honor, the government's perspective on this, as far as instructing the jury, it is not required that the defendant intended to cause serious bodily injury or death

to another person.  That's not in the statute or the instructions.  The simple answer would be to instruct them "no, it does not."

So our recommendation would be that the actual sentence after that gives a clarification that says "the defendant need not have actually used the object in that manner."  And the actual question itself explains what needs to be proven, that it was carried with the intent that it be used in a manner capable of causing serious bodily injury or death.

THE COURT:  So what is your proposed answer?  Just "no, it is not," or --

MR. SMITH:  "No, it does not require that the defendant intended to cause serious bodily injury or death to another person."

THE COURT:  Mr. Metcalf?

MR. METCALF:  Obviously, I don't agree with that being the response that goes back to the jury.

This is interesting because it's almost like self-explanatory, but then again, it's not.  I can see where they're going with this.

Just one second.  I'm just rereading the jury instructions that were given to them.

The issue here is when you look at how this is written, and I'm talking about the same paragraph that AUSA Smith was referring to, it starts with "an object may be considered a

deadly or dangerous weapon."  If you go to the second-to-last sentence, "and the defendant carried it with the intent that it be used in a manner capable of causing serious bodily injury or death."

I mean, the only way to cause serious bodily injury or death is to another person.

THE COURT:  But the focus is on using it in a manner that's capable of that.

MR. METCALF:  Yes.

THE COURT:  So I think there's a distinction.  I tend to agree with the government, the answer is no.  And then I was inclined to --

MR. METCALF:  How can the jury be instructed in a way that it's not a yes or -- it's not put as a yes or no?  Is there a way that it could be worded differently instead of just saying "no, it doesn't"?

THE COURT:  We could say "the defendant need not intend to cause serious bodily injury or death to another.  As the instruction states, an object is a deadly or dangerous weapon if the object is capable of causing serious bodily injury or death to another person and the defendant carried it with the intent that it be used in a manner capable of causing serious bodily injury or death."

MR. METCALF:  So basically, we're just rereading the sentence back to them.

THE COURT: Well, I think we need to answer the question. If you don't want "no," we could say "the defendant need not intend to cause serious bodily injury or death to another."

I think I have to answer the question.

MR. METCALF: That's fine. I agree with that. And then we follow it with --

THE COURT: "As the instruction states," and then read the --

MR. METCALF: But saying that he need not do it doesn't answer the question specifically. They're asking if he has to have the intent.

THE COURT: All right. Okay. So we could say "the defendant does not have to have the intent to cause serious bodily injury or death to another." That's a clear way.

MR. METCALF: It's the manner capable. It's the intent to be used in a manner capable of causing.

So in answering it, I think that we need to follow up -- we need at least two sentences to make that point clear. It's the manner in which. Unless we just do it with just that last part. It's the manner in which -- he has to intend to use it in a manner capable of causing serious bodily injury or death.

MR. SMITH: And, Your Honor, we agree with the Court that we need to answer the question. So the first part of your response certainly is probably the most important part in the

context of answering the question.

THE COURT:  I mean, I can go either way on reiterating the instruction.  I don't know that it's necessary.  I think the critical sentence is "the defendant does not have to have the intent to cause serious bodily injury or death to another."  We can leave it at that if you all want, or I would be inclined to either paraphrase or read explicitly the sentence that we're all talking about.

MR. METCALF:  I think that we should do the latter, Your Honor, explicitly read that sentence.

THE COURT:  So I would start "an object is a deadly or dangerous weapon if the object is capable of causing serious bodily injury or death to another person and the defendant carried it with the intent that it be used in a manner capable of causing serious bodily injury or death"?

MR. METCALF:  Yes, and then that raises the issue of are we just reading it to them, are we going to satisfy their question.

THE COURT:  I don't think we can do more than -- they have to figure out, using common sense, what it means to use in a manner capable.

MR. METCALF:  Exactly.  So what about in answering their question we talk about the intent component of this is -- focuses in on the manner capable of causing it?

So instead of rereading them this whole paragraph

essentially, kind of zoning in -- basically, we're zoning in for them what's the key component here that they're looking for and just potentially missing.  It's the manner capable.

MR. SMITH:  And, Your Honor, our response would be that the jury's been instructed.  They need to comply with those instructions.  The more that we start paraphrasing and not just referring them back to the instructions or not rereading the instructions, we're then risking them actually not properly applying the instructions that the parties agreed to and the Court had instructed.

And if there's an issue -- I think their question will be answered.  They had a very specific question.  There's a very specific, definite answer the Court is inclined to give to them, which will assist them.  If they have additional questions, they can always write another note and have a follow-up question, rather than try to presume what else they might be thinking or what else they might be grappling with, if anything.

All that does is invite them to potentially misapply the law as opposed to just answering the question and allowing them to continue their deliberations with that answer.

THE COURT:  Mr. Metcalf, I'm surprised that you are wanting the Court to just zero in on the intent that it be used in a manner capable of causing serious bodily injury or death.

I would think that you would want me to emphasize all elements of the definition, which is compound.

MR. METCALF:  They have a narrow question.

THE COURT:  Right, which we're answering it.  We're basically -- I won't say "no," because you don't want the word "no," although that would be the clearest way to answer it.

But I will take your formulation and answer the question saying "the defendant does not have to have the intent to cause serious bodily injury or death to another."

That answers the question.  The only issue is whether we want to redirect them back to the definition.  And if --

MR. METCALF:  What is Your Honor proposing?

THE COURT:  I think we could stop there, or I think we should give the whole definition of deadly or dangerous --

MR. METCALF:  I've had jury instructions read back to jurors, and to me, it almost insults them and doesn't seem to get and drive the point across.

THE COURT:  You want to zero in, but again, I think that that's -- I'm surprised you want to zero in.

MR. METCALF:  So the first sentence --

THE COURT:  The first sentence is irrelevant here.  So I don't propose --

MR. METCALF:  No, what Your Honor just read in answering the question.  Can you say that one more time, please.

THE COURT:  "The defendant does not have to have the intent to cause serious bodily injury or death to another." That was actually language you gave me instead of "no."

MR. METCALF:  I don't know.  It's just -- I'm not grappling with this -- I mean, it's not sitting right with me right now, for some odd reason.

MR. SMITH:  Your Honor, the unique thing about this case is the jurors actually have 12 sets of instructions.  So the Court could refer them to the instructions as a whole or to that instruction.  "If you have any question, you have the instruction."

But as far as reading it, I think getting to the point where Mr. Metcalf is happy with the amount you read really overly emphasizes one portion of the instructions as opposed to what the Court needs them to do, which is to not overly emphasize any part of it and to take the instructions as a whole.

So just referring them to the instruction as a whole would allow them to do that.

THE COURT:  All right.  Well, I have another idea here.

MR. METCALF:  Your Honor, I think the answer is a little bit more complex than what we're proposing.  That second sentence, "the defendant carried it with the intent that it be used in the manner capable of causing serious bodily injury or death."

THE COURT:  Okay.

MR. METCALF:  That's why --

THE COURT:  What about this:  Sentence 1, "The defendant need not intend to cause injury or death to another. He must intend to use the object in a manner capable of causing serious bodily injury or death to another.

MR. METCALF:  That I like much better.

THE COURT:  Does the government have a problem with that?  I think it accurately states --

MS. LEDERER:  It does.  I mean, it's just another iteration of what you just said.  I think the first answer you said is much more concise, clear, and to the point.  So that's the government's position, is that your first would be fine, but this is also a fine substitution.

The only thing is I think you left out "serious" the first time you read it through.  But the government's position is it's always easier to keep it simple and keep it tight, and your first iteration says the same thing as your second.

THE COURT:  For sure.  That was a mistake.

MS. LEDERER:  It doesn't have to appease Mr. Metcalf. What we have to do is follow the law, and what you said the first time is the law.

THE COURT:  I know.  But I think this does.  Let me read it one more time.

Okay.  "The defendant need not intend to cause serious bodily injury or death to another person.  He must intend to use the object in a manner capable of causing serious bodily injury

or death."

MR. SMITH:  And, Your Honor, our concern with that is he doesn't need to use it with the intent -- or use it in a manner capable.  He needs to carry it with the intent that it be used in a manner.  It's a -- there's semantics, but I think they're significant.

THE COURT:  But they're focused on intent here.  Obviously, they have to carry it.

MR. METCALF:  Carrying it is a prerequisite to using it.

THE COURT:  I mean, how do you carry with the intent versus just the intent?  How is that any less demanding for the government to prove?

And in this circumstance, he used it in a manner that the jury is going to say was capable --

MR. METCALF:  Or not capable.

THE COURT:  -- or not capable, and he had that intent.

MS. LEDERER:  Right.  But the intention also connects to the carrying, too.  It's not like he's looking at the helmet and being like oh, if I picked that up and used it in a certain manner.  You also have to have the intention to carry it.

So before, we talked about being concerned about snipping.  That's why the first suggestion that Your Honor came up with --

THE COURT:  So you're worried that this lessens the standard here, that the jury is going to convict because they

didn't consider the carrying?  You're concerned about protecting the defendant here?

MS. LEDERER:  That's always a concern, but it's just also that we're not clipping or snipping or paraphrasing the law.  Your first suggestion --

THE COURT:  But in this case, on the facts of this case, this isn't a situation where they -- he carried it around and didn't actually use it.  I mean, he actually used it.

So why -- I'm just confused, given the facts of this case, why we need to emphasize the carrying part.

MS. LEDERER:  Because it's also just the law.  We don't have to -- in answering, we have to think of two things. We have to think of the fact specifics, but we also have to think of the instruction itself.  So they're considering the instruction itself and then applying it to the facts.

So if we're snipping certain parts of the instruction --

THE COURT:  Mr. Metcalf?

MR. METCALF:  I don't think emphasizing the word "carrying" is necessary here.  I like the last proposal where Your Honor was at.

MS. LEDERER:  Your Honor, our final position is you have to instruct the way the law is written, or we just say "we refer you back to the instruction," and then we don't paraphrase or reiterate word for word at all.

THE COURT:  What about that, Mr. Metcalf?

MR. METCALF:  Just one second, Your Honor.

THE COURT:  Mr. Metcalf?

MR. METCALF:  Taking the government's last suggestion and referring them back to the jury instructions, how would Your Honor -- what specific language would Your Honor use?

THE COURT:  Well, I could simply say "I refer you to the definition on page 35."  I could say that.

MR. METCALF:  You're going to bring them back in, and that's going to be --

THE COURT:  No, no.  I think I need to answer the question.

MR. METCALF:  So that changes things.  So it's either we refer them back --

THE COURT:  No, I'm not going to just refer them.  I think that's very frustrating for them.

MR. METCALF:  That's my inclination as well.

THE COURT:  So you want two sentences.  You don't want me to stop with --

MR. METCALF:  I don't want you to stop with just the answer, because that doesn't fully answer the question, in my opinion.

So yes, I would either want it as two sentences, or they way Your Honor -- I think Your Honor had it as one long sentence.

THE COURT:  You mean initially, or the one you just

liked?

MR. METCALF:  The last round.

THE COURT:  The last one?

MR. METCALF:  Yeah.

THE COURT:  Okay.  So the one the government does not like?

MR. METCALF:  I guess so.  It doesn't have the word "carrying" in it, that one.

THE COURT:  "The defendant need not intend to cause serious bodily injury or death to another person.  He must intend to use the object in a manner capable of causing serious bodily injury or death to another."

MR. METCALF:  Are you going to stop at "death" or have "to another" at the end of the sentence?

MS. LEDERER:  Your Honor, the government's position has not changed at this point.

THE COURT:  I understand.

MS. LEDERER:  We're splicing just to make Mr. Metcalf and the defendant happy, but it's the law, and that's what we have to abide by, and that's what we have to make happy, is the law, and they need to apply the law to the facts, not the facts back to the law.

THE COURT:  Mr. Metcalf, why do you have a problem with the Court simply saying "the defendant must carry it with the intent that it be used in a manner capable of causing

serious bodily injury"?

MR. METCALF:  That's fine, as long as we don't just give them the first part of that sentence and that's it.

THE COURT:  All right.  So sentence 1, "The defendant need not intend to cause serious bodily injury or death to another person.  He must carry it with the intent that it be used in a manner capable of causing serious bodily injury or death."

Okay?

MR. METCALF:  I'm fine with that.

THE COURT:  Is the government fine with that?

MS. LEDERER:  Yes, Your Honor.

THE COURT:  All right.  Let's bring them back.

How about "he must, however, carry"?  Are you all right with that?

MR. METCALF:  I like that.

MS. LEDERER:  Your Honor, we don't.

THE COURT:  You don't?

(Jury entered courtroom.)

THE COURT:  Good morning, ladies and gentlemen.  I have a note from the foreperson that I will read here for the record.

It states, "In the definition of deadly or dangerous weapon on page 35 of the instructions, in the clause 'carried it with the intent that it be used in a manner capable of causing

serious bodily injury or death,' to meet that definition, does it require the defendant intended to cause serious bodily injury or death to another person?"

The defendant need not intend to cause serious bodily injury or death to another person.  He must carry it, the object, with the intent that it be used in a manner capable of causing serious bodily injury or death.

All right.  With that, I will excuse you all to continue your deliberations.  I trust that you will have lunch soon.

Mr. Hopkins?

COURTROOM DEPUTY:  12:30.

THE COURT:  All right. Another hour.  Back to work.  Thank you.

(Jury exited courtroom.)

THE COURT:  All right.  Anything else?

MR. SMITH:  Nothing for the government, Your Honor.

THE COURT:  Mr. Metcalf?

MR. METCALF:  Nothing.

THE COURT:  Are you in the courthouse today, Mr. Metcalf, or are you just nearby?

MR. METCALF:  I just checked out of my hotel.  So I have to find one in this crazy market.  And I will be very close by.  I will be walking distance for the rest of the day.

THE COURT:  You eventually found a hotel, though?

MR. METCALF:  Last night, yeah.  It took a little bit.

Now I'm going to have to figure out what I'm going to do for tonight.

THE COURT:  All-righty, then.  Thank you, all.

(Recess taken from 11:41 a.m. to 1:47 p.m.)

(Jury not present.)

COURTROOM DEPUTY:  Your Honor, we are recalling Criminal Action 21-190, the United States of America versus Zachary Alam.

Your Honor, all the parties who were previously before the Court are currently before the Court, with the exception of the defendant, who is being brought up from the cell block.

(Pause.)

(Defendant present.)

THE COURT:  What's the government's position?

MR. SMITH:  Our position is, under the D.C. Circuit law, that the 111 count is a general intent count, and as the elements are described, the person needs to commit the act or acts, assault, impede, obstruct.  The act itself has to be forcible, and the act has to be an intentional and knowing.

And there's a case, *U.S. v. Kleinbart* at 27 F.3d 586, specifically at 591 to 592, a D.C. Circuit case from 1992. Quoting from that opinion, which it cites actually a Supreme Court case, *United States v. Feola* at 420 U.S. 871 -- 671, I apologize, it says, "In *Feola,* the Court stated we hold, therefore, that in order to incur criminal liability under

Section 111, an actor must entertain merely the criminal intent to do the acts specified therein."

Earlier in that opinion, they state that it's a general intent crime. It has to be forcible conduct, but they don't need to intend it to be forcible. They just need to intend to do that. So if he intended to commit an act, knowingly, intentionally to interfere with the officers, to intimidate the officers, all the other verbs, a forcible act, and the act was forcible, then --

THE COURT: As a practical matter, if you intend -- he has to intend to, let's just say, assault so we don't have to deal with all the other verbs, or interfere.

MR. SMITH: We feel the other verbs are important because he's doing a number of those, yes.

THE COURT: So he intends to interfere. Are you saying that the "forcibly" qualify all of those verbs or -- it does, doesn't it?

MR. SMITH: It qualifies any and all that apply to the defendant's acts. Just like if the defendant intended to resist officers and resisted but that resisting was forcible, he doesn't need to intend and know that his act is a forcible act. He just needs to intend to resist or, in this case, to impede the officers, to intimidate the officers, to obstruct, and to assault.

We think there's proof of assault as well circumstantially,

because the circumstance is his inability to properly get to the window without physically hitting in a forcible manner with his chest the officers.

THE COURT:  All right.  I want to look at this case. I guess I'm having a hard time seeing how if you intend to resist and you trip and fall into the officer --

MR. METCALF:  Your Honor, I'm having a difficult time interpreting how assault is a general intent crime.  In my practice, I've defended against assaults on various different levels, including intoxication as a defense to a specific intent crime, which is assault.  So just that premise alone I'm having trouble with.

MR. SMITH:  Your Honor, it specifically addresses that in the opinion and says that in the *Feola* court -- I'm sorry, above that, right in front of the quote I just gave, "the Supreme Court's decision in *United States v. Feola* leads us to conclude that forcible armed assault on a federal officer under 18 U.S.C. 111 is a general intent crime."

And then there's another cite, *United States v. Arrington*, another D.C. Circuit case, 309 F.3d 40, which cites specifically to the *Kleinbart* opinion for that proposition.

MR. METCALF:  Real quick, the first case that you cited was the Supreme Court case about the general intent crime?

MR. SMITH:  In response to that, *Kleinbart* is a D.C. Circuit case from 1994, which cites *Feola*, which is a Supreme

Court case. And then *Kleinbart* is cited positively by *United States v. Arrington*, a 2002 D.C. Circuit case. And it says specifically, "The adverb 'forcibly' in the first element of the offense modifies each of the prohibited acts specified in the second element."

And they have their elements switched, but the acts are to assault, to impede, and so the forcibly --

THE COURT: But it's to forcibly impede; correct? You have to have the intent --

MR. SMITH: It has to be forcible, yes, by the definition, but it doesn't have to be intended to be forcible. There's no mens rea element of specific intent I am going to commit a forcible act. You're going to commit the act.

THE COURT: Okay. So if he intends to impede, and let's say he gives the officer fake directions and then he accidentally bumps him on the head, is that a -- is that a crime under this? Is that an assault?

MR. SMITH: No, because the act that was forcible was an unintended act, the tripping.

THE COURT: I know. So why doesn't the force have to be with intent?

MR. SMITH: Because otherwise, if -- because in the instance where someone is resisting officers, they don't -- there is no need -- it's a general intent crime. So they don't need to form the mens rea in order to say I intend to forcibly

1202

resist.

THE COURT:  But what if the resist is -- what if the resist is just no, officers, I'm not going with you.

MR. SMITH:  There would be no forcible act, which is one of the elements.

THE COURT:  Right.

MR. SMITH:  In this case, there was a forcible act.

THE COURT:  But what if he fell into the glass?

MR. SMITH:  The facts in this case, he's not falling. He's physically moving forward.  He's physically punching.  He's committing the act to impede the officers, to obstruct them, to intimidate them, and the act itself involves him necessarily going through them and contacting them.

In addition, when we're also talking about the contact, the forcible contact with them, the physical contact portion isn't in the part where he's committing another felony.  So certainly --

THE COURT:  Take your best verb here.  Tell me which one you want me -- impede?  What's the best verb?  What's the most generous, easiest for the government to prove here?

MR. SMITH:  Your Honor, assaulted, obviously --

THE COURT:  No, you don't like assault.  So impede --

MR. SMITH:  Imposed, impeded.  Impeded and intimidated and interfered, those are the three that come to mind.

THE COURT:  Interfere's pretty weak.  I'm just asking

you, of the verbs, which one do you think is easiest for you to prove in this case?  Interfered with their job; right?

MR. SMITH:  Right, intimidated, interfered.  It's hard to pick one, because I'm not sure what --

THE COURT:  I mean, interfered -- he has to forcibly interfere; correct?

MR. SMITH:  Correct.

THE COURT:  For you to convict him under that theory, forcibly interfere.  So he could intend to interfere here by --

MR. SMITH:  By -- or let's say intimidated or interfered by physically smashing the glass at their eye level in an effort to intimidate them, interfering with their duties, and doing that -- there's no evidence that he slips.

THE COURT:  What if somebody took his arm and punched it?

MR. SMITH:  I guess the hypothetical is not -- does not match with the facts in this case and what's in evidence. There's certainly been no argument that he tripped and fell in.

THE COURT:  I'm just trying to understand how --

MR. SMITH:  The act then would not be -- he did not intend to trip to intimidate or to impede or to interfere.  He intended to hit the glass; right?

THE COURT:  I just don't see how you can act with force without having some intent.

MR. SMITH:  And that's the -- there's times when

general intent crimes, some difficulty in understanding general intent crime.  This is a general intent crime, and it's clear.  He does not have the intent to commit the forcible act.  He needs to have the intent to commit the acts specified in element 1, which is any number of those acts.

THE COURT:  But the act has the forcible tied to it.

MR. SMITH:  The act is forcible, not that he intends the forcible act to be forcible.

THE COURT:  Isn't it effectively one and the same?

MR. SMITH:  It's a -- the government's position is it's a significant legal distinction between the two.

THE COURT:  But you tell me how you commit -- how you commit a forcible assault or forcible intimidation without intending to do so.

MR. SMITH:  Well, no, he intended to do the intimidation, the act, which is element 1.  What we're saying is we didn't need to prove that he intended the act to be forcible as it's legally defined.  It's hard to get into somebody's mind, and in that particular situation, the act of forcible is a legal definition.

So whether any defendant, when they're committing an assault, would be thinking about committing a harmful touching -- the specifics of a forcible act, it's understandable that the law does not require them to form an intent for their actions to be forcible.  They just need to form the intent to

commit the action, and if that action is legally forcible under general intent, they are liable.

THE COURT:  I understand that there's not an instruction saying he needs to have the specific intent to act with force.  I understand that.

MR. SMITH:  And the elements are separate and distinct, and they actually specifically both reference, both 2 and 3, to the acts, not --

THE COURT:  The problem is how do you separate -- if you just prove that he intended to impede -- we've got to look at a hypothetical here, because your whole theory of the case fails if they don't think that he acted with force intentionally; right?

MR. SMITH:  We would respectfully disagree, because we believe that under the law, as far as hypotheticals, if we can just use the hypothetical of sort of the facts of this case, if he is intending to impede the officers, to intimidate the officers by swinging and punching the glass behind them, that is the act --

THE COURT:  And that's a forcible act; right?

MR. SMITH:  Well, it is forcible, yes, but there's no requirement for us to prove -- and we believe we could prove that he intended it to be forcible, because there's no way he can get to the glass without that.

The jury just needs to find that he committed the act, the

punching of the glass immediately behind the officers with his fist, that the act itself, the punching was intentional and knowing, and the act itself, physically punching that behind them was forcible in that he made contact with them and physically made contact without an offensive -- it being an offensive touching.

So that's where we -- where our position is.  It's a general intent crime when it comes to the mens rea as to that particular element, knowing -- I mean forcible.  There is no mens rea requirement under the D.C. Circuit law, under the Supreme Court, and therefore, it shouldn't be instructed to the jury.  They should be instructed as what is required by the law, even though in many situations the individual doesn't intend for it to be forcible.

THE COURT:  Mr. Metcalf?

MR. METCALF:  I don't know what the government's proposal is after all of that.

MR. SMITH:  Your Honor, our proposal, if Mr. Metcalf would like --

THE COURT:  Hmm?

MR. SMITH:  Mr. Metcalf inquired about our proposal. Our proposal would be to answer the question that was given, and the government's position is that it does not apply to forcibly. Right?  So it would be --

THE COURT:  So what's the affirmative?  What must the

1207

jury find?

MR. SMITH:  The jury must find that the act in Count 1 was forcible and the act in count -- not Count 1, I mean element 1 was forcible and the act was done knowingly and intentionally.

THE COURT:  Where are you getting knowingly? Voluntarily?

MR. SMITH:  I'm sorry, voluntarily and intentionally. I apologize.  The defendant did -- yeah.  The acts, I guess, it's plural, and we believe there's multiple theories as to how --

THE COURT:  You agree that under the language of the statute, so the specific statutory language doesn't include an intent element; right?  It has no -- it has the word "forcibly," but it doesn't say, like some statutes, knowingly and intentionally, right, but it's implied, correct, the intent?

MR. SMITH:  The intent as to the --

THE COURT:  No, I understand.  But you agree that intent is implied in the language that -- you're not disputing there's intent.

MR. SMITH:  In the doing of the act, yes.

THE COURT:  All right.  So what about if the defendant -- is it not true that the government must prove that the defendant acted with intent when he forcibly assaulted or resisted or opposed or impeded or --

MR. SMITH:  It goes beyond the instruction.  The

distinction we would make is that we agree that the defendant has to intend to any one of the verbs when -- and that act must be forcible, but not that he intend to forcibly commit the act.

MR. METCALF:  Your Honor, right off the bat, "any one of the verbs" I do not think answers this question.

THE COURT:  Sorry?

MR. METCALF:  That doesn't even become a component of where we go here.  The definition section does break up forcibly and does break up the term assault, and that is essentially what I argued during my closing.  I argued focus on these words, forcibly assaults, and then I broke them down individually.

So again, we find ourselves in a situation where the answer is no, but there's a good way of explaining this.  And that's what I still don't understand as to how we should propose this.

So based on this, how is Your Honor inclined to answer this question?

THE COURT:  I'm interested in your suggestion.

MR. SMITH:  Your Honor, one way to address it would be to say the word -- because to look specifically at their question and just respond, the word "intentionally "applies to the acts in element 1.

MR. METCALF:  I almost think that we should reread the definition of assault.  "The term 'assault' means any intentional attempt or threat to inflict injury upon someone else."

THE COURT:  Where are you?

MR. METCALF:  I'm under the definitions section.

THE COURT:  But that's just assault.

MR. METCALF:  But they're asking intentionally from element 3.  So element 3 specifically states "the defendant did such acts voluntarily and" --

THE COURT:  Those acts can be any of the other verbs, too.

MR. METCALF:  Yes, they can.  But I think that in reading the term "assault," that could answer the question about intentional --

THE COURT:  I think that will confuse them to zero in on assault.  This is a broader statute than simply assault.

MR. METCALF:  But the assault is where the intentional attempt or threat to inflict injury comes into play.  That's where that word "intentional" is specifically referenced.  That's why I zeroed in on that.  Even the definition of "forcibly" does not use the word "intentional."

THE COURT:  So you agree, Mr. Metcalf, that the answer is no; you just don't want to leave it like that?  Correct?

MR. METCALF:  Yes.

THE COURT:  So what about saying "the word 'intentionally' applies to the acts listed in the fourth element"?

MR. SMITH:  I believe as instructed it will be the

first element, Your Honor.

MR. METCALF:  It's the fourth.  She's right.

MS. LEDERER:  It's also the first.

THE COURT:  What?

MR. SMITH:  It's in both elements, but it's delineated as the defendant did commit --

THE COURT:  It's intentionally applies to the acts listed in the first element, and in addition, the government must also prove that the defendant acted with force and that he acted voluntarily.

MR. METCALF:  Sorry, Your Honor.  I was working off of the old version on my phone, and I wanted to double-check.  I forget that we added the officers' names specifically.  So I just wanted to check that.  My apologies.

I like Your Honor's suggestion there.  I think that's an accurate statement of the law, and I think that that's the best way to answer this question.

MR. SMITH:  And, Your Honor, our one concern is when you're instructing the defendant must also act forcibly, I think the emphasis should be on the acts, that the defendant did such acts forcibly.

THE COURT:  It's the same thing, but okay.  I'll read it again.  Let me work on the -- I guess the struggle I'm having with all of this is if everyone agrees that the defendant -- the government also has to prove that he acted forcibly, part of the

definition of forcibly has an intentional element to it, I think.

MR. METCALF:  It does, Your Honor, and the definitions don't say that.  The word "intentionally" is not in the "forcibly" definition.

THE COURT:  Because I don't think falling into someone -- you think that's acting with force?

MR. SMITH:  Your Honor, do you mean as far as like falling into somebody?

THE COURT:  I don't think that would satisfy him acting forcibly.  I don't think if he intended to impede the officers by, you know, telling them some fake information about oh, Pence is over there and then someone pushed him into the window or something, he wouldn't be acting with force.

MR. SMITH:  But the act itself that caused the contact would not be a voluntary act.  So it wouldn't even get to the --

THE COURT:  Okay.  It wouldn't be forcible, and it wouldn't be voluntary either.  So it would fail; right?  It would not --

MR. SMITH:  It would not constitute -- nowhere in the definition of "forcibly" -- the jury's been instructed there's no intent element in that definition either.  And given it being a general intent crime, an individual can very easily intend to do something and not form an intent for that act to be forcible.

THE COURT:  Okay.  If you attempt to use force, you

have to have an intent to use force.  If you threaten to use force, you have to have an intent to use force.  And if you use force, I think you have to have an intent to use force.

But I don't know -- I think the problem --

MR. SMITH:  You don't necessarily need to form the mens rea for that force.

THE COURT:  I just think it's subsumed in the definition.  I'm not arguing with you as a matter of like legal theory here.  I think that it's a general intent crime, and "intentional" applies to the acts.  But I think the practical effect is both "voluntarily" and "forcibly" means there's some degree of intent like in those words.  I don't think you can act forcibly without having some intentional --

MR. SMITH:  Yes, Your Honor.  I think the way that I look at it is there's a mens rea element.  The mens rea element is that you intend to commit the act, and the act is forcible.  So there certainly is a mens rea interplay there.  It's not a completely random act that is forcible, and it's not an act that you didn't have any control over.  It's an act that you did that was forcible, but you don't need to intend for it to be that way.

That would be our position.

MR. METCALF:  I still don't think assault is a general intent crime.  I want to pull these cases.

THE COURT:  All right.  Take a look.  Can you do that

here?

MR. METCALF:  I'm trying on my phone.  I'm having difficulty, but I could.

MS. LEDERER:  And I understand defense counsel's struggle, but the difference here is this isn't an aggravated assault where you must specifically intend that serious bodily injury or an attempted murder when you must specifically intend to kill someone.

So this is a general intent crime because you just mean the act, not the intended consequence.

MR. METCALF:  I get the distinction between general and specific.  I just --

MS. LEDERER:  I come from a place where I was just doing murders and homicides.  When I started doing general intent crimes, I had to go wait a second.  But the fact that this crime exists because you're not intending any kind of bodily injury or anything after that, it's the general intent crime where you just mean the act.

I wasn't being disrespectful.  I'm just trying to --

MR. METCALF:  No, I'm -- I think Your Honor's point is fair.  Forcibly requires an intent component to act forcibly as well.

This is how juries never cease to amaze me.

THE COURT:  This is why you all shouldn't have had the Colombian lawyer on there.

MR. SMITH:  Very true.

I will say a lot of this discussion is focusing just on the one part.  But the jury has been instructed further back in the 111 instruction that this general intent, when you're talking about somebody committed an act, right, this general intent may be inferred from the doing of the act.  The person acts knowingly if he realizes what he was doing and realizes the nature of his conduct and does not act through ignorance, mistake, or accident.  You may consider all the evidence, including what the defendant did, said, or perceived.

When it comes to general intent, there's also in the instructions the fact that the defendant doesn't need to know that it's a federal officer in the performance of their duties in order to be guilty.

So it's another reason to show that as a general intent crime, he doesn't need to know that his conduct is forcible or intended for it to be forcible.

THE COURT:  Mr. Smith, would you agree, for something to be forcible, the use of force must be intended?

MR. SMITH:  There doesn't have to be a mens rea of intent.

THE COURT:  No, but that's not what I'm asking.  Let's not get tied up on the mens rea --

MR. SMITH:  It cannot be -- it has to be voluntary.  It has to be an act which is done, yes.  It would be as if

someone were resisting arrest and they start resisting.  They don't need to form the intent for all of the actions, but what's happening in them hitting an officer's hand away, pushing the officer away, you know, they don't need to form the intent to commit forcible acts while they're committing the act of -- because the act is not --

THE COURT:  Let me see if you all agree to these three sentences.  And it's not the most eloquent, but I'm just wondering if this answers the jury's question.

First off, the answer to the question is "no."  I won't say "no."  Instead, I will say "the word 'intentionally' in Count 1 does not apply to the term 'forcibly.'"

Mr. Metcalf, you are in agreement with that is, right?

MR. METCALF:  That's fair.

THE COURT:  "It applies to the six acts or actions" --

MR. METCALF:  Your Honor, can we say "the actions listed"?

THE COURT:  "To the actions listed in element 1 of instruction number 20."

MR. METCALF:  That's fine.

THE COURT:  Maybe I should say "the word 'intentionally' in instruction number 20," because that's what they're talking about on page 22; right?

Okay.  So "the word 'intentionally' in instruction number 20 on page 22 of the jury instructions does not apply to the

1216

term 'forcibly.'  It applies to the acts or actions listed" --

MR. METCALF:  What about the government's burden to also prove?  I liked that language --

THE COURT:  I'm getting there.  Let's answer the question.  "It doesn't apply to the term 'forcibly.'  It applies to the acts or actions," whichever you all prefer?

MR. SMITH:  We prefer "acts."

THE COURT:  "It applies to the acts in element 1 in instruction number 20."

We're all okay with that?

MR. METCALF:  Yes.

MR. SMITH:  Yes, Your Honor.

THE COURT:  "The government also must prove that the defendant did such acts forcibly and voluntarily."

MR. METCALF:  I'm fine with that.  I think that answers the question.

THE COURT:  I'm not going to leave the jury without something more here.

MS. LEDERER:  We're very close.  The only issue is voluntarily is connected with intentionally.  So I think that those two need to go together.

THE COURT:  You think these are the same word?

MS. LEDERER:  In element 3, it says the defendant had to act knowingly and voluntarily.  Now we're connecting voluntarily with forcibly, and they're two separate --

MR. METCALF:  No.  It says -- off the top of my head, element 3 is the defendant had to act voluntarily and intentionally.

THE COURT:  So you're saying -- let me make sure I understand her argument.

Are you basically saying voluntarily is subsumed into intentionally?  It's not doing any work?

MS. LEDERER:  Because it's connected with the knowingly in element 3.

MR. METCALF:  Where is knowingly in this?

MS. LEDERER:  Sorry.  "Third, the defendant did such acts voluntarily and intentionally."

THE COURT:  You don't think you need to prove that he did it voluntarily?  Oh, you say it just modifies the acts?

MS. LEDERER:  Yes.

MR. SMITH:  Your Honor, I think that --

THE COURT:  Wait, wait, wait.  Let me stop.  "The word intentionally does not apply to the term forcibly" -- I was going to say "like the term voluntarily.  It applies to the acts listed in element 1 of" --

MR. SMITH:  Your Honor, I guess what you could say is that the term "intentionally" does not apply to "forcibly."

MR. METCALF:  That's what she said.

THE COURT:  Hold on.  Why does it matter, Ms. Lederer?  Because voluntarily is referring to the six acts, and so is

forcibly.  They're saying the same thing.

All of these apply to the acts; right?

MS. LEDERER:  I'm nitpicking, and I will withdraw --

THE COURT:  Am I missing something?  Aren't all three of these qualifiers applying to the six acts in element 1?

MS. LEDERER:  Yes, Your Honor.  I was just nitpicking because the fact that intentional and voluntarily went side by side, I was just concerned we'd confuse them by splicing them. But I understand, and I will withdraw my position.

THE COURT:  Thank you.

MR. METCALF:  "The word 'intentionally' in Count 1 does not apply to the word 'forcibly.'  It applies to the acts listed in element 1 of instruction 20.  Then the government must also prove defendant acted voluntarily and intentionally."

THE COURT:  "The government must also prove that the defendant did such acts forcibly and voluntarily."

MR. METCALF:  Can we throw in an "additionally" in there?

THE COURT:  I said "also."  "The government must also prove that the defendant did such acts forcibly and voluntarily."

MR. METCALF:  Okay; okay.

THE COURT:  Does that satisfy you?

MR. METCALF:  I would like the word "additionally," but if Your Honor wants to use "also," I'm fine with that.

THE COURT:  I will add "additionally."  It's kind of a weird word.  How about "in addition"?

MR. METCALF:  "In addition" is fine.  Instead of using "too," I used "additionally."

THE COURT:  "In addition, the government must prove that the defendant did such acts forcibly and voluntarily."

MR. METCALF:  I am fine with that, Your Honor.

THE COURT:  You think that answers the question adequately, Mr. Metcalf?

MR. METCALF:  I do.

THE COURT:  How about the government?

MR. SMITH:  Yes, Your Honor.

THE COURT:  So this is essentially just a rephrasing of the answer --

MR. METCALF:  This is what people call legal mumbo jumbo.  Yes.

MR. SMITH:  We could make it less legal mumbo jumbo by adding the words "in reply to your question, the answer is no," and then read, so they get an express answer.

THE COURT:  No, he doesn't like that, and I don't think it clarifies.  What I don't like is this rephrases three of the five elements you have to prove.  Each of the elements have a subpart A and B, which is why I'm resisting what you're saying, Ms. Lederer.  There's, in effect, six elements here.  You have to do he did such acts forcibly, voluntarily, and

intentionally.  The fact that Congress put them in the same line doesn't mean that you don't have to hit them all.

MS. LEDERER:  That's why I was being nitpicky.  I was saying we should just do it in order, which would essentially be rereading the instructions to them.

I completely understand, which is why I withdrew my position.

THE COURT:  We're breaking this down into six elements, which might help them a little bit.  I don't know.

MR. METCALF:  I hope so.

THE COURT:  I think what they really want to know and they haven't asked is what's the definition of "forcibly."  It's defined here, but I think they want to know if "forcibly" has an intent element, and I tend to think it does.  We'll see if they ask that question.

All right.  Are we happy with this?  Can I read it one more time?

MR. METCALF:  Yes, please.

THE COURT:  Okay.  "The word 'intentionally' in Count 1 does not apply to the term 'forcibly.'  It applies to the acts listed in element 1 of instruction number 20."  I think I need to conform all this.  But "in addition, the government must prove that the defendant did such acts forcibly and voluntarily."

MR. METCALF:  "In addition to element 1."

THE COURT:  Well, it's element 1 and 3.

MR. METCALF:  When you read it that time, it didn't flow as well as I thought it did.

THE COURT:  No, it doesn't flow.

MS. LEDERER:  Your Honor, it doesn't need to flow. And again, at the end of the day, we just don't have to make Mr. Metcalf happy.

THE COURT:  I just don't like juries to look at me quizzically like --

MR. METCALF:  This is not appeasing me.  This is jury instructions and answering questions from notes from the jury. I don't see this as appeasing me in any way.  I want that to be clear.

MR. SMITH:  Your Honor, I think what Ms. Lederer meant was the specific language in using a word here or a word there and how well it flows is appeasing Mr. Metcalf.

Certainly, it's a difficult thing to instruct, but we think that it satisfies and answers the question.

MR. METCALF:  When Your Honor read it again, the second and third sentence did not flow well, in my opinion.  So I spoke up.

THE COURT:  What I think would flow better is to say something like in the third sentence "in addition to proving that the defendant did such acts intentionally, the government must also prove that the defendant did such acts forcibly and

voluntarily."

MR. METCALF:  That's exactly what I was going to suggest.

MS. LEDERER:  Same.

MR. METCALF:  That works better in transitioning from the second sentence to the third sentence.

THE COURT:  So "in addition to proving that the defendant did such acts intentionally, the government must" -- I gave you two, "must also prove that the defendant did such acts forcibly and voluntarily."

MR. METCALF:  I am now appeased.

THE COURT:  What about you, Mr. Smith and Ms. Lederer?

MS. LEDERER:  I'm hard to please.

THE COURT:  Are you unhappy?

MS. LEDERER:  I don't think we need so many in additions and also.

THE COURT:  And moreover, plus the other two or three elements in this offense.

MS. LEDERER:  At the end of the day, it's Your Honor's decision.

THE COURT:  And how about "and finally, the government has to prove beyond a reasonable doubt unanimously."

MR. METCALF:  "Each and every element."

THE COURT:  "Of elements first, second, third, fourth, and fifth, and note that third has an A and a B."

MS. LEDERER:  Perfect.

THE COURT:  You get to choose which one, "in addition" and "also"?

MS. LEDERER:  We will take "also"; we will take "in addition."  I don't think we need both.

THE COURT:  It flows so much better.

MR. METCALF:  It does, Your Honor.  Keep both.

THE COURT:  Do you think they're just on Count 1?  It's that "dishonesty" in the instructions.  They can't find the "dishonesty."

MR. METCALF:  I can see that one next.

THE COURT:  Where is "dishonesty" in the instructions?

MR. METCALF:  On page 33, there is no "dishonesty" definition.  Then we would have to instruct them on common sense.

THE COURT:  Okay.  Are you all ready?

MR. METCALF:  Before they change their mind, let's go.

THE COURT:  I'll let them go at 5:00, I guess.

MR. METCALF:  If you want to be nice and let them out early at 4:45.

MR. SMITH:  I think they should go until 5:00, but if they're close to a verdict --

THE COURT:  They have another, thanks to you, ten counts to get through if they're on Count 1.

MR. METCALF:  They could go back, though, because the

first note was more towards the end.

THE COURT:  I know.  I'm just teasing them about their 11-count, nine misdemeanor counts.  The press release --

MS. LEDERER:  We only charge what the conduct substantiates.  Let's be very clear while we're here.

THE COURT:  But really, if you all have to sit through these jury instructions, there's incentive to shorten them.

MR. METCALF:  They have gotten better.

THE COURT:  Have they?

MR. METCALF:  Oh, yeah.  Six months ago --

MS. LEDERER:  Your Honor, we're not going to let somebody get away with something just to have a shorter jury instruction.

THE COURT:  True.  But you want some impact from the added.  Do the added misdemeanors change the sentence, even if he were convicted of all?  I don't know.  I'd just stick with the parading.

(Jury entered courtroom.)

THE COURT:  Ladies and gentlemen, sorry for the delay. Rest assured, we have not been debating your question for two, nearly two hours.  I had some other matters to take care of.

But in response to the note that was sent to the Court at 1:03 p.m. by the foreperson, it states, "In Count 1, page 22 of the instructions, does the word 'intentionally' from element 3 apply to the term 'forcibly?'"

Here's the answer:  The word "intentionally" in element 3 of Count 1 does not apply to the term "forcibly."  It applies to the acts listed in element 1.

In addition to proving that the defendant did such acts intentionally, the government must also prove that the defendant did such acts forcibly and voluntarily.

All right, ladies and gentlemen.  We will send you back and probably keep you here until about 5:00.  All right?  Thank you.

(Jury exited courtroom.)

MR. METCALF:  By the look on their faces, they were very confused with that answer.

THE COURT:  Really?  I had four nods on the back row.  You saw confused people?

MR. METCALF:  Yeah.

MR. SMITH:  We did not see any, Your Honor.  We saw a number of people nodding toward the end of the instruction you gave.  We just see different things.

MR. METCALF:  Exactly.

MS. LEDERER:  Clearly.

THE COURT:  So I have another hearing waiting back in chambers on video.  So I'm going to say good-bye to you all, and if I don't see you all, any reason why we can't release the jury at 5:00 without bringing you back?

MR. METCALF:  No reason, Your Honor.

THE COURT:  Mr. Alam, if we don't see you today, we

will see you tomorrow.  Okay?

THE DEFENDANT:  Thank you.

(Recess taken from 2:50 p.m. to 3:28 p.m.)

(Jury not present.)

THE COURT:  Should we bring the jury in?

MR. METCALF:  Yes.

(Jury entered courtroom.)

THE COURT:  Welcome back, ladies and gentlemen.
Who on the jury speaks as its foreperson?

JURY FOREPERSON:  I do.

THE COURT:  Has the jury unanimously agreed on a
verdict?

JURY FOREPERSON:  We have, Your Honor.

THE COURT:  Could you hand the verdict form to the
clerk to inspect?

(Jury foreperson complied.)

THE COURT:  All right.  Ladies and gentlemen, your
verdict will now be published.  That means Mr. Hopkins will read
it aloud in open court.  Please pay close attention as the
verdict is read.  You should know that following the verdict
being read out loud, the jury could be polled, and that is, each
juror may be asked individually whether the jury as published
constitutes his or her individual verdict in all respects.
Mr. Hopkins, you may proceed.

COURTROOM DEPUTY:  Can the defendant please rise.

As to Count 1, assaulting, resisting, or impeding certain officers, the jury has found you guilty.

As to Count 3, obstructing officers during a civil disorder, the jury has found you guilty.

As to Count 4, destruction of government property, the jury has found you guilty.

As to Count 5, obstruction of an official proceeding, the jury has found you guilty.

As to Count 6, entering or remaining in a restricted building or grounds with a deadly or dangerous weapon, the jury has found you guilty.

As to Count 7, disorderly or disruptive conduct in a restricted building or grounds with a deadly or danger weapon, the jury has found you guilty.

As to Count 8, engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, the jury has found you guilty.

As to Count 9, disorderly conduct in a Capitol building, the jury has found you guilty.

As to Count 10, act of physical violence in a Capitol building, the jury has found you guilty.

And as to Count 11, parading, demonstrating, or picketing in a Capitol building, the jury has found you guilty.

All right.  Is there a request to poll the jury?

MR. METCALF:  Yes, Your Honor.

1228

COURTROOM DEPUTY:  Members of the jury, as your number is called, please indicate if your individual verdict is the same as that that was announced.  If it is, answer yes.  If not, answer no.

Juror number 1?

JUROR:  Yes.

COURTROOM DEPUTY:  Juror number 2?

JUROR:  Yes.

COURTROOM DEPUTY:  Juror number 3?

JUROR:  Yes.

COURTROOM DEPUTY:  Juror number 4?

JUROR:  Yes.

COURTROOM DEPUTY:  Juror number 5?

JUROR:  Yes.

COURTROOM DEPUTY:  Juror number 6?

JUROR:  Yes.

COURTROOM DEPUTY:  Juror number 8?

JUROR:  Yes.

COURTROOM DEPUTY:  Juror number 9?

JUROR:  Yes.

COURTROOM DEPUTY:  Juror number 10?

JUROR:  Yes.

COURTROOM DEPUTY:  Juror number 12?

JUROR:  Yes.

COURTROOM DEPUTY:  Juror number 13?

JUROR:  Yes.

COURTROOM DEPUTY:  And juror number 14?

JUROR:  Yes.

COURTROOM DEPUTY:  Thank you.  We have a unanimous verdict, Your Honor.

THE COURT:  Yes, the poll verifies that the verdict is unanimous.  The clerk is directed to file and record the verdict.

All right, ladies and gentlemen.  Thank you for your service in this case.  Our justice system works because of the willingness of people like you to take time out of your busy schedules to come here and fulfill your civic duty, and for that, we are enormously grateful.  Your conscientious service allows our courts to work fairly and efficiently for dispute resolutions.

So we thank you, and on behalf of the United States District Court, we appreciate your service.  You are now excused.

(Jury exited courtroom.)

THE COURT:  All right.  So Mr. Metcalf, previously, you had made a motion under Rule 29.  I did address it with respect to the count involving the property damage, and you also made it with respect to, I think, Count 1, the assault count.

Is that correct?

MR. METCALF:  Yes, Your Honor.

THE COURT:  Again, viewing -- I don't know that I ever formally denied the motion, but viewing the evidence in the light most favorable to the government and now in light of the jury's verdict, I do find that the motion is denied, and I will allow you to renew the motion to the extent you want to file a motion under Rule 29 or Rule 33, and I will give you -- how long do you need to file post-trial motions?

MR. METCALF:  Any chance Your Honor could give me 20 to 30 days?  I need to be able to obtain the transcripts.  I have not obtained any thus far.

THE COURT:  Okay.  Given that you should get them promptly, is 21 days adequate?  I'll give you 30.

MR. METCALF:  I'd rather 30, just because of finances.

THE COURT:  I'll give you 30.

And then how long does the defense -- the government need to respond?

MR. SMITH:  If we could have two weeks, Your Honor.

THE COURT:  Two weeks, okay.

So Mr. Metcalf, giving you until October 12th, is that adequate time?

MR. METCALF:  That works, Your Honor.

THE COURT:  The defense motions by October 12, the government's opposition by October 26, and any reply by November 2nd.

MR. METCALF:  That works.

THE COURT:  All right.  And in terms of a date for sentencing, I think we're now looking at mid-December.  I'm actually in trial then.  So I'm wondering whether we could do this in the beginning of January.

Mr. Metcalf, do you want to talk to Mr. Alam about that?

MR. METCALF:  No, that's fine.  I think that will allow a couple of things between now and then to finalize.  So I'm fine with January.

THE COURT:  All right.  Mr. Hopkins, I'm looking at a sentencing date some time in the first -- towards the end of the first week of January.

COURTROOM DEPUTY:  How about --

THE COURT:  Does January 5th work in the morning?

COURTROOM DEPUTY:  Yes, it does, Your Honor.  I didn't know whether you were asking the parties, but January 5th does work.

MR. METCALF:  Later is better just because at that point I'm going to be traveling from out of state.

THE COURT:  Are you suggesting another day or --

MR. METCALF:  No, that date's fine.  Just the later the better.

THE COURT:  Like noon or --

MR. METCALF:  Noon would be great.

THE COURT:  Would you prefer 1:00?

MR. METCALF:  Whatever is convenient for the Court.

Noon or 1:00 is fine with me, as long as it's not 9:00, 9:30.

MS. LEDERER: Your Honor, that does work for the government's attorneys. That does not work for our special agent, though.

THE COURT: Why does she need to be here for sentencing?

MS. LEDERER: To see the case through, but we'll make arrangements to figure it out.

THE COURT: She's going to be tied up, I know. So there's probably no good day.

Does the government have a preference as to time?

MS. LEDERER: No, Your Honor.

THE COURT: Mr. Metcalf, would you prefer 11:00 or 1:00?

MR. METCALF: 1:00.

THE COURT: We'll return at 1:00 on Friday, January 5th, for sentencing. If the parties could file their sentencing memoranda on or before December 22nd -- you don't have to wait that long to file it -- any oppositions on or before December 29th.

And as the government, I think, knows, I am very interested in comparator cases.

MS. LEDERER: Thank you for letting us know that, Your Honor.

THE COURT: Yes. And the same for you, Mr. Metcalf.

MR. METCALF:  Understood.

THE COURT:  All right.  Anything else we need to address here before we adjourn?

MR. METCALF:  I just ask that the marshals allow me to go in the back and speak with Mr. Alam.

THE COURT:  Of course; of course.

MR. METCALF:  That's it.

THE COURT:  Yes?  No?  He's looking at me.

DEPUTY U.S. MARSHAL:  Yes, Your Honor.

THE COURT:  All right, Mr. Alam.  I'll see you back in January.  Okay?

(Proceedings adjourned at 3:39 p.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER


        I, Sara A. Wick, certify that the foregoing is a

correct transcript from the record of proceedings in the

above-entitled matter.



/s/ Sara A. Wick                    September 13, 2023

SIGNATURE OF COURT REPORTER         DATE